**Timothy J. Jones**, OSB No. 890654
tim@ja-law.com
Jones Ammann LLC
888 SW 5th Avenue, Suite 1100
Portland OR 97204
(503) 374-1414
(971) 925-9034 fax

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON - PORTLAND DIVISION

| | |
|---|---|
| **RUSSELL PITKIN and MARY PITKIN, Co-Personal Representatives of the Estate of MADALINE PITKIN**, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>**CORIZON HEALTH, INC.**, a Delaware Corporation; **CORIZON HEALTH, INC.**, a Tennessee Corporation; **WASHINGTON COUNTY**, a government body in the State of Oregon; **JOSEPH MCCARTHY, MD**, an individual; **COLIN STORZ**, an individual; **LESLIE ONEIL**, an individual; **CJ BUCHANAN**, an individual; **LOUISA DURU**, an individual; **MOLLY JOHNSON**, an individual, **COURTNEY NYMAN**, an individual; **PAT GARRETT**, in his capacity as Sheriff for Washington County; **JOHN DOES 1-10;** and **JANE DOES 1-10.**<br><br>Defendants. | Case No._____<br><br>**COMPLAINT**<br><br>**VIOLATION OF CIVIL RIGHTS (42 USC § 1983) and SUPPLEMENTAL STATE CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Page 1 - **Complaint**

# INTRODUCTION

1.      Madaline Pitkin was arrested in the evening of April 16, 2014 by Tualatin Police Department for unlawful possession of heroin. A few hours later she was booked into the Washington County jail.   At that time, and all times relevant, Washington County contracted with Corizon Health, Inc. to provide medical services at the jail.   At intake (4/17/14, about 4:14 am), Pitkin notified medical staff that she last used heroin, one gram intravenously, about 7 pm the prior evening, and that she was feeling the effects of withdrawal.   Pitkin was placed in the general population unit, where she remained for seven days.   The following morning (4/18/14) LPN Louisa Duru performed a Clinical Opiate Withdrawal Scale (COWS) evaluation of Pitkin.   That evaluation was flawed in at least one respect (numeric results incorrectly tabulated).   LPN Dura then ordered Pitkin started on a Partial Opiate Withdrawal Protocol.   Duru later advising investigators that she had checked with the doctor for approval of her actions.   The only doctor working at the jail at this time, Joseph McCarthy, MD, had not, however, been consulted by LPN Dura concerning her COWS evaluation or initiation of the Partial Opiate Withdrawal Protocol. LPN Dura advised Pitkin to let them know if she feels sick by putting in a medical request (Health Care Request) form.   Over the next seven days Pitkin's condition deteriorated. During those seven days Pitkin submitted at least four Health Care Request forms asking for medical care.   None resulted in an exam, evaluation or other contact with medical staff. Rather, each request for medical attention received only a notation on the form by an LPN or RN.   During those seven days deputies at the jail expressed concern about Pitkin's

Page 2 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

deteriorating condition.   During those seven days video surveillance confirms Pitkin's deteriorating physical condition.   By 4/23/14 jail deputy staff made multiple calls to Medical.   RN CJ Buchanan finally responded, and possibly Dr. McCarthy as well and, unable to get a reliable blood pressure reading, Pitkin was transferred to the Medical Observation Unit (MOU).   This was the only time Pitkin was seen by a doctor in the jail. The following morning (4/24/14) Pitkin was found dead in her cell in the MOU.   Dr. McCarthy, the only physician on staff at the Washington County jail, had been terminated the day before Pitkin's death (4/23/14), and no physician was on staff the day Pitkin died.

## JURISDICTION AND VENUE

2.   This action arises under the constitution and laws of the United States and jurisdiction is based on 28 USC § 1331 and 28 USC § 1343(a).   This Court has pendant jurisdiction of the state law negligence claims pursuant to 28 USC § 1367, and diversity jurisdiction pursuant to 28 USC § 1332(c)(2).

## PARTIES

3.   Plaintiffs Russell Pitkin and Mary Pitkin are the duly appointed personal representatives of the Estate of Madaline Pitkin, deceased (hereinafter referred to as Pitkin).   Russell and Mary Pitkin are the parents of Madaline Pitkin, deceased.   At the time of her death, Pitkin was a citizen and a resident of the State of Oregon.   At all times pertinent, Madaline Pitkin was a detainee in the Washington County Jail.

4.   Corizon Health, Inc. is a Delaware corporation and a Tennessee corporation authorized to do business in the State of Oregon (hereinafter collectively referred to as Corizon).   Its business is providing medical services in jails and prisons nationally, and in Washington

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

County jail specifically at all relevant times.   At all times herein pertinent, Corizon was acting under color of state law.

5.    Washington County is an Oregon county.   Washington County operates a jail in Hillsboro, Oregon, and is responsible for the provision of medical care for all detainees and persons in its custody.   At all times material, it contracted with Corizon to provide all necessary medical care to detainees and persons held at the Washington County jail.

6.    Based upon information and belief, defendant McCarthy, a licensed physician, was the chief medical health officer for Corizon in April of 2014, and at all times pertinent was responsible for the health policies, customs and procedures utilized by Corizon employees working in the Washington County jail.   McCarthy's last day at the Washington County jail was 4/23/14, the day before Pitkin's death.   On 4/24/14, the day of Pitkin's death, and for several days thereafter, there was no physician at the Washington County jail.   At all times herein pertinent, defendant McCarthy was acting under color of state law.   Based upon information and belief, defendant McCarthy is a citizen and resident of the State of Oregon.

7.    Based upon information and belief, defendant Oneil, a registered nurse, was the Director of Nursing for Corizon in April of 2014, and at all times pertinent was responsible for the nursing policies, customs and procedures utilized by Corizon employees working in the Washington County jail.   At all times herein pertinent, defendant Oneil was acting under color of state law.   Based upon information and belief, defendant Oneil is a citizen and resident of the State of Oregon.

8.    Based upon information and belief, defendant Storz, a licensed physician assistant, was the

Page 4 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

only physician assistant working for Corizon at the Washington County jail.   As such he, under supervision of defendant McCarthy, was responsible for medical care policies, customs and procedures utilized by Corizon employees working in the Washington County jail.   At all times herein pertinent, defendant Storz was acting under color of state law. Based upon information and belief, defendant Storz is a citizen and resident of the State of Oregon.

9.    Based upon information and belief, defendant Buchanan, a registered nurse, is a Corizon employee who at all times pertinent was a nurse working in the Washington County jail. At all times herein pertinent, defendant Buchanan was acting under color of state law. Based upon information and belief, defendant Buchanan is a citizen and resident of the State of Oregon.

10.    Based upon information and belief, defendant Duru, a licensed practical nurse, is a Corizon employee who at all times pertinent was a licensed public nurse working in the Washington County jail.   At all times herein pertinent, defendant Duru was acting under color of state law.   Based upon information and belief, defendant Duru is a citizen and resident of the State of Oregon.

11.    Based upon information and belief, defendant Johnson, a registered nurse, is a Corizon employee who at all times pertinent was a licensed registered nurse working in the Washington County jail.   At all times herein pertinent, defendant Johnson was acting under color of state law.   Based upon information and belief, defendant Johnson is a citizen and resident of the State of Oregon.

12.    Based upon information and belief, defendant Nyman, a licensed practical nurse, is a

Page 5 - **Complaint**

Corizon employee who at all times pertinent was a licensed public nurse working in the Washington County jail.    At all times herein pertinent, defendant Nyman was acting under color of state law.    Based upon information and belief, defendant Nyman is a citizen and resident of the State of Oregon.

13. At all material times, defendant Pat Garrett was acting as Sheriff of Washington County. At all times herein pertinent, defendant Garrett was acting under color of state law. Based upon information and belief, defendant Garrett is a citizen and resident of the State of Oregon.

14. At all material times, defendants John Does 1-10 and Jane Does 1-10 are Corizon or Washington County employees, officers, administrators, and supervisors responsible for the provision of medical services, the enactment and implementation of policies, practices, and customs relating to the delivery of health care at the Washington County jail.    At all times herein pertinent, defendants John Does 1-10 and Jane Does 1-10 were acting under color of state law.

## FACTUAL ALLEGATIONS

15. Washington County's Hillsboro jail houses pretrial detainees and persons convicted of crimes.    Washington County is obligated by state and federal law to provide medical and mental health care for persons lodged in the Washington County jail.

16. Since opening the jail in Hillsboro in 1998, Washington County has repeatedly contracted with Corizon Health, formerly Prison Health Services, to provide healthcare to jail inmates. In exchange for a fee, Corizon assumed all responsibility to establish a Medical Audit Committee to assure that quality health care was accessible to all inmates; implement all

Page 6 - **Complaint**

policies and procedures necessary for operation of the Washington County jail healthcare program, tailored to the Washington County jail as required by the National Commission on Correctional Healthcare standards (NCCHC);  provide a medical detoxification program for drug and/or alcohol addicted inmates and detainees; provide intermittent monitoring of all detoxification cells located in the jail to determine the health status of individuals, monitoring including, at a minimum, documentation of vital signs and a determination of levels of consciousness every two hours for severe cases; provide Washington County with notice of any claim made against Corizon by any third party; recruit, interview, hire, train and supervise all healthcare staff; implement a Quality Assurance Program; and maintain staffing levels set forth by the contract.  Corizon also agreed to pay up to $880,000 per year for off-site (hospital) medical services, with Washington County assuming costs above $880,000.

17.    Late in the evening of April 16, 2014, Pitkin was arrested by the Tualatin Police Department for unlawful possession of heroin.

18.    Early the next morning, April 17, 2016, Pitkin was booked into the Washington County jail.   At the time of booking Pitkin notified jail medical staff that she last used heroin, one gram  intravenously, about 7 pm the night before, and that she was feeling the effects of detoxing off heroin.   RN Nerissa Galvez noted at intake needle marks on Pitkin, and ordered a Clinical Opiate Withdrawal Scale (hereinafter referred to as COWS) evaluation to be conducted for 48 hours after last opiate use.   Pitkin was assigned to a general population pod.

19.    The next morning, April 18, 2014, LPN Louise Duru performed a COWS evaluation on

Page 7 - **Complaint**

Pitkin.  That evaluation was faulty in at least one respect, in that the results were incorrectly tabulated.  Based upon her faulty evaluation, LPN Duru ordered a Partial Opiate Withdrawal Protocol.  The Practitioner's Orders for Opiate Medical Withdrawal consisted of the drugs Hydroxyzine (Vistaril), Acetaminophen (Tylenol) and Promethazine (Phenergan).   LPN Duru later told investigators she received approval for this order from the doctor; however, the records indicate the plan was not approved by a doctor, but rather by a Physician Assistant, Colin Storz.

20.    LPN Duru told investigators that she usually tells inmates to let them know if they feel sick by putting in a Health Care Request form, as that's the only way for inmates to communicate with medical staff.

21.    At 3:30 pm the next day, April 19, 2014, Pitkin submitted her first Health Care Request form. On it she wrote "Heroin withdrawal.  I told medical intake that I was detoxing & they said I was not yet sick enough to start meds.   Now I am in full blown withdrawal and really need medical care.  Please help!"  RN Molly Johnson reviewed this request for medical care and noted, "Pt. seen & started on Partial Protocol (already started 4/18/14)." No medical staff examined Pitkin or took any action in response to her first Health Care Request form.

22.    The following morning, April 20, 2014, Pitkin needed a change of bedding due to overnight vomiting.   Surveillance video throughout the day reveals a visibly weakened Pitkin having difficulty standing up, holding her stomach and skipping lunch.   At 4:10 pm Pitkin submitted her second Health Care Request form.   On it she wrote, "detoxing from heroin REALLY Bad.  Can't keep any food down.  Heart beating so hard that I can't sleep."

Page 8 - **Complaint**

Johnson reviewed this second request for medical care and noted, "Pt. Seen & started on partial protocol (Pt. already started on partial protocol 4/18/14)."   Johnson wrote an order for the drug Loperamide, which was given to Pitkin the following morning.   No medical staff examined Pitkin or took any other action in response to her second Health Care Request form.

23.    Video surveillance throughout the next day, April 21, 2014, shows Pitkin unable to walk more than a few feet at a time, squatting down when having to wait in line, bending over at waist when she did stand, walking slowly in a "hunched-over" position and crouching rather than standing.     Concerned, a jail deputy called for medical staff to examine Pitkin. LPN Courtney Louise Nyman performed another COWS evaluation, noting it was a little high (dated 4/20/14), but otherwise found nothing alarming.   Nyman noted Pitkin was already on detox protocol and decided not to move her to the Medical Observation Unit (MOU).

24.    At 2:10 pm on April 21, 2014, Pitkin submitted her third Health Care Request form.   On it she wrote, "vomiting and diarrhea constantly.   Can't keep meds, food, liquids down. Can't sleep.   Everything hurts.   My stomach is sour and filled with bright green that I keep puking up.   Muscles cramp and twitch.   So weak.   Cannot stand long, can't walk far without almost fainting.   Feel near death ..."   Medical staff notes currently on opiate protocol.   No medical staff examined Pitkin or took any action in response to her third Health Care Request form.   The nighttime jail deputy noted Pitkin was vomiting during the night.

25.    The next day, April 22, 2014, Pitkin was too ill to take her lunch or dinner in the "pod."

Page 9 - **Complaint**

Video surveillance shows a weakened Pitkin having difficulty walking, hunched over and crouching down when standing in line.   Pitkin's lunch and dinner were taken to her cell, but records do not indicate whether she ate.

26.    On April 23, 2014 Pitkin attempted to come to the pod for breakfast, but returned to her cell before eating bent over at the waist, needing to stop and sit.   At 9:05 am Pitkin submitted her fourth and last Health Care Request form.   On it she wrote, "This is a 3rd or 4th call for help.   I haven't been able to keep food, liquids, meds down in days ... I feel like I am very close to death.   Can't hear, seeing lights, hearing voices.   Please help me …"   At 10:00 am jail Deputy Thomas Kind made multiple calls to medical staff asking that they look at Pitkin due to her worsening condition.   LPN Tony Wertz looked at Pitkin, could not get a blood pressure reading and agreed to move her to the Medical Observation Unit (MOU).   The records are unclear but may indicate Dr. McCarthy also saw Pitkin at this time, attempted unsuccessfully to get a blood pressure reading, and authorized her admission to MOU.   RN Buchanan told investigators she also tried unsuccessfully to get a blood pressure reading before Pitkin was transferred to MOU.   At 10:20 am another Clinical Opiate Withdrawal Scale (COWS) evaluation was done, resulting in Dr. McCarthy ordering a Modified COWS protocol (or Partial Opiate Protocol), which records state was, or should have been, initiated on April 18, 2014.   In MOU a pitcher of Gatorade was provided to Pitkin.   Having trouble sitting up to take medications, LPN Wertz assisted Pitkin.

27.    At 9:25 the following morning, April 24, 2014, jail Deputy Thompson observed Pitkin standing, sweating profusely, and notified RN Buchanan to check on Pitkin.   Buchanan

Page 10 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

refused, saying she was there to check a diabetic inmate.  Thompson insisted, and after examining the diabetic inmate Pitkin was found lying on her cell floor with brown fluid leaking from mouth and nose, eyes open, mouth weakly moving with one arm moving/twitching.   EMS responded, administering shock but were unable to revive Pitkin.

28.   An autopsy later that day revealed no controlled substances or common pharmaceuticals present in Pitkin's system.  Cause of death was listed as Chronic Intravenous Drug Use; manner of death was listed as Natural.

## FIRST CLAIM FOR RELIEF

### Civil Rights - 14th Amendment - 42 USC § 1983

### Wrongful Death

29.   Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 28 above.

30.   Defendants Corizon, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson, Nyman, John Does 1-10 and Jane Does 1-10 were deliberately indifferent to Madaline Pitkin's rights under the Fourteenth Amendment of the US Constitution in that said defendants failed and refused to provide adequate medical screening to Ms. Pitkin from the time of booking through her death.

31.   Defendants Corizon, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson, Nyman, John Does 1-10, and Jane Does 1-10 were deliberately indifferent to Ms. Pitkin's rights under the Fourteenth Amendment of the US Constitution in that said defendants:

a)   Failed to provide her with prompt medical attention to her serious medical needs;

Page 11 - **Complaint**

and

b)    Seriously aggravating her medical condition by repeatedly ignoring her medical plight; and

b)    Failed to promptly transfer her from the Washington County jail general population to the Washington County jail Medical Observation Unit; and

c)    Failed to promptly transfer her from the Washington County jail to a hospital for diagnosis and treatment.

32.    Defendants Corizon, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson, Nyman, John Does 1-10, and Jane Does 1-10 were deliberately indifferent to Ms. Pitkin's rights under the Fourteenth Amendment of the US Constitution in that said defendants:

a)    Seriously aggravated her medical condition by failing to measure her vital stats on a regular basis, or at least every two hours; and

b)    Seriously aggravated her medical condition by failing to physically assess her medical condition when alerted to her plight by Health Care Request forms and deputy calls; and

c)    Seriously aggravated her medical condition by failing to contact a physician or EMS when her condition deteriorated, resulting in symptoms such as vomiting, diarrhea and weakness, as early as 4/20/2014; and

d)    Seriously aggravated her medical condition by failing to determine that prescribed medications were being successfully administered, or in the alternative, in failing to administer prescribed medications by alternative methods such as by IV; and

e)    Seriously aggravated her medical condition by failing to consistently document

Page 12 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

treatment and observations in the medical record; and

f)      Seriously aggravated her medical condition by failing to provide adequate staffing

levels needed for minimally-adequate care; and

g)      Seriously aggravated her medical condition by substituting less qualified and less

highly-paid staff than that needed for the provision of adequate medical care; and

h)      Seriously aggravated her medical condition by allowing medical staff to operate

beyond their qualifications and authority; and

i)      Seriously aggravated her medical condition by allowing medical staff to operate

without benefit of physician supervision; and

j)      Seriously aggravated her medical condition by failing to immediately transport her

to hospital before 4/24/14; and

k)      Seriously aggravated her medical condition by failing to immediately transport her

to hospital on 4/24/14 when there was no licensed physician on staff at the jail.

33.     As a direct result of the actions and inactions of defendants set forth in paragraphs 30

through 32 above, Madaline Pitkin was not provided timely medical care.   If Pitkin had

received timely and appropriate medical care, she would have been afforded the

precautions and treatment that would have prevented her death.   Madaline Pitkin suffered

an agonizing death as a result of defendants' failures.   Her parents have been denied her

love, society and companionship.   Madaline Pitkin's estate and her parents are entitled to

compensatory damages in the sum of $10,000,000.

34.     Defendants' actions and inactions were recklessly indifferent to Madaline Pitkin and her

parents' civil rights, and callously disregarded Ms. Pitkin's physical safety, and punitive

Page 13 - **Complaint**

damages should be awarded in the sum of $10,000,000.

35. Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## SECOND CLAIM FOR RELIEF

### Civil Rights Claim - 14th Amendment - 42 USC § 1983

### *Monell* Claims - Wrongful Death - Corizon and Washington County

36. Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 35 above.

37. The moving forces that resulted in the deprivation of Madaline Pitkin's and her parents' Fourteenth Amendment rights were the following policies, customs or practices of Washington County and Corizon:

   a) A policy, custom or practice of not providing adequate medical health screening to inmates withdrawing from opiates at or near the time of booking in Washington County jail; and

   b) A policy, custom or practice of providing insufficient medical health staff coverage for inmates of Washington County jail; and

   c) A policy, custom or practice of not using the physician, or on-call physician, for consultation even when a detoxing inmate's condition deteriorates; and

   d) A policy, custom or practice of hiring medical and nursing personnel indifferent to the medical needs of Washington County inmates; and

   e) A policy, custom or practice of failing to train non-physician medical personnel on basic exam procedures such as taking and recording vital stats; and

Page 14 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

f)      A policy, custom or practice of failing to train non-physician medical personnel to recognize symptoms which require immediate attention; and

g)      A policy, custom or practice of not providing for trained physicians to examine seriously ill Washington County inmates; and

h)      A policy, custom or practice of not providing jail access to a trained physician at all times; and

i)      A policy, custom or practice of denying Washington County inmates medically necessary transfers to hospitals; and

j)      A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical services for ill or injured inmates of the Washington County jail.

38.    The policies of defendants Corizon and Washington County posed a substantial risk of causing substantial harm to Washington County inmates, and Corizon and Washington County were aware, or should have been aware, of these risks.

39.    As a direct result of the policies, customs or practices of Corizon and Washington County, Madaline Pitkin was not provided timely medical care.   If Ms. Pitkin had been adequately screened upon intake, at the three COWS evaluations, when she submitted Health Care Request forms and/or when jail deputies alerted medical staff to Pitkin's medical condition, she would have been afforded precautions and treatment that would have prevented her death.   Also as a direct result of the policies, customs or practices of Corizon and Washington County, Ms. Pitkin did not receive prompt and necessary medical care and as a result her condition was exacerbated and she endured and suffered severe physical and

Page 15 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

emotional distress up to her death.   Pitkin's parents have been denied her love, society and companionship.   Pitkin's estate and her parents are entitled to compensatory damages in the sum of $10,000,000.

40.    The actions of defendants Corizon and Washington County were recklessly indifferent to Madaline Pitkin and her parents' civil rights, and callously disregarded Pitkin's physical safety, and punitive damages should be awarded against defendants Corizon and Washington County in the sum of $10,000,000.

41.    Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

### THIRD CLAIM FOR RELIEF

### Civil Rights Claim - 14th Amendment - 42 USC § 1983

### *Monell* Claims - Wrongful Death – Corizon and Washington County

42.    The contract between defendant Washington County and defendant Corizon had, as its purpose, the delivery of adequate health care for inmates and detainees, and the reduction in health care costs incurred by Washington County for inmate health care.

43.    The moving forces that resulted in the deprivation of Madaline Pitkin and her parents' Fourteenth Amendment rights were the following policies, customs or practices of Washington County and Corizon:

a)        A policy, custom or practice of failing to enforce and abide by the contract terms that require the health care services provided by Corizon be audited.  Had the contract terms been enforced by Washington County and followed by Corizon, the required audits would have revealed the inadequate health care being provided by

Page 16 - **Complaint**

defendant Corizon; and

b)    A policy, custom or practice of failing to follow and enforce the contract terms that required a Medical Audit Committee review of all jail Healthcare Services for quality of care through established and regularly performed audits, and recommend and implement all policies and procedures for jail healthcare; and

c)    A policy, custom or practice of failing to enforce and follow the contract terms requiring defendant Corizon to tailor and adopt policies and procedures for health care at the Washington County jail, and to provide those policies and procedures to Washington County officials.   These policies and procedures were to be consistent with the standards for health services and jails set forth by the National Commission on Correctional Health Care.   Had the contract terms been enforced by Washington County, they would have revealed the inadequacy or nonexistence of Corizon's policies and procedures; and

d)    A policy, custom or practice of failing to enforce and follow the contract terms requiring defendant Corizon to maintain minimum staffing levels, at appropriate levels of licensing and qualifications.   Failure by Corizon to follow the terms of the contract, and Washington County's failure to enforce the contract terms, allowed Corizon to under-staff the medical care at the jail and allowed Corizon to substitute less qualified and less highly paid medical staff than required in the contract; and

e)    A policy, custom or practice of failing to follow and enforce the contract terms requiring Corizon to notify the county of all claims made against it.   Corizon has

Page 17 - **Complaint**

had numerous claims made against it by individuals and governmental bodies. Had Corizon followed the terms of the contract, Washington County enforced the contract terms, it would have known that Corizon has demonstrated, over the years and across the nation, a pattern of providing deficient services.  This knowledge would have alerted Washington County to the likelihood of deficient care being provided by Corizon in its jail; and

f)    A policy, custom or practice of failing to follow and enforce the contract requiring Corizon to obtain written approval for any subcontract.  By not following and enforcing the contract terms, Washington County thereby allowed Corizon to subcontract services which did not meet requirements of the contract; and

g)    A policy, custom or practice of failing to adequately monitor Corizon's performance to ensure it met staffing commitments and provided quality healthcare; and

h)    A policy, custom or practice of failing to follow and enforce the contact terms requiring Corizon to provide healthcare staff as specified in the contract.

44.    The policies, customs and practices of Washington County and Corizon posed a substantial risk of causing harm to Washington County inmates and detainees.  Washington County and Corizon were aware of these risks.

45.    As a direct result of the policies, customs or practices of defendants Washington County and Corizon, defendant Corizon was permitted to continue to provide medical care which was recklessly indifferent to the needs of Madaline Pitkin.  Madaline Pitkin was not provided with prompt and necessary medical care resulting in severe physical and mental

Page 18 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

suffering and which ultimately resulted in her death.    Madaline Pitkin's parents have

been deprived of the love, society and companionship of their daughter.    Madaline Pitkin's

estate and her parents are entitled to compensatory damages in the amount of $10,000,000.

## FOURTH CLAIM FOR RELIEF

### Civil Rights Claim - 14th Amendment - 42 USC § 1983

### Supervisory Liability - Wrongful Death

46.    Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through

45 above.

47.    Defendants Corizon, Washington County, McCarthy, Storz, Oneil, Garrett, John Does 1-

10, and Jane Does 1-10, in their supervisory capacities, were aware of the policies, customs

or practices as alleged in paragraph 37 and 43 above, and were aware that said policies,

customs or practices created a substantial risk of causing substantial harm to Washington

County detainees and inmates by endangering their physical safety and their medical and

mental health needs.    Despite that knowledge, said supervisors allowed, approved of and

ratified said policies, customs or practices.

48.    Defendants McCarthy, Storz and Oneil, Corizon, John Does 1-10, and Jane Does 1-10, in

their supervisory capacities, failed to adequately train Corizon employees:

a)    On the need to provide a prompt medical evaluation of detoxing persons when they

are booked into the Washington County jail; and

b)    On the need to provide prompt medical evaluation of detoxing persons when there

is evidence their condition may be deteriorating; and

c)    To recognize medical emergencies; and

Page 19 - **Complaint**

d)    Of the need to obtain a medical examination by a trained physician to evaluate any seriously ill inmate.

49.    Defendants McCarthy, Storz, Oneil, Corizon John Does 1-10, and Jane Does 1-10 were aware that failure to train set forth in paragraph 45, above, created a substantial risk of causing harm to Washington County inmates.

50.    As a direct result of the actions and inactions of defendants Corizon, Washington County, McCarthy, Storz, Oneil, Garrett, John Does 1-10, and Jane Does 1-10, Madaline Pitkin endured and suffered severe physical and emotional distress, her medical condition was exacerbated, resulting in her death.  Pitkin's parents have been denied her love, society and companionship.  Pitkin's estate and her parents are entitled to compensatory damages in the sum of $10,000,000.

51.    Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

### FIFTH CLAIM FOR RELIEF

#### Negligence - Wrongful Death

52.    The actions of defendants Corizon, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson, Nyman, John Does 1-10, Jane Does 1-10, and Washington County, and each of them, were negligent in one or more of the following particulars:

a)    In failing to provide Madaline Pitkin with an adequate medical health assessment upon booking into Washington County jail on April 17, 2014; and

b)    In failing to provide Madaline Pitkin with an adequate medical health assessment while incarcerated in Washington County jail, up to the time of her death.

Page 20 - **Complaint**

53.     The actions of defendants Corizon, Washington County, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson, Nyman, John Does 1-10, Jane Does 1-10, and Washington County, and each of them, were negligent in one or more of the following particulars:

a)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin at the time of the Clinical Opiate Withdrawal Scale (COWS) evaluation on April 18, 2014; and

b)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin when she submitted her first Health Care Request form on April 19, 2014; and

c)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin at the time it became known she had spent the night vomiting, and therefore not keeping down fluids, food or medication on April 20, 2014; and

d)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin when she submitted her second Health Care Request form on April 20, 2014; and

e)       In failing to provide an appropriate medical examination and treatment to Ms. Pitkin when she submitted her third Health Care Request form on April 21, 2014; and

f)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin at the time it became known she had spent the night vomiting, and therefore not keeping down fluids, food or medication on April 21, 2014; and

g)      In failing to provide an appropriate medical examination and treatment on April 22,

Page 21 - **Complaint**

2014 when Pitkin was visibly weakened, had difficulty standing and was too ill to take her meals in the common area of the pod; and

h)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin when she submitted her fourth Health Care Request form on April 23, 2014; and

i)      In failing to immediately transport Ms. Pitkin to a hospital at any point between April 17, 2014 and April 24, 2014.

54.    The actions of defendants Corizon, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson and Nyman, John Does 1-10, Jane Does 1-10, and Washington County were negligent in failing to provide Madaline Pitkin an appropriate medical examination at any time between 4:14 am on April 17, 2014 and the time of her death the morning of April 24, 2014.

55.    The actions of defendants Corizon, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson and Nyman, John Does 1-10, Jane Does 1-10, and Washington County, and each of them, were negligent in one or more of the following particulars:

a)      In failing to determine that Ms. Pitkin was suffering from serious complications of withdrawal from heroin on April 19, 2014; and

b)      In failing to determine the efficacy of administration of medication from April 18, 2014 through April 24, 2014, in light of Pitkin's recurring vomiting, diarrhea, pleas for medical assistance, weakness and generally deteriorating condition; and

c)      In ignoring Ms. Pitkin's medical plight for eight days, even though she sought medical care.

56.    The actions of defendant Corizon, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson,

Page 22 - **Complaint**

Nyman, John Does 1-10, Jane Does 1-10, and Washington County were negligent in one or more of the following particulars:

a)   In ignoring Ms. Pitkin's need for medical attention because they were poorly staffed; and

b)   In ignoring Ms. Pitkin's medical needs when jail deputies requested she be seen by medical personnel.

57.   The actions of defendants Corizon, McCarthy, Storz, Oneil, John Does 1-10, Jane Does 1-10, and Washington County were negligent in one or more of the following particulars:

a)   In allowing, approving and ratifying the policies, customs or practices as alleged in paragraph 37 and 43 above; and

b)   In failing to adequately train Corizon and Washington County employees on the need to provide a prompt medical examination of persons who are withdrawing from opiates when they are booked into Washington County jail; and

c)   In failing to adequately train Corizon and Washington County employees in the symptoms and treatment of inmates who are withdrawing from opiates during their incarceration; and

d)   In failing to adequately train Corizon and Washington County employees to recognize medical emergencies; and

e)   In failing to adequately train Corizon and Washington County employees to maintain an adequate medical record.

58.   As a direct result of the actions and inactions of defendants, and each of them, Madaline Pitkin endured and suffered severe physical and emotional distress, and her medical

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

condition was exacerbated, resulting in her death.    Her parents have been denied her love, society and companionship.    Ms. Pitkin's estate and her parents are entitled to compensatory damages in the sum of $10,000,000.

59.    Notice pursuant to the Oregon Tort Claims Act was given to defendant Washington County within the time prescribed by law.

### SIXTH CLAIM FOR RELIEF

### Gross Negligence/Reckless Misconduct - Wrongful Death

60.    Madaline Pitkin's estate realleges and incorporates herein as though set forth in full paragraphs 1 through 59 above.

61.    Defendant Corizon, by and through its employees acting within the scope of their employment, was grossly negligent and acted with reckless misconduct in one or more of the following particulars:

a)    In failing to provide an appropriate medical examination and treatment to Ms. Pitkin at the time of the Clinical Opiate Withdrawal Scale (COWS) evaluation on April 18, 2014; and

b)    In failing to provide an appropriate medical examination and treatment to Ms. Pitkin when she submitted her first Health Care Request form on April 19, 2014; and

c)    In failing to provide an appropriate medical examination and treatment to Ms. Pitkin at the time it became known she had spent the night vomiting, and therefore not keeping down fluids, food or medication on April 20, 2014; and

d)    In failing to provide an appropriate medical examination and treatment to Ms.

Page 24 - **Complaint**

Pitkin when she submitted her second Health Care Request form on April 20, 2014; and

e)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin when she submitted her third Health Care Request form on April 21, 2014; and

f)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin at the time it became known she had spent the night vomiting, and therefore not keeping down fluids, food or medication on April 21, 2014; and

g)      In failing to provide an appropriate medical examination and treatment on April 22, 2014 when Pitkin was visibly weakened, had difficulty standing and was too ill to take her meals in the common area of the pod; and

h)      In failing to provide an appropriate medical examination and treatment to Ms. Pitkin when she submitted her fourth Health Care Request form on April 23, 2014; and

i)      In failing to immediately transport Ms. Pitkin to a hospital at any point between April 17, 2014 and April 24, 2014; and

j)      In failing to determine that Ms. Pitkin was suffering from serious complications of withdrawal from heroin on April 19, 2014; and

k)      In failing to determine the efficacy of administration of medication from April 18, 2014 through April 24, 2014, in light of Pitkin's recurring vomiting, diarrhea, pleas for medical assistance, weakness and generally deteriorating condition; and

l)      In ignoring Ms. Pitkin's medical plight for eight days, even though she sought

Page 25 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

medical care; and

m)    In ignoring Ms. Pitkin's need for medical attention because they were poorly staffed; and

n)    In ignoring Ms. Pitkin's medical needs when jail deputies requested she be seen by medical personnel; and

o)    In allowing, approving and ratifying the policies, customs or practices as alleged in paragraph 37 and 43 above; and

p)    In failing to adequately train Corizon and Washington County employees on the need to provide a prompt medical examination of persons who are withdrawing from opiates when they are booked into Washington County jail; and

q)    In failing to adequately train Corizon and Washington County employees in the symptoms and treatment of inmates who are withdrawing from opiates during their incarceration; and

r)    In failing to adequately train Corizon and Washington County employees to recognize medical emergencies; and

s)    In failing to adequately train Corizon and Washington County employees to maintain an adequate medical record.

62.    As a direct result of the misconduct of defendant Corizon, Madaline Pitkin endured and suffered severe physical and emotional distress, and her medical condition was exacerbated, resulting in her death.  Her parents have been denied her love, society and companionship.   Ms. Pitkin's estate and her parents are entitled to compensatory damages in the sum of $10,000,000.

Page 26 - **Complaint**

63.     The actions of defendant Corizon were grossly negligent, were recklessly indifferent to Madaline Pitkin's civil rights, and callously disregarded her physical safety.  Punitive damages should be awarded in the sum of $10,000,000.

WHEREFORE, Plaintiffs pray for judgment as follows:

**On First Claim for Relief**, for judgment against defendants Corizon, McCarthy, Storz, Oneil, Buchanan, Duru, Johnson, Nyman, John Does 1-10 and Jane Does 1-10, and each of them, for:

A.  Compensatory damages in the sum of $10,000,000; and

B.  Punitive damages in the sum of $10,000,000; and

C.  Necessarily and reasonably incurred attorney fees and costs.

**On Second Claim for Relief**, for judgment against defendants Corizon and Washington County, and each of them, for:

D.  Compensatory damages in the sum of $10,000,000, and

E.  Punitive damages in the sum of $10,000,000, and

F.  Necessarily and reasonably incurred attorney fees and costs.

**On Third Claim for Relief**, for judgment against defendants Corizon and Washington County, for:

G.  Compensatory damages in the sum of $10,000,000, and

H.  Necessarily and reasonably incurred attorney fees and costs.

**On Fourth Claim for Relief**, for judgment against defendants Corizon, Washington County, McCarthy, Storz, Oneil, Garrett, John Does 1-10, and Jane Does 1-10 for:

I.  Compensatory damages in the sum of $10,000,000, and

Page 27 - **Complaint**

Jones Ammann LLC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

J.   Punitive damages in the sum of $10,000,000, and

K.   Necessarily and reasonably incurred attorney fees and costs.

**On Fifth Claim for Relief**, for judgment against defendants Corizon, McCarthy, Storz,

Oneil, Buchanan, Duru, Johnson, Nyman, John Does 1-10, Jane Does 1-10, and Washington

County, and each of them, for:

L.   Compensatory damages in the sum of $10,000,000, and

M.  Necessarily and reasonably incurred attorney fees and costs.

**On Sixth Claim for Relief**, for judgment against defendant Corizon, for:

N.   Compensatory damages in the sum of $10,000,000, and

O.  Punitive damages in the sum of $10,000,000, and

P.   Necessarily and reasonably incurred attorney fees and costs.

DATED this 30th day of November, 2016.

JONES AMMANN LLC

By:   _s/ Timothy J. Jones_____
        Timothy J. Jones, Oregon State Bar No. 890654
        tim@ja-law.com
        Jones Ammann LLC
        888 SW 5th Avenue, Suite 1100
        Portland OR 97204

Of Attorneys for Plaintiffs

Plaintiffs demand trial by jury.

DATED this 30th day of November, 2016.

JONES AMMANN LLC

By:   _s/ Timothy J. Jones_____

Page 28 - **Complaint**

Timothy J. Jones, Oregon State Bar No. 890654
tim@ja-law.com
Jones Ammann LLC
888 SW 5th Avenue, Suite 1100
Portland OR 97204

Of Attorneys for Plaintiffs

Page 29 - **Complaint**

## Certificate of Filing

I HEREBY CERTIFY that on the 30th day of November, 2016, I filed this original Complaint, together with the Civil Cover Sheet by Electronic Filing:

Trial Court Administrator
US District Court
740 US Courthouse
1000 SW Third Avenue
Portland OR 97204-2902


By: ___s/ *Timothy J. Jones*_____
        Timothy J. Jones, Oregon State Bar No. 890654
        Of Attorneys for Plaintiffs

**Certificate of Filing**