*BCC 07-0799*

# PROFESSIONAL SERVICES CONTRACT

This contract is between Washington County, a political subdivision of the State of Oregon ("County"),

and, Prison Health Services, Inc. ("Contractor").

**County and Contractor, in consideration of the mutual promises, terms and conditions provided herein, agree to the following:**

## SECTION 1 - PURPOSE AND STANDARD OF SERVICES

1.1.　This contract sets forth the responsibilities and clarifies the relationship between the County and the Contractor.

1.2.　Services performed by Contractor shall be performed in comparable manner and with the same degree of care, skill, diligence, competency, and knowledge which is ordinarily exhibited and possessed by other professionals in good standing in the same or similar field in the same community as Contractor.

## SECTION 2 - CONSIDERATION

2.1.　Contractor shall perform the services as described in this contract. County agrees to pay for the services in accordance with Attachment B.

2.2.　The base contract amount for the first contract year is estimated to be $2,760,896. The base contract amount for the second contract year is $2,900,597.

2.4.　The Contractor shall invoice the County 1/12th of the base amount thirty days (30) days before the month in which services are rendered. Unless otherwise stated in Attachment B, the payment terms are thirty days (30) after County's receipt of invoice.

## SECTION 3 - CONTRACT TERM

3.1.　The effective date of the contract is July 1, 2007.

3.2.　The expiration date of the contract is June 30, 2013. The parties shall have the option to renew this contract for one (1) renewal term of four (4) years each upon execution of an extension agreement signed by the parties.

3.3.　Passage of the contract expiration date shall not extinguish or prejudice the County's right to enforce this contract with respect to any default or defect in performance that has not been cured.

## SECTION 4 - ADDITIONAL DOCUMENTS AND ATTACHMENTS

4.1.　The following documents are incorporated into this contract:

*106 33*

☒ RFP# 27002P.

☒ Contractor's Response Dated: March 28, 2007.

☒ Washington County Standard Contract Terms and Conditions.

4.2.   The following Attachments are incorporated into and made a part of this contract:

☒ Attachment A -   Statement of Work

☒ Attachment B -   Payment, Staffing and Term

☒ Attachment C -   Modifications to Standard Insurance Requirements

4.3.   In the event there is a conflict between the documents comprising this contract, the following order of precedence shall apply: the terms and conditions in the body of this contract; Standard Contract Terms and Conditions, Attachment A; Attachment B; Attachment C.

## SECTION 5 - COUNTY CONTRACT ADMINISTRATOR

Name:         Jeff Otis
Mail Stop:    4
Address:      155 N. First Ave.
              Hillsboro, OR  97124
Telephone:    503-846-8630
E-Mail:       jeff_otis@co.washington.or.us

PAGE 2 OF 3 - PROFESSIONAL SERVICES CONTRACT

## SECTION 6 - SIGNATURES

## CONTRACTOR:

By my signature below, I certify that I am authorized to execute this contract on behalf of Contractor.

_____          _____
Signature                                 Date    6/27/07

_____          _____
Name (Printed)  Richard Holliman          Title   President + CEO

Address:  105 Westpark Drive, Brentwood TN 37027

23 - 2108853                              APPROVED AS TO FORM
_____          by LEGAL DEPT.
Tax Identification Number

**Contractor Contact Person:**

Name:  Rodney D. Holliman          Telephone:  615 -376-0695

Address:  105 West Park Drive  Suite 200   Brentwood TN, 37027

E-Mail:  hollimrh @ asgr.com

## COUNTY:

_____          _____
Signature  Tom Brian                      Date   JUL 0 3 2007
           **Tom Brian**
                                          Chairman Board of Commissioners
_____          _____
Printed Name                              Title

| Recording Secretary: | (For use with Board items) | |
| --- | --- | --- |
| Barbara Hejtmanek | Minute Order #: 07-238 | |
| | Date: 6/19/07 | |

## STANDARD CONTRACT TERMS AND CONDITIONS

1.  **Subcontracts and Assignment**. Contractor shall not enter into any subcontracts for any of the work required by this contract, or assign or transfer any of its interest in this contract, without the prior written consent of County. The provisions of this contract shall be binding upon and shall inure to the benefit of the parties hereto, and their respective successors and assigns, if any.

2.  **Third Party Beneficiaries**. County and Contractor are the only parties to this contract and are the only parties entitled to enforce its terms. Nothing in this contract gives, is intended to give, or shall be construed to give or provide any benefit or right, whether directly, indirectly, or otherwise, to third persons unless such third persons are individually identified by name herein and expressly described as intended beneficiaries of the terms of this contract.

3.  **Written Notice**. Any notice of change, termination, or other communication having a material effect on this contract shall be upon the County Contract Administrator and the Contractor Contact Person and served in one of the following manners: a) In-person delivery; or b) deposited in the U.S. Mail under certified or registered handling, postage prepaid. Except as provided in this contract, it is agreed that fifteen calendar days shall constitute reasonable notice for the exercise of any right in the event that applicable law specifically requires such notice.

4.  **Governing Law/Venue/Attorney Fees**. This Contract shall be governed by and construed in accordance with the laws of the State of Oregon without regard to principles of conflicts of law. Any claim, action, suit or proceeding (collectively, "Claim") between County and Contractor that arises from or relates to this contract shall be brought and conducted solely and exclusively within the Circuit Court of Washington County for the State of Oregon; provided, however, if a Claim is brought in a federal forum, then it shall be brought and conducted solely and exclusively within the United States District Court for the District of Oregon. CONTRACTOR, BY EXECUTION OF THIS CONTRACT, HEREBY CONSENTS TO THE IN PERSONAM JURISDICTION OF SAID COURTS. The prevailing party in a Claim shall be entitled to reasonable attorney fees and costs as awarded by the court, including any appeal.

5.  **Remedies Cumulative**. All rights and remedies of County and Contractor shall be cumulative and may be exercised successively or concurrently. The foregoing is without limitation to or waiver of any other rights or remedies of County according to law.

6.  **Severability/Waiver**. County and Contractor agree that, if any term or provision of this contract is declared by a court of competent jurisdiction to be illegal or in conflict with any law, the validity of the remaining terms and provisions shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if the contract did not contain the particular term or provision held to be invalid. The failure of either party to enforce any provision of this contract shall not constitute a waiver by that party of that or any other provision of this contract.

7.  **Public Contracting Statutes**.

    7.1    ORS 279B.220 through 279B.235 and ORS 279C.500 through 279C.780, as applicable are incorporated herein by reference.

    7.2    The Contractor agrees to:

        a.    Make payment promptly, as due, to all persons supplying, to Contractor, labor or material for the prosecution of the work provided for in this contract;

  b. Pay all contributions or amounts due the Industrial Accident Fund incurred in the performance of the contract:

  c. Not permit any lien or claim to be filed or prosecuted against the County on account of any labor or material furnished pursuant to this contract; and

  d. Pay to the Department of Revenue all sums withheld from employees pursuant to ORS 316.167.

**8.** **Independent Contractor.**

 **8.1.** Contractor shall perform the work required by this contract as an "Independent Contractor." Although County reserves the right to determine the delivery schedule for the work to be performed and to evaluate the quality of the completed performance, the County cannot and will not control the means or manner of the Contractor's performance. The Contractor shall comply promptly with any requests by County relating to the emphasis or relative emphasis to be placed on various aspects of the work or to such other matters pertaining to the work under this contract. Contractor is responsible for determining the appropriate means and manner of performing the work.

 **8.2.** Contractor represents and warrants that Contractor is not an employee of the County, is not currently employed by the Federal Government, meets the specific independent Contractor standards of ORS 670.600, and is not an "officer", "employee", or "agent" of the County, as those terms are used in ORS 30.260 et. seq.

 **8.3.** Contractor shall be responsible for all federal or state taxes applicable to any compensation or payments paid to Contractor under this contract. Contractor is not eligible for any federal Social Security, unemployment insurance, or workers' compensation benefits from compensation or payments paid to Contractor under this contract.

 **8.4.** Contractor agrees to immediately provide County notice of any claim made against Contractor by any third party. Contractor also agrees not to assign to any third party, without County's written consent, any obligation of County to indemnify Contractor for any actions under this contract.

**9.** **Indemnification.** Contractor shall hold harmless, indemnify, and defend the County, its Commissioners, employees, and agents for any and all claims, damages, losses, and expenses, including but not limited to reasonable attorney(s) fees arising out of or resulting from Contractor's performance of or failure to perform its obligations in this contract. Contractor's obligations of indemnity and defense under this Section 9 shall not apply to the extent that such claims, damages, losses or expenses were the result of the negligent acts or omissions of the County, its officials, employees or agents.

**10.** **Nondiscrimination.** No person shall be denied or subjected to discrimination in receipt of the benefits of any services or activities made possible by or resulting from this contract on the grounds of race, color, religion, gender, sexual orientation, national origin, disability, age, or marital status. Any violation of this provision shall be considered a material defect and shall be grounds for cancellation, termination or suspension in whole or in part by the County.

**11.** **Termination.**

 **11.1.** This contract may be terminated under the following conditions:

  a. By mutual consent of both parties.

    b.  Contractor may terminate this contract upon a material default of County; however, Contractor must provide written notice to the County Contract Administrator and provide County with thirty days to cure the default.

    c.  County may at any time terminate this contract for default if Contractor fails to perform any of the provisions of this contract, or so fails to pursue the work as to endanger performance of this contract in accordance with its terms, and after receipt of written notice from the County, fails to correct such failures within thirty (30) calendar days or such other period as the County may reasonably authorize or require.

**11.2.**   Upon receiving a notice of termination issued by County, Contractor shall immediately cease all activities under this contract, unless expressly directed otherwise by County in the notice of termination.

**11.3.**   In the event the Board of Commissioners of Washington County reduces, changes, eliminates, or otherwise modifies the funding for this contract, or if funding from federal, state, or other sources is not obtained and continued at levels sufficient to allow for the purchase of the indicated quantity of services, then County may terminate this contract, in whole or in part, effective upon delivery of written notice to the Contractor, or at such later date as may be established by the County, and Contractor agrees to abide by any such decision.

**11.4.**   In addition to its other rights to terminate, County may terminate this contract in whole or in part upon ninety days' notice to Contractor when it is determined to be in the best interests of County. During this ninety-day period, Contractor shall wind down and cease its services as quickly and efficiently as possible, without performing unnecessary services or activities and by minimizing negative effects on County from such winding down and cessation of services.

**11.5.**   In the event that Contractor is faced with an extraordinary increase in its costs for the salaries of employees performing the work under this contract, Contractor may provide the County with a 180 day notice of intent to terminate this contract. Contractor agrees that in order to invoke this provision, the expenses must be as a result of factors outside the control of Contractor. Contractor agrees that it shall provide the County with an explanation of the cause and all related documentation with the notice. In the event that County verifies the extraordinary increase in cost, Contractor agrees to negotiate in good faith a reasonable modification to the contract to continue providing services for the remaining term. In the event that the parties are unable to agree on a modification to the contract, Contractor may terminate at the contract at the end of the notice period or 90 days from the date that the County and Contractor determine that they are unable to reach agreement on a modification, whichever period is longer shall apply.

In the event that County denies verification of the expenses and Contractor disagrees with the County's decision, the matter shall be submitted to a single arbitrator for a decision. Contractor and County shall mutually select the Arbitrator. The arbitration shall be conducted in accordance with the rules of the American Arbitration Association. Costs of the arbitration shall be shared equally. The arbitration hearing shall take place in Washington County, Oregon. The arbitrator shall decide whether the increase meets the requirements of this section as a verifiable expense. Contractor agrees that it shall abide by the decision of the arbitrator. If the decision of the arbitrator is that the expenses are verifiable then Contractor and County shall negotiate, in good faith, on the increase in the contract amount. If the parties fail to reach agreement then Contractor may terminate at the contract at the end of the notice period or 90 days from the date that County and Contractor determine that they are unable to reach agreement on a modification, whichever period is longer shall apply.

**11.6.** The rights and remedies of the parties provided in this section, are not exclusive and are in addition to any other rights and remedies provided by law or under this contract.

**11.7.** If this contract is terminated under subsections 11.3 or 11.4 County shall be liable only for payment in accordance with the terms of this contract for services satisfactorily rendered prior to the effective date of termination.

**11.8.** Upon termination, Contractor shall deliver to County all contract documents, information, works-in-progress, and other property that are or would be deliverables had the contract been completed.

**12.** **Time is of the essence.** Time is of the essence in Contractor's performance of each and every obligation and duty under this contract

**13.** **Force Majeure.** Neither County nor Contractor shall be held responsible for delay or default caused by fire, riot, acts of God, or war where such cause was beyond, respectively, County's or Contractor's reasonable control. County and Contractor shall make all reasonable efforts to remove or eliminate such a cause of delay or default and shall, upon the cessation of the cause, diligently pursue performance of its obligations under this contract.

**14.** **Compliance with Applicable Law.** Contractor and its subcontractor(s) shall comply with all federal, state, and local laws and ordinances applicable to the work performed under this contract including, but not limited to the following, as applicable: Title VI of the Civil Rights Act of 1964, Section V of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990 (Pub L No. 101-336), ORS 659.425 and all regulations and administrative rules established pursuant to those laws; and all other applicable requirements of federal and state civil rights and rehabilitation statutes, rules and regulations.

**15.** **Oregon Registration.** If Contractor is not domiciled in or registered to do business in the State of Oregon, Contractor shall promptly provide to the Oregon Department of Revenue and the Secretary of State Corporation Division all information required by those agencies relative to this contract.

**16.** **Use of County Facilities.** Contractor and its employees or agents shall have the right to use only those facilities of County that are necessary to perform the services under this contract and shall have no right of access to any facility of the County without prior approval of County management. County shall have no responsibility for the loss, theft, mysterious disappearance of or damage to equipment, tools, materials, supplies, and other personal property of Contractor or its employees, subcontractors or agents which may be stored on County premises.

**17.** **Publicity.** Contractor shall not use in its external advertising, marketing programs or other promotional efforts, any data, pictures, or other representations of the County except on prior specific written authorization from County management.

**18.** **Survival.** The terms, conditions, representations, and all warranties contained in this contract shall survive the termination or expiration of this contract.

**19.** **Counterparts.** This contract may be executed in several counterparts, each of which shall be an original, all of which shall constitute one and the same instrument.

**20.** **Warranties.** Contractor represents and warrants to County that: (a) Contractor has the power and authority to enter into and perform the contract, (b) the contract, when executed and delivered, shall be a valid and

WASHINGTON COUNTY - STANDARD CONTRACT TERMS AND CONDITIONS

binding obligation of Contractor enforceable in accordance with its terms, and (c) Contractor's performance under the contract shall be in a good and workmanlike manner and in accordance with the professional standards.

21.    **Records**. Contractor shall maintain all fiscal records relating to this contract in accordance with generally accepted accounting principles. In addition, Contractor shall maintain any other records pertinent to this contract in such a manner as to clearly document Contractor's performance hereunder. Contractor acknowledges and agrees that County and its duly authorized representatives shall have access to such fiscal records and all other books, documents, papers, plans, and writings of the Contractor that are pertinent to this contract. All such fiscal records, books, documents, papers, plans, and writing shall be retained by Contractor and kept accessible for a minimum of three years, except as required longer by law, following final payment and termination of this contract, or until the conclusion of any audit, controversy, or litigation arising out of or related to this contract, whichever date is later. All subcontracts shall also comply with these provisions.

22.    **Work Product**. All work product of the Contractor which results exclusively from the work performed under this contract and is not developed as part of Contractor's general business activities ("the work product"), except material previously developed and/or mutually identified as confidential or proprietary, whether or not marked as such, or any work product otherwise owned by PHS, its subsidiaries, affiliates or another, shall be provided to County upon request and shall be considered the exclusive property of the County. In addition, if any of the work product contains intellectual property of the Contractor that is or could be protected by federal copyright, patent, or trademark laws, or state trade secret laws, Contractor hereby grants County a perpetual, royalty-free, fully paid-up, nonexclusive and irrevocable license to copy, reproduce, perform, dispose of, use and re-use, in whole or in part, and to authorize others to do so. Such work products include, but are not limited to: databases, templates, file formats, scripts, links, procedures, materials, training manuals and other training materials, specially created key commands, and any other information, designs, plans, or works provided or delivered to the County or produced by Contractor under this contract.

Notwithstanding the above, any material licensed by the Contractor or programs and processes developed by the Contractor prior to Contractor's agreement with the County shall remain the exclusive property of the Contractor.

Policies, procedures and programs developed specifically for the County will remain the property of the County.

23.    **Insurance**. The Contractor shall purchase and maintain, at the Contractor's expense, the types of insurance listed below, covering the Contractor, its employees and agents:

23.1.    The following policies shall name Washington County, its Commissioners, employees, and agents, as an ADDITIONAL INSURED:

a.    **Comprehensive general liability insurance** covering personal injury and property damage with a combined single limit, or the equivalent of not less than $500,000. This insurance shall include contractual liability coverage for the indemnity provided under this contract;

b.    **Automobile liability insurance** with combined single limit coverage of not less than $500,000 each claim, incident, or occurrence.

**23.2.** **Professional Liability Insurance** with a combined single limit of not less than $1,000,000 each claim, incident or occurrence. This is to cover damages caused by error, omission or negligent acts related to the professional services to be provided under this contract.

**23.3.** **Workers' Compensation Insurance** in compliance with 656.017, which requires subject employers to provide Oregon workers' compensation coverage for all their subject workers.

A copy of the policy or Certificate of Insurance acceptable to the County shall be filed with the County prior to the effective date of this contract. The policy or certificate shall provide for thirty days' notice of cancellation or material change. In addition, Contractor shall immediately notify County of any cancellation or material change in it's professional liability insurance coverage.

**24.** **County Policies.** During the performance of this contract, Contractor shall follow County's Affirmative Action Program which is to promote the objectives of the Equal Employment Opportunity Commission's guidelines as set forth in the Equal Employment Opportunity Act of 1972, Oregon State Laws, legal mandates, and Presidential Executive Order 11246 entitled Equal Employment Opportunity as amended by Executive Order 11375 and as supplemented in Department of Labor Regulation 41 CFR part 60. Contractor shall also follow the County Harassment Free and Violence in the Workplace Policies. All subcontracts shall also comply with these provisions.

**25.** **Amendment.** This contract may only be amended by a written amendment signed by authorized agents of both parties.

**26.** **Whole Contract.** THIS CONTRACT CONSTITUTES THE COMPLETE AND EXCLUSIVE STATEMENT OF THE CONTRACT BETWEEN THE PARTIES RELEVANT TO THE PURPOSE DESCRIBED HEREIN AND SUPERSEDES ALL PRIOR AGREEMENTS OR PROPOSALS, ORAL OR WRITTEN, AND ALL OTHER COMMUNICATION BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER OF THIS CONTRACT.

# ATTACHMENT A

**A.    SCOPE OF WORK**

    1.    PHS shall be the sole supplier of the health care delivery system for the Washington County Jail. The responsibility of PHS for the provision of health care services to inmates commences with the commitment of an inmate to the custody of the Washington County Sheriff's Office and ends with the release of the inmate from custody.

**B.    SERVICE SPECIFICATIONS**

    1.    Health care services must be provided in compliance with the *STANDARDS FOR HEALTH SERVICES IN JAILS, 2003*, established by the National Commission on Correctional Health Care (NCCHC) and Washington County Jail Policies. More specifically, the services provided must meet the standards to the extent required to achieve NCCHC accreditation. No language or description contained in the specifications that follow is intended, nor shall be interpreted, in such a way as to relieve PHS from its obligation to achieve and maintain NCCHC accreditation, which is a primary goal of these specifications. Additionally, the health services program must comply with Minimum Jail Standards as defined by Oregon State Administrative Code.

    2.    PHS must recruit, interview, hire, train, and supervise all health care staff and such health care staff must be adequate to meet all conditions and specifications of the contract. All health services staff providing services under this contract must be licensed to practice in the State of Oregon and comply with all applicable Oregon professional practice act regulations. At a minimum, a full-time, on-site Program Administrator shall be provided who shall have general responsibility for the successful delivery of health care for the Washington County Jail. The County reserves the right to conduct security clearances on all PHS staff recruited to work in the jail. Any PHS employee who does not satisfy the security clearance, at County's sole discretion, shall not be allowed access to the jail. The County shall provide written notice to PHS of the grounds for such denial of access.

    3.    PHS shall provide the following:

        a.    A qualified registered nurse to complete medical clearance triage on all individuals brought to the Washington County Jail (sometime referred to herein as the "facility") in accordance with established rejection criteria mutually approved by PHS and the County.

        b.    A Receiving Health Screening on all new commitments to the Washington County Jail within two (2) hours of arrival and before the inmate enters

general population of the facility. The screening shall be completed by a registered nurse and shall comply with all NCCHC requirements for intake screening.

c.  A comprehensive Health Assessment on all inmates within fourteen (14) calendar days of arrival of the inmate at the Washington County Jail. Such assessment shall be performed by a qualified health care professional and meet all requirements stipulated by the NCCHC standard for Fourteen-Day Health Assessment.

4.  PHS shall identify the need, schedule, coordinate, arrange for or perform and pay for the treatment and services described in 4.a. through 4.f. below. PHS' responsibility for the cost of such services is subject to the Annual Aggregate Limit described in Attachment B to the contract.

a.  All non-emergency and emergency health care rendered to inmates inside or outside the Washington County Jail. PHS shall administer first responder emergency medical care to any employee or visitor of the Washington County Jail who requires such care.

b.  Any inpatient hospitalization of any inmate of the Washington County Jail system. This shall include all institutional charges, physician charges, and any and all additional charges. This also includes responsibility for making emergency arrangements for ambulance service to the inpatient facility and reimbursement to the local ambulance organization for the services provided.

c.  All physician services rendered to inmates inside or outside the Washington County Jail. At a minimum, PHS shall identify a "responsible physician" who shall conduct sick call and generally provide such care as is available in the community. The "responsible physician" or another covering physician shall be on call seven (7) days per week, twenty-four (24) hours per day for emergency situations.

d.  All supporting diagnostic examinations, both inside and outside the Washington County Jail.

e.  All laboratory services as medically indicated.

f.  All necessary follow up for health problems identified by any of the screening tests or laboratory tests. This would include inpatient or outpatient hospitalization, appropriate monitoring and prescription of medications, consultations with specialty physicians, etc.

5.  PHS shall provide dental services for the entire inmate population. Services shall include basic dental services necessary to relieve pain, infection, and preserve

salvageable teeth performed by a licensed dentist. Emergency dental services shall be available on a 24 hour a day basis.

6.    PHS shall provide a total pharmaceutical system for the Jail beginning with the physician's prescribing the medication, the filling of the prescription, the dispensing of medication, and the necessary record keeping. PHS shall be responsible for the costs of all drugs administered, subject to the Annual Aggregate Limit described in Attachment B to the contract. The system shall include prescription medications and over-the-counter medications. All prescription medications shall be prescribed by a physician or psychiatrist and shall be administered by a licensed nurse. All controlled substances, syringes, needles, and surgical instruments will be stored under security conditions acceptable to the County. All released inmates, currently receiving medication, shall be provided with a current prescription.

7.    PHS shall provide a medical detoxification program for drug and/or alcohol addicted inmates, which shall be administered only at the Jail. PHS shall provide intermittent monitoring of the detoxification cells located in the Jail to determine the health status of individuals held in this area. Such monitoring shall include, at a minimum, documented vital signs and determination of level of consciousness every 2 hours (for severe cases).

8.    PHS shall provide all equipment and supplies used in the health care delivery system administered under this contract with the exception of the equipment which is currently in place.

9.    PHS shall furnish and pay for all medically necessary prosthetic devices and appliances and eyeglasses.

10.   PHS shall maintain complete and accurate medical and dental records separate from the confinement records of the inmate. All such records shall remain on County property. In any criminal or civil litigation where the physical or mental condition of an inmate is at issue, PHS shall provide the County with access to such records and, upon request, provide copies. Upon the expiration or termination of the contract, all medical records shall be delivered to and remain with the County. However, the County shall, within the limits of applicable law, provide PHS with reasonable ongoing access to all medical records even after the termination/expiration of the contract to enable PHS to properly prepare for litigation or anticipated litigation or any other legal or regulatory action brought or threatened by third persons in connection with services rendered during the term hereof.

11.   PHS shall provide a consultation service to the County on any and all aspects of the health care delivery system for the Washington County Jail including evaluations and recommendations concerning new programs, transition into new or expanded facilities, staffing patterns for new or expanded facilities, alternate

pharmaceutical and other systems, and on any other matter relating to this contract upon which the County seeks the advice and counsel of the PHS.

12. PHS must maintain the accreditation of the National Commission on Correctional Health Care. Failure to obtain or maintain such accreditation will constitute a material breach of this contract.

13. PHS must provide Methadone program accessibility to pregnant addict inmates.

14. PHS shall provide basic health issues training for Sheriff's Department staff as well as continuing training updates on current, pertinent jail health issues.

15. PHS shall provide for the identification, testing, counseling, education, care, and treatment and follow up HIV/AIDS and AIDS related conditions when medically indicated. This responsibility shall include the provision of payment for AZT and other AIDS related medications, subject to the Annual Aggregate Limit described in Attachment B to the contract.

16. PHS shall be responsible for the handling and disposal of medical waste in accordance with state and local regulations.

17. PHS shall provide mental health services to the inmate population. Such services shall include evaluation by a qualified mental health professional of mental health problems identified upon intake into the jail system; crisis intervention and management of acute psychiatric episodes; stabilization of the mentally ill and prevention of psychiatric deterioration in the jail setting; and elective therapy services and preventive treatment as appropriate. Services shall include the identification, treatment, and referral of individuals deemed a danger to self or others and requiring inpatient services; medication evaluation and monitoring; post-release placement and referral; consultation with the Sheriff 's Department to determine appropriate housing; daily monitoring of segregated housing for chronically impaired.

18. PHS shall provide a comprehensive discharge planning program to prepare inmates with medical conditions for re-entry to the community. Included in this program is Secure Release offers 30 days of medication post-discharge, as well as an appointment with a community-based provider.

## C.    CLINIC/OFFICE SPACE, FURNITURE, AND EQUIPMENT

1. The County shall provide the space, limited furniture, fixtures, utilities, telephone (excluding long distance and toll calls), and security necessary for efficient operation of the health care delivery system. The County shall provide only the equipment presently on-site.

2. Title to all property furnished by County shall remain in County. Title to all property furnished by PHS shall remain with PHS, subject to the provisions of Section C.7. below.

3. PHS hereby agrees to be responsible for any direct loss or damage to property or equipment of the County that is caused by PHS staff due to willful acts or negligence. In like manner, County hereby agrees to be responsible for any direct loss or damage to property or equipment of PHS that is caused by County employees due to willful acts or negligence.

4. Upon the loss of, destruction of, or damage to any of the County property, PHS shall notify the County Contract Administrator and shall take all reasonable steps to protect that property from further damage.

5. PHS shall not use County premises, property (including equipment, instruments, and supplies), or personnel for any purpose other than in the performance of obligations under this contract.

6. PHS shall surrender to County all County property upon the earliest of completion, termination, or cancellation of this contract.

7. The County reserves the right to purchase any equipment purchased by PHS for on-site uses after the termination of this contract. The purchase price for the County shall be the actual cost of the equipment purchased, less depreciation computed using double declining balance over a seven (7) year life.

D. **MEDICAL AUDIT COMMITTEE**

1. PHS shall form a medical audit committee to be responsible for developing, recommending, and implementing all policies and procedures necessary for the operation of the health care program. The objective of this committee shall be to assure quality care is accessible to all inmates.

2. The committee shall contain, at a minimum, the County Contract Administrator or designee, a representative of PHS' administration, nursing, and medical records staff and be acceptable to the County.

3. The committee shall meet at least monthly with an agenda and the recorded minutes shall be submitted to the County Contract Administrator.

4. All services under the purview of health services shall be reviewed and evaluated for quality of care through established and regularly performed audits. These services include, but are not limited to: primary care services, preventative health services; ancillary services including laboratory and x-ray; inpatient service; hospital; pharmacy; medical records, referral medical specialty services; communicable disease control; environmental safety; intake screening health

appraisal; outpatient hospital services; obstetrics and gynecology services; training orientation; and utilization review.

E.    **QUALITY ASSURANCE**

1.    The County Health Officer and/or County Contract Administrator designee, at County expense, shall:

a.    Provide a retrospective audit of medical records for treatment of medical conditions to evaluate the timeliness of care, appropriateness of assessment, treatment, type of provider utilization review process, and level of care.

b.    PHS shall provide a written response to the County Health Officer, and/or County Contract Administrator designee, regarding all recommendations made in the retrospective audit and a written response regarding findings in any cases with which PHS disagrees.

c.    The results of each retrospective audit, as well as recommendations of corrective action, will be provided to the Contract Administrator and shared with PHS, who will be expected to take the recommended corrective action or advise the County why such corrective action should not be taken.

F.    **OVERSIGHT**

1.    The Program Administrator and other appropriate representatives of PHS shall attend meetings scheduled at the request of the County Contract Administrator to report on issues of concern and assure maintenance of the standards for jail medical services.

G.    **REPORTING**

1.    Monthly statistical reports on the health care services shall be provided to the County Contract Administrator using data and report formats approved by the County. In addition to monthly reports, quarterly and annual summaries shall be submitted relating to progress toward agreed upon objectives for the County jail medical services.

## H.    CONFIDENTIAL INFORMATION

1.    Access and Protection.  During the term of the contract, PHS will have access to and become acquainted with confidential information.  PHS, and each of its officers, employees, and agents, shall, subject to applicable County, State, and Federal Government laws and regulations, maintain all confidential information in the strictest confidence and will not at any time use, publish, reproduce, or disclose any confidential information, except to authorized employees, agents and subcontractors requiring such information, as authorized in writing by County, as otherwise specifically permitted herein, or to perform its obligations as authorized hereunder.  PHS shall take all steps necessary to safeguard the confidential information against unauthorized disclosure, reproduction, publication, or use, and to satisfy its obligations under this contract.  Such obligations shall remain in effect for a period of three years from termination of this contract.

2.    Security Requirements.  PHS and its officers, employees, subcontractors, and agents shall at all times comply with all County security standards, practices, and procedures with respect to information and materials which come into PHS' possession and to which PHS gains access under this contract.

3.    PHS will immediately report to County any and all unauthorized disclosures or uses of County's Confidential Information of which it or its Staff is aware or has knowledge.

4.    The use or disclosure by PHS of any County information not necessary for, nor directly connected with, the performance of PHS' responsibility with respect to its services under this contract, is prohibited, except upon the express written consent of County.

5.    The following information shall not be considered confidential information for purposes of this contract: information known by a party when received; information lawfully obtainable from other sources; information necessary to disclose to government authorities having jurisdiction over either party, or as may otherwise be required by law; or information for which such duty as to confidentiality is waived by the disclosing party.

6.    In the event that a subpoena or other legal process in any way concerning County's confidential information is served upon PHS, then PHS agrees to notify County in the most expeditious fashion possible following receipt of such subpoena or other legal process and to cooperate with County, at County's expense, in any lawful effort by County to contest the legal validity of such subpoena or other legal process.

7.    The provisions of this section will survive the termination or expiration of this contract.

# ATTACHMENT B

# PAYMENT - STAFFING - TERM

**A.    PAYMENT – YEAR ONE – JULY 1, 2007 THROUGH JUNE 30, 2008**

    1.    County shall pay PHS a base fee of $230,074.66 per month. This amount is based on PHS providing service for up to and including 600 inmates.

**B.    PAYMENT – YEAR TWO – JULY 1, 2008 THROUGH JUNE 30, 2009**

    1.    County shall pay PHS a base fee of $241,716.42 per month. This amount is based on PHS providing service for up to and including 600 inmates.

**C.    PAYMENT – YEARS THREE AND FOUR AND YEARS FIVE AND SIX**

    1.    On or about January 1, 2009, PHS shall submit to County a cost proposal for providing service for years three and four of the agreement, which shall include base fee, per diem and aggregate cap limits. County may elect to accept PHS' proposal, negotiate the terms, or may elect to terminate the agreement. The process described in this paragraph shall govern all subsequent two year periods of the agreement.

**D.    PAYMENT – RENEWAL TERM**

    1.    On or about January 1, 2013, PHS shall submit to County a cost proposal for Providing service for the first two years of the four (4) year renewal term, which shall include base fee, Per diem and aggregate cap limits. If the proposal is acceptable to the County, the Parties may extend the contract for the renewal term. County may elect to accept PHS' proposal, negotiate the terms, or may elect to initiate a competitive process. County is under no obligation to contract with PHS for the renewal term.

**E.    PAYMENT – PER DIEM**

    1.    For year one, PHS shall be entitled to a per diem of $0.73 for each inmate over 600, calculated over a calendar month.

    2.    For year two, PHS shall be entitled to a per diem of $0.79 for each inmate over 600, calculated over a calendar month.

    3.    The daily population will be recorded each day at 10:00 a.m.

4.    The per diem is intended to cover additional costs in those instances where minor, short-term increases in the inmate population result in the higher utilization of routine supplies and services. However, the per diem is not intended to provide for any additional fixed costs, such as staffing positions, which might prove necessary if the inmate population changes significantly and if the population change is sustained. In such case, PHS shall contact the County to discuss modifying its staffing complement and adjusting its contract price in order to continue to provide services to the revised number of inmates and maintain the quality of care. Any such change would require prior agreement by both parties.

F.    **STAFFING**

1.    Minimum Staff Level. PHS shall maintain the staff levels as set forth in attachment B-1.

2.    Documentation of staffing levels shall be submitted by PHS to the County with its monthly invoice.

G.    **ANNUAL AGGREGATE LIMITS FOR OFF-SITE & PHARMACY SERVICES**

1.    PHS' financial responsibility for medical costs for all off-site and pharmacy services (the "Annual Aggregate Limit") shall be limited to $379,327 for year one. The County shall be 100% responsible for all off-site and pharmacy costs greater than $379,327 for year one. Should the actual costs for off-site and pharmacy services be less than $379,327 for year one, PHS will refund 50% of the amount below $379,327 to the County.

2.    PHS' financial responsibility for medical costs for all off-site and pharmacy services shall be limited to $398,520 for year two. The County shall be 100% responsible for all off-site and pharmacy costs greater than $398,520 for year two. Should the actual costs for off-site and pharmacy services be less than $398,520 for year two, PHS will refund 50% of the amount below $398,520 to the County.

3.    Off-site services costs are those involving inpatient hospitalization, emergency room visits, ambulance transportation expenses, outpatient surgeries, outpatient physician consultations, outside specialist fees, off-site diagnostic procedures and all dialysis treatments, both onsite and offsite. Components covered under pharmacy services costs include: O.T.C. medications, formulary and non-formulary medications, HIV medications, HCV medications, Psychiatric medications, back-up pharmacy expenses, injections, vaccines (including Hepatitis B, flu and rabies), and dispensing fees

H.    **RECONCILIATION OF THE ANNUAL AGGREGATE LIMIT**

1.    In order to manage working capital requirements, which tend to vary as a result of utilization trends, the parties shall perform a quarterly reconciliation of the annual

Aggregate Limit for off-site and pharmacy costs. PHS shall provide quarterly documentation of total "claims adjudicated" (*see definition below*) to support the calculation of the Annual Aggregate status. Such quarterly reconciliations will be provided to the County within thirty (30) days after the end of each quarter. Quarterly reconciliations adjustments will be in the form of a credit memo to the County or an additional invoice to the County payable within thirty (30) of receipt of invoice.

2.    The quarterly reconciliation of the Annual Aggregate Limit shall be determined by comparing the pro-rated portion of the Annual Aggregate Limit (e.g., ¼ of the Annual Aggregate Limit for the first three months of the contract term, ½ of the Annual Aggregate Limit for the first six months, etc.) and the contract year-to-date total of off-site and pharmacy claims adjudicated by PHS. For the purposes of this proposal, the term "claims adjudicated" shall mean claims received by PHS that are matched to authorized medical services, treatments, procedures, events, pharmaceuticals or supplies and priced according to the appropriate fee schedule, then finally approved by PHS for payment or already paid.

3.    PHS will provide a final reconciliation of the Annual Aggregate Limit within 150 days from the end of each contract year. The yearly reconciliation of the Aggregate Limit shall take into account all prior quarterly reconciliations. Yearly reimbursement adjustments from the final reconciliation will be in the form of a credit memo to the County or an additional invoice to the County payable within thirty (30) of receipt of invoice.    In the event there is no subsequent month's invoice, adjustments shall be in the form of a payment to the County or additional reimbursement to PHS. The parties recognize that PHS cannot control the timeliness of the submission of claims from non-contracted third party providers. As a result, there may be instances in which claims are received by PHS after the 150 day final reconciliation period. There may also be instances in which PHS has denied a claim, but the provider has appealed the denial and the claim is still in the appeal process. In these instances, notwithstanding anything in this paragraph to the contrary, County agrees that it will pay such claims to the extent the County is responsible under the annual aggregate limit provisions.

4.    Finally, in addition to the quarterly reconciliation and reporting, any catastrophic/high cost cases shall be reported monthly in order for the County to be made aware of unfavorable cost trends.

## I.    LONG DISTANCE TELEPHONE CHARGES

1.    PHS payments shall be less monthly telephone charges for toll and long distance telephone calls.

## J.    CONTRACT TERM

1.    The initial term of this contract shall be for six (6) years, beginning July 1, 2007 and ending June 30, 2013.

2.     Each period of twelve (12) consecutive months, beginning July 1, 2007, shall refer respectively to year one, year two, etc.

3.     The parties may extend this contract for one (1) additional renewal term of four (4) years.

**K      EQUIPMENT**

1.     PHS shall purchase all equipment and supplies necessary to for the provision of health care services at the County Jail.

**L.     CO-PAY FOR HEALTH CARE DELIVERY**

1.     PHS shall assist the County in the collection of health care fees from inmates as provided by ORS 169.150. All such health care fees collected, shall be retained by County.

**M.     CHANGES IN THE LAW, STANDARD OF CARE OR SCOPE OF SERVICES.**

1.     The prices in this Attachment B reflect the scope of services as outlined in the contract documents and the current community standard of care with regard to health care services. Should there be any change in or modification of inmate distribution, standards of care, scope of services, or number or size of facilities that results in a 10% or greater increase in costs, or if any statute, rule or regulation is passed or any order issued or any statute or guideline adopted increasing the cost to PHS of providing health care services hereunder by 10% or more, the increased costs related to such change or modification are not covered in the contract and will be negotiated between PHS and the County, provided, however, that if the parties are unable to agree on appropriate compensation, either party may terminate the contract with 90 days advance written notice.

## ATTACHMENT B-1

### Prison Health Services, Inc.
### Proposed Staffing for
### Washington County, OR
### ADP 600

| POSITION | Mon | Tue | Wed | Thu | Fri | Sat | Sun | TBS* | Hrs/ Wk | FTE |
|---|---|---|---|---|---|---|---|---|---|---|
| **DAY SHIFT** | | | | | | | | | | |
| Program Administrator | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| Charge Nurse | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| Mental Health RN | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| Qualified Mental Health Prof (MSW) | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| Adult Nurse Practitioner | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| Administrative Assistant | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| Medical Records Clerk | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| Dental Assistant | | 8 | | | | | | | 8 | 0.20 |
| Registered Medical Assistant | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| RN | 16 | 16 | 16 | 16 | 16 | 8 | 8 | | 96 | 2.40 |
| LPN | 16 | 16 | 16 | 16 | 16 | 16 | 16 | | 112 | 2.80 |
| Discharge Planner (LCSW) | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| **TOTAL HOURS/FTE-Day** | | | | | | | | | **576** | **14.40** |
| **EVENING SHIFT** | | | | | | | | | | |
| RN | 8 | 8 | 8 | 8 | 8 | 8 | 8 | | 56 | 1.40 |
| LPN | 16 | 16 | 16 | 16 | 16 | 16 | 16 | | 112 | 2.80 |
| Registered Medical Assistant | 8 | 8 | 8 | 8 | 8 | | | | 40 | 1.00 |
| | | | | | | | | | | |
| **TOTAL HOURS/FTE-Evening** | | | | | | | | | **208** | **5.2** |
| **NIGHT SHIFT** | | | | | | | | | | |
| RN | 8 | 8 | 8 | 8 | 8 | 8 | 8 | | 56 | 1.40 |
| LPN | 8 | 8 | 8 | 8 | 8 | 8 | 8 | | 56 | 1.40 |
| Registered Medical Assistant | 8 | 8 | 8 | 8 | | | 8 | | 40 | 1.00 |
| **TOTAL HOURS/FTE-Night** | | | | | | | | | **152** | **3.80** |
| **TOTAL HOURS/FTE per week** | | | | | | | | | **936** | **23.40** |

*TBS= To be scheduled

### Subcontractors

| POSITION | Mon | Tue | Wed | Thu | Fri | Sat | Sun | TBS* | Hrs/ Wk | FTE |
|---|---|---|---|---|---|---|---|---|---|---|
| **DAY SHIFT** | | | | | | | | | | |
| Medical Director | | 8 | | 4 | | | | | 12 | 0.30 |
| Dentist | | | | | 8 | | | | 8 | 0.20 |
| Psychiatrist | | | | | 8 | | | | 8 | 0.20 |
| **TOTAL HOURS/FTE per week** | | | | | | | | | **28** | **0.70** |

*TBS= To be scheduled

**TOTAL ALL FACILITIES**      **964**    **24.10**

# ATTACHMENT C

# INSURANCE REQUIREMENTS

A.    PHS shall obtain, and at all times keep in effect, **Commercial General Liability Insurance** in the amounts listed below for its activities and operations. The insurance shall include coverage for personal injury, discrimination and civil rights violation claims. PHS shall also obtain and maintain, at all times during the term of this contract, automobile liability insurance, including non-owned and hired automobile liability coverage, with an insurance company approved by the County. All such insurance shall name Washington County, its Commissioners, employees, and agents as ADDITIONAL INSURED. A copy of the certificate of insurance shall be filed with the County prior to the time this contract is executed, providing coverage in the amount of $1,000,000 per claim and $2,000,000 for any number of claims arising in any covered year. Coverage shall be written on an occurrence form.

B.    PHS shall comply with ORS 656.017 for all employees who work in the State of Oregon. PHS shall provide Washington County with certification of **Workers' Compensation Insurance,** with employers' liability in the minimum amount required by Oregon law in effect for each year of this contract.

C.    PHS shall obtain and maintain, at all times during the term of this contract, **Medical Malpractice Liability Insurance** coverage, including coverage for sexual abuse and molestation, with limits of $1,000,000 per occurrence and $3,000,000 for any number of claims arising out of a single incident or occurrence. PHS shall provide continuing liability ("tail") coverage for five (5) years after the expiration or termination of this contract for all insurance noted above or continue a policy that covers the services performed during the contract period.

D.    All insurance policies shall have a minimum 30 days notice of cancellation. Immediate written notice to the County shall be required in the event of cancellation or restriction by the insurance company of any insurance policy referred to in this section.

E.    When insurance coverage is renewed PHS shall provide new certificates of insurance prior to expiration of current policies.

**Washington County**
**Contract Review Committee Worksheet**

Contract # BCC 07-0799
Assigned by Purchasing

Blanket Purchase Order Number _____

*Types:*  **CA** - County Administrator Executes    **BCC** - Board of Commissioner Executes

*NOTE:  Please review all instructions on the back of this worksheet before you begin processing.*

1. Department / Ship To:  HHS _____ / HHS Admin    2. Date:  6/28/07

3. Administrator / Bill To:  Jeff Otis _____ / Health  Human Services    4. Phone:  8630

5. Type of Contract:
☐ (I) Intergovt'l Agreement    ☐ (G) Purchase of Goods    ☐ (C) Construction
☒ (P) Personal/Professional Services    ☐ (L) Lease Agreement    ☐ (T) Trade Service
☐ (A) Amendment/Change Order (list original contract number: _____ )    ☐ (O) Other

6. Minute Order Number  07-238 6/19/07 _____  Bid/RFP #  27002P _____  NIGP Category #  95200

7. Description of Contract:  provide inmate health care services for the Washington County jail

8. Name of Contractor, Lessor, Vendor    Prison Health Services    WISARD Supplier#  10637

9. ☐ MBE    ☐ WBE    ☐ DBE    ☐ ESB (as certified by State of Oregon-Office of Minority, Women & Emerging Small Business)

10. Employer ID# (required for company or corporation) *or* SS# (required for contracts with an individual): _____

11. Effective Date:  7/1/07 _____    12. Termination Date:  6/30/2013

| | | | | |
|---|---|---|---|---|
| 13. Original Contract Amount: | $20,700,000 | 17. ☐ Retainage: | $_____ | |
| 14. Total of Previous Amendments: | $_____ | 18. ☒ Expenditure | $_____ | |
| 15. This Amendment: | $_____ | ☐ Revenue | $_____ | |
| 16. Total Amount of Contract: | $20,700,000 | 19. Chargeable Program #: | | |

20. Source of Funds:  General Fund    21. Payment Terms (monthly installments, progress payments, etc.):  monthly

22. Remarks: ~~BPO #13434~~ Changes made to standard contract. LB

**Check Off List for Attachments in Order of Appearance:**

☐ A copy of the Board agenda item and minute order number for this agreement (if one is applicable).
☐ Insurance Certificates (if applicable, naming the County as additional insured).
☐ A minimum of three copies of the contract, all with original contractor's signature(s).
☐ One copy of either the quote sheet OR justification selection memo OR Invitation to Bid document OR RFP document.
☐ If Bid or RFP – one copy of the contractor's Bid/Proposal Form Packet.
☐ A performance and payment bond (if applicable).

**RECEIVED**
**JUN 2 9 2007**
**COUNTY COUNSEL**

Contract Administrator certifies that no changes have been made to the attached County standard contract. _____

Contract Administrator's Signature _____

23. Signature Route:
1. Department Head:    Date  6/28/07
2. Purchasing Supervisor:    Date  6/28/07
3. County Counsel:    Date  6/29/07
4. County Administrator's Office:    Date  7/2/07

**CONTRACT MUST BE EXECUTED BY BOTH PARTIES BEFORE WORK CAN COMMENCE**

**RECEIVED**
**JUN 2 8 2007**
**WASHINGTON COUNTY**
**PURCHASING DIVISION**

Counsel., Ex. F
pg. 23 of 27

# AGENDA

## WASHINGTON COUNTY BOARD OF COMMISSIONERS

| | |
|---|---|
| **Agenda Category:** | Consent – Support Services |
| **Agenda Title:** | **ACCEPT PROPOSAL/AWARD CONTRACT FOR INMATE HEALTH CARE SERVICES (#27002P)** |
| **Presented by:** | Linda Baumgartner, Purchasing Supervisor |
| | Jeff Otis, Health & Human Services |

**SUMMARY** (Attach Supporting Documents if Necessary)

This agenda item requests that your Board accept the proposal and award a contract to Prison Health Services (PHS) to provide Inmate Health Care Services through June 30, 2013 with an option to renew for one (1) additional four-year period. The contract amount negotiated for the first two years of the contract is $6,060,000. Staff is requesting authorization to negotiate contract amounts in increments of two years, with a not to exceed six-year contract expenditure of $20,700,000. This represents an increase of approximately 13.5% over the current contract costs. The increase is due primarily to an increase in staffing as well as standard medical cost increases.

The required legal advertisement and Request for Proposals was issued February 21, 2007. Proposals were received from Correctional Healthcare Management, Prison Health Services, Wexford Health Sources and NaphCare prior to the due date of March 30, 2007. See Attachment A for a Scoring Summary.

Three staff from HHS and the Jail evaluated the proposals and unanimously recommends Prison Health Services (PHS) (the current contractor). The pricing commitment by PHS is for the first two years of the contract period only. This is because of the uncertainties involved with the cost of providing health care.

## DEPARTMENT'S REQUESTED ACTION:

That your Board accept the proposal and award a contract to Prison Health Services through June 30, 2013, with an option to renew for one additional four-year period, and with a total not to exceed six-year contract expenditure of $20,700,000.

## COUNTY ADMINISTRATOR'S RECOMMENDATION:

I concur with the requested action.

APPROVED WASHINGTON COUNTY
BOARD OF COMMISSIONERS

MINUTE ORDER # **07-238**

DATE **6-19-07**

BY **Barbara Hejtmanek**
CLERK OF THE BOARD

| | |
|---|---|
| Agenda Item No. | **1.jj.** |
| Date: | 06/19/07 |

## ATTACHMENT A - SCORING SUMMARY

| EVALUATION CRITERIA | CORRECTIONAL HEALTHCARE | PRISON HEALTH* | WEXFORD | NAPHCARE |
|---|---|---|---|---|
| Corporate Experience (70 points) | 57 | 70 | 66 | 61 |
| Program / Design Strategy (50 points) | 44 | 49 | 43 | 41 |
| Corporate Capability (30 points) | 23 | 28 | 25 | 18 |
| Budget Narrative (50 points) | 41 | 46 | 38 | 41 |
| TOTAL | 165 | 193 | 172 | 161 |

*Recommend Award

Note: The scores have been averaged with a total of two hundred points possible.

While all of the proposals were competitive in their response for Inmate Health services, Prison Health Services (PHS) was scored higher than the other proposers in all categories by the Evaluation Committee.

A key deciding factor was the program design strategy proposed by PHS as it most closely represented the requirements and objectives outlined in the RFP. In addition, PHS' corporate experience and stability was well documented in their response.

PHS appears better equipped to provide the necessary services based on their proposed staffing pattern. PHS's staffing plan also included a Discharge Planner. The Discharge Planner would be responsible for creating transitional care plans for inmates who will be released into the community.

In addition, PHS will implement their Secure Release program which provides continuity of care for soon-to-be-released inmates on Psychotropic and other medications from the institution back into the community. This program offers 30 days of medication post-discharge, as well as an appointment with a community-based provider.

# *ACORD*™ CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
6/27/2007

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | |
|---|---|---|
| PHILIP E. REISCHMAN GALLAGHER HEALTHCARE ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 9821 KATY FREEWAY, SUITE 700 HOUSTON, TX 77024      1-800-733-4474 | | |
| INSURED | **INSURERS AFFORDING COVERAGE** | **NAIC #** |
| PRISON HEALTH SERVICES, INC. AMERICA SERVICE GROUP INC. 105 WESTPARK DRIVE, SUITE 200 BRENTWOOD, TN 37027 | INSURER A:  LEXINGTON INSURANCE COMPANY | 19437 |
| | INSURER B:  INSURANCE COMPANY OF THE STATE PA | 19380 |
| | INSURER C:  AMERICAN HOME ASSURANCE COMPANY | 19429 |
| | INSURER D:  AIG CASUALTY COMPANY | 19402 |
| | INSURER E:  HARTFORD CASUALTY INSURANCE CO. | 29424 |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADDL INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY CLAIMS MADE  X  OCCUR | 6794311 | 01/01/2007 | 01/01/2008 | EACH OCCURRENCE | $1000000 |
| | | | | | | DAMAGE TO RENTED PREMISES (EA. OCCURRENCE) | $100000 |
| | | | | | | MED EXP (Any one person) | $N/A |
| | | | | | | PERSONAL & ADV INJURY | $1000000 |
| | | | | | | GENERAL AGGREGATE | $10000000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY   PRO-JECT   LOC | | | | PRODUCTS – COMP/OP AGG | $1000000 |
| E | | **AUTOMOBILE LIABILITY** ANY AUTO ALL OWNED AUTOS SCHEDULED AUTOS X HIRED AUTOS X NON-OWNED AUTOS X $1,000 DEDUCTIBLE | 61UUNGY8394 | 01/01/2007 | 01/01/2008 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $N/A |
| | | | | | | BODILY INJURY (Per accident) | $N/A |
| | | | | | | PROPERTY DAMAGE (Per accident) | $N/A |
| | | **GARAGE LIABILITY** ANY AUTO | N/A | N/A | N/A | AUTO ONLY – EA ACCIDENT | $N/A |
| | | | | | | OTHER THAN      EA ACC AUTO ONLY:              AGG | $N/A $N/A |
| | | **EXCESS/UMBRELLA LIABILITY** OCCUR   CLAIMS MADE DEDUCTIBLE RETENTION | N/A | N/A | N/A | EACH OCCURRENCE | $N/A |
| | | | | | | AGGREGATE | $N/A |
| | | | | | | | $N/A |
| | | | | | | | $N/A |
| | | | | | | | $N/A |
| B C C C D | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | WC4552913 WC4552914 (CA) WC4552915 (WI) WC1558098 (FL) WC623293 (OR) | 06/01/2007 06/01/2007 06/01/2007 06/01/2007 06/01/2007 | 06/01/2008 06/01/2008 06/01/2008 06/01/2008 06/01/2008 | X WC STATU-TORY LIMITS    OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | E.L. DISEASE – EA EMPLOYEE | $1,000,000 |
| | | | | | | E.L. DISEASE – POLICY LIMIT | $1,000,000 |
| A | | **OTHER** HEALTHCARE PROFESSIONAL LIABILITY (CLAIMS MADE) | 6794311 | 01/01/2007 | 01/01/2008 | $1,000,000 EACH MEDICAL INCIDENT $3,000,000 AGGREGATE $10,000,000 GENERAL AGGREGATE LIMIT | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS

WC – COVERED STATES: AL, AR, AZ, CA, CO, DC, DE, FL, GA, ID, IL, IN, KS, KY, LA, MA, MD, ME, MI, MN, MO, MS, NC, NJ, NM, NY, OK, OR, PA, RI, SC, TN, TX, UT, VA, VT, WI. WITH REGARD TO WORKERS' COMPENSATION, BLANKET WAIVER OF SUBROGATION AS REQUIRED BY CONTRACT. FOR PROFESSIONAL AND GENERAL LIABILITY, THE CERTIFICATE HOLDER IS AN ADDITIONAL INSURED, BUT ONLY WITH RESPECT TO THE ACTS OF THE NAMED INSURED SHOWN ABOVE.  COVERAGE IS LIMITED TO MEDICAL PROFESSIONAL SERVICES PROVIDED ON BEHALF OF THE INSURED SHOWN ABOVE. RE: PROVIDER AGREEMENT - INMATE HEALTH SERVICES.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| WASHINGTON COUNTY 155 NORTH FIRST AVENUE HILLSBORO, OR 97124 ATTN: CHAIR, BOARD OF COMMISSIONERS | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |
| | AUTHORIZED REPRESENTATIVE       PHILIP E. REISCHMAN |

**ACORD 25 (2001/08)**                                                    **@ACORD CORPORATION 1988**

# IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

## DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend for alter the coverage afforded by the policies listed thereon.

**ACORD 25 (2001/08)**