UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

DEREK JOHNSON, personal representative of
KELLY CONRAD GREEN II, deceased;
KELLY CONRAD GREEN and SANDY
PULVER,

                          Plaintiffs,

                v.

CORIZON HEALTH, INC., a Tennessee
Corporation; LANE COUNTY, an Oregon
county; DR. CARL KELDIE, an individual;
DR. JOE PASTOR, an individual; BECKY
PINNEY, an individual; DR. JUSTIN
MONTOYA, an individual; VICKI THOMAS,
an individual; KIRSTIN WHITE, an
individual; JACOB PLEICH, an individual;
SHARON FAGAN, an individual; ROB
DOTSON, an individual; GUY BALCOM, an
individual; DONALD BURNETTE, an
individual; JOHN DOES 1-10,

                          Defendants.

6:13-cv-1855-TC

ORDER

COFFIN, Magistrate Judge:

      Lane County deputies booked Kelly Green into custody on February 11, 2013, when he allegedly exhibited symptoms of severe mental illness. Green alleges he was not examined or

Page 1 - ORDER

medically screened. On February 12, during a court appearance at about 10:42 a.m., Green ran headfirst into a concrete wall fracturing his neck. Green asserted he could not move. Defendant Lane County and its contracted medical services provider, defendant Corizon Health, Inc. allegedly failed to perform a reasonably necessary medical examination or transport Green to a hospital. Defendants allegedly transported Green back to his cell, without taking measures to stabilize his neck or spine. Defendants left Green incontinent and unmoving in his cell until 4:50 p.m., when he was finally transported to a hospital. Green's injuries left him a quadriplegic.

Green brought this action through a guardian ad litem alleging violations of his civil rights. After filing this action, Green passed away and the case is being maintained by his personal representative.

Previously, plaintiffs sought to compel production of investigations and reviews regarding the injury to Green. After the court declined to allow any purported peer review privilege to prevent disclosure, the parties undertook to review such documents for work product privilege. Plaintiffs now move to compel production of any and all reviews/investigations conducted by Corizon after receipt of the Sentinel Event Notification form advising Corizon of Green's reported suicide attempt on February 12, 2013. In addition, plaintiffs move to compel answers to certain questions from defendant Dr. Justin Montoya.

Plaintiffs demonstrate that Corizon's own policies and its contract with Lane County required it to initiate a review process for the treatment of Green following his efforts to hurt himself, which was designated as a suicide attempt in the sentinel event notification. Such an event requires Corizon staff, according to Corizon's own policy, to send a sentinel event notification to the sentinel event committee at company headquarters in Tennessee. The event notices should trigger a review

process. The process should result in committee minutes and findings made after deliberations, in addition to the sentinel event notification form. The deliberations should include review of the clinical documentation to ensure compliance with Corizon's guidelines, policies, and procedures. Thus far, defendant has only produced the sentinel event notification itself. No production of any documents associated with the review have been produced to plaintiffs.

In addition, Corizon's contract with the Lane County jail expressly obligates it to comply with the National Commission on Correctional Health Care and provide continuous quality improvement. To that end, Corizon is required to perform a review of events like the medical emergency precipitated by Green's apparent suicide attempt. Specifically, a mortality-morbidity review and debriefing of every suicide attempt is required and requires review of the circumstances, relevant facility procedures, training received by involved staff, medical and mental health services and reports involving the victim, possible precipitating factors, and any recommendations for changes to policy, procedures, training, etc.

There appears to be no dispute that regardless of whether legal counsel ordered a review of the event, the review was _required_ by policy and contract. However, defendants maintain that the sentinel event report was prepared solely in anticipation of litigation and thus is not subject to disclosure due to the work product component of the attorney-client privilege.

Trial preparation materials ordinarily are not discoverable unless the requesting party has a substantial need for the work product materials and cannot obtain the substantial equivalent absent undue hardship:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials

Page 3 - ORDER

may be discovered if:

> (I) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed.R.Civ.P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 511 (1947).

The work product doctrine extends to documents created by investigators working for attorneys if the documents were created in anticipation of litigation. In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management), 357 F.3d 900, 907 (9th Cir. 2004). To qualify for protection under the work product doctrine, documents must be prepared (1) in anticipation of litigation or for trial (2) by or for another party or by or for the other party's representative. In re California Public Utilities Com'n, 892 F.2d 778, 780-81 (9th Cir. 1989). Courts examine the totality of the circumstances in making this determination. Arfa v. Zionist Organization of America, 2014 WL 815496 (C.D.Cal March 3, 2014). The party claiming work product protection has the burden of proving the applicability of the doctrine. A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 192 (C.D.Cal. 2006).

If the document is prepared in anticipation of litigation but also to serve another purpose, the document will be deemed prepared "in anticipation of litigation" and eligible for work product protection if the document was prepared or obtained because of the prospect of litigation. In re Grand Jury Subpoena, 357 F.3d at 907. Under this "because of" standard, courts do not weigh the primary or secondary motives behind the creation of the document and instead consider the totality of the

Page 4 - ORDER

circumstances and whether the document would not have been created in a substantially similar form but for the prospect of litigation. Id. at 908. The work product doctrine will apply if the "litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." Id. at 910. Thus, "[i]f the document would not have been generated 'but for' litigation, it is privileged. However, if it was generated for purposes other than litigation, even though litigation may have been a 'real possibility', it must be disclosed." Id.

Defendants assert that the documents requested were ordered and prepared only because plaintiff sent a notice of tort claim and Corizon's senior litigation manager, in consultation with Corizon's attorney, then ordered the investigation and sentinel event report. Apparently, defendant Corizon was dismissive of its contractual obligations and own policies and declined to undertake any investigation in this case until its counsel realized that it needed to figure out what happened. The implication is that legal liability matters to defendant, while the contractual and other standards which are in place for the benefit of the inmates to whom they provide medical care do not.[1]

Defendants' argument hinges on the proposition that the documents were "prepared literally because of plaintiff's notice of tort claim, by Corizon staff, at the direction of Corizon's counsel," and not for a business reason even though they "might have been prepared earlier for a business reason[, but were] not." However, it is not difficult to separate the contractual and policy obligations to

---

[1] Thus, defendants go so far as to assert that there is no evidence that the sentinel event investigation would have ever taken place but for plaintiff's tort claim. Defendants do not, however, dispute that their own policies and the contract with Lane County required it. Indeed, Corizon's chief medical officer and chief mental health officer concede that the a sentinel event notification should have been prepared promptly following Green's transfer to a hospital. But, defendants contend that why the documents were not prepared in the usual course of business is simply irrelevant. It is the court's view, however, that the fact Corizon was independently required to conduct a review of the event is a significant factor to consider under "the totality of the circumstances."

Page 5 - ORDER

Coletti Decl., Ex I
Page 5 of 9

produce the documents from the litigation purpose. To simply assume that defendants would never conduct the required process unless and until litigation is instituted or anticipated would be to presume that defendants do not abide by their obligations. Just because defendants apparently refused to engage in the required process until receipt of the tort claim notice does not prevent the court from separating out the discrete contractual obligation that required the review regardless of the anticipation of litigation. "Because of" does not mean "refuse to unless someone sues" under the totality of the circumstances presented here.

The required review process here only became a dual purpose because defendants refused to engage in the process until plaintiff indicated an intent to sue. To find otherwise would provide a perverse incentive to businesses to avoid any deliberative process until mistakes lead to law suits even in the face of an enforceable obligation to engage in such process. This is especially unwarranted when that business is the providing of medical care to inmates at correctional facilities. The importance of such review is underscored by defendants' own policies requiring the review, which policies do not require possible legal action before being instituted. In sum, when looking at the contractual obligations and defendants' own policies, it simply cannot be said that the documents at issue would not have been generated "but for" litigation. See Umpqua Bank v. First American Title Ins. Co., 2011 WL 997212 at *4 (E.D.Cal. Mar.17, 2011) ("Documents prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protectable as work product."). Accordingly, the motion to compel is granted with respect to any and all reviews/investigations conducted by Corizon after receipt of the sentinel event notification form advising Corizon of Green's reported suicide attempts on February 12, 2013.

In addition, even if the documents could be characterized as work product, plaintiffs have

Page 6 - ORDER

demonstrated a substantial and even compelling need for the materials with no other means for obtaining it. As noted above, a party may discover work product if there is a substantial need and is unable to otherwise obtain the material without undue hardship. Even then, the courts must protect the mental impressions of an attorney. Accordingly, there are two kinds of work product: ordinary work product and opinion work product. See Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000). Opinion work product may be discovered only "when mental impressions are at issue in a case and the need for the material is compelling." Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992). Defendants assert that the subject reports contain "opinion." The court has reviewed the documents in camera and the purported opinion material does not include the mental impressions of counsel or other representatives concerning the litigation itself, but rather expert medical opinion regarding the very issues central to this case.[2]

Thus, plaintiff must show a substantial need for the documents and that the substantial equivalent of the information cannot be procured by other means. Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party. See In re Grand Jury Proceedings, 473 F.2d at 849. A party also does not demonstrate substantial need when it merely seeks corroborative evidence. See Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1308 (D.C.Cir. 1997) (no substantial need when documents sought would merely reinforce known inconsistencies).

In this case, it could be argued that plaintiff can simply depose the doctors involved in the production of the documents, but defense counsel has thwarted every attempt to get at the

---

[2] Nonetheless, plaintiff's need for the materials is compelling. As this is merely the discovery stage, the court does not address the issue of admissibility of the opinion material.

Page 7 - ORDER

information related to the sentinel investigation. For example, defense counsel asserts that plaintiff's counsel was allowed to question Dr. Justin Montoya about his review of physician assistant Kirstin White's neurological exam of Green, but Montoya testified that he did not recall anything specific about any conversations with White immediately following the exam. However, when counsel asked about any written reports he made regarding the care provided by White, he said he made them in the sentinel report. Defense counsel then shut down all further questions that involved anything related to the sentinel report effectively preventing any meaningful answers. See Montoya Depo. (ECF #40-5 at p. 7, Depo. pp. 69-72).

In addition, to the extent testimony has been provided, plaintiff has demonstrated a need for the sentinel review to explore apparent, but not known, inconsistencies and apparent missing medical records.[3] Accordingly, the court compels production of the documents related to the sentinel investigation or any other peer review conducted by Corizon. In addition, the court compels Dr. Montoya to answer questions about that peer review process, his review of physician assistant White's care of Green and charting and any nurses' care, his review of the timing of care, and other care provided to Green, etc. Accordingly, plaintiffs' motion to compel defendant Montoya to answer questions is also granted.

///

///

///

---

[3]E.g., one of the Corizon nurses who participated in the treatment of Green prepared a chart note and put it in Green's Corizon medical chart, but that note no longer exists. For further example, a physician assistant testified that she performed a neurological exam of Green around the time of the incident in the courtroom, but other witnesses contradict that the exam took place.

Page 8 - ORDER

## CONCLUSION

For the reasons stated above, plaintiffs' motions to compel (#s 32 and 40) are granted.

DATED this 12T day of June, 2014.

_____
THOMAS M. COFFIN
United States Magistrate Judge