IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RUSSELL PITKIN and MARY PITKIN, co-personal representatives of the Estate of MADALINE PITKIN, deceased,

    Plaintiffs,

vs.

CORIZON HEALTH, INC., a Delaware Corporation; CORIZON HEALTH, INC., a Tennessee Corporation, WASHINGTON COUNTY, a government body in the State of Oregon; JOSEPH MCCARTHY, MD, an Individual; COLIN STORZ, an individual; LESLIE ONEIL, an individual; CJ BUCHANAN, an individual; LOUISA DURU, an individual; MOLLY JOHNSON, an individual; COURTNEY NYMAN; an individual; PAT GARRETT, in his capacity as Sheriff for Washington County; JOHN DOES 1–10; and JANE DOES 1–10,

    Defendants.

Case No. 3:16-cv-02235-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    The subject of this dispute is the death of Madaline Pitkin while she was in custody at the Washington County Jail; defendant Corizon Health, Inc. was a contractor for Washington

County, providing inmate health services in the jail while Ms. Pitkin was incarcerated there. Before me is a discovery dispute between plaintiffs (the parents and representatives of the deceased) and defendant Corizon Health, Inc. ("Corizon"). The parties disagree on the relevance of documents plaintiffs have requested as well as on the applicability of certain privileges which would bar production of those documents. As explained in further detail below, plaintiffs' Motion to Compel is granted in part and denied in part.

## BACKGROUND

The case sits in the following procedural posture. On November 30, 2016, plaintiffs filed suit against defendant Corizon and others, alleging violations of the Fourteenth Amendment to the United States Constitution as well as the common law torts of wrongful death, negligence, and gross negligence. With respect to the common law claims, plaintiffs seek to hold Corizon liable for the torts of its employees under the theory of *respondeat superior*. Discovery began in January 2017. I ordered an extension of the discovery period on September 8, 2017. On October 20, 2017, plaintiffs filed this motion. Plaintiffs request production of

> 1) Copies of any and all documents relating to Corizon's [S]entinel Event[1] Review Committee and the Sentinel Event investigation, its findings and recommendations compiled in the aftermath of Madaline Pitkin's death;
>
> 2) Copies of any and all documents relating to Corizon's "Procedure In the Event of an Inmate Death" process as required by the National Commission on Correctional Healthcare Standard J–A–10, including but not limited to: any administrative review or clinical mortality review performed in the aftermath of the death of Madaline Pitkin; and
>
> 3) Copies of any and all complaints, settlements and judgments regarding actions filed against Corizon for the ten (10) year period preceding the death of Madaline Pitkin alleging death caused by Corizon's negligence or violations of 42 U.S.C. Section 1983 involving withdrawal from opiate or other drug use.

---

[1] "A Sentinel Event is defined as an event involving death or serious physical or psychological illness/injury or risk thereof. Corizon sentinel events include: ... [a]ll [m]ortalities age less than 60[.]" Jones Decl. Ex. C at 1 Oct. 20, 2017 (doc. 41).

4) Copies of all depositions and related exhibits taken in the case of *Johnson v. Corizon Health Care, Inc.*, No. 6:13-CV-01855-TC (D. Oregon).

5) Copies of any and all documents within Corizon's possession relating to the investigation by the Oregon State Board of Nursing (BON) into Cheryl Buchanan, Molly Johnson, and other Corizon employees, relating to the death of Madaline Pitkin, including, but not limited to, all correspondence from the defendants to the BON, including any complaints filed by the defendants with the BON as well as any correspondence from the BON or the Corizon employees under investigation.

Pls.' Mot. to Compel 2. Corizon opposes plaintiff's motion, offering different rationales for each document, but generally raising concerns about irrelevance and overbreadth and asserting the peer review and attorney-client privileges as well as the attorney work product doctrine.

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). That sweeping mandate is meant to be broadly construed. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (Rule 26 "encompass[es] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."). However,

> [s]uch a broad scope of discovery ... must be balanced against the burden or expense of the particular discovery sought, considering its likely benefit, "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

*Roberts v. Legacy Meridian Park Hosp. Inc.*, 299 F.R.D. 669, 672 (D. Or. 2014) (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii) (2014)).[2] If a party fails to provide discovery materials covered by the

---

[2] In 2015, Rule 26 was amended and the "proportionality factors" formerly located in Rule 26(b)(2)(C)(iii) were moved to Rule 26(b)(1), reordered, and slightly revised. Fed. R. Civ. P. 26 advisory committee's note. Thus, the present version of the rule differs slightly from the rule quoted in *Roberts*, and states that proportionality to the needs of a case is evaluated according to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

Page 3 – OPINION AND ORDER

broad scope of Rule 26, the party requesting those materials may move under Rule 37 "for an order compelling [their] disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party opposing disclosure bears the burden of showing why the motion to compel should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

## DISCUSSION

I. *Corizon is Not Required to Produce the Sentinel Event Documents.*

Plaintiffs seek production of an internal investigation report generated by Corizon in the aftermath of Ms. Pitkin's death. Corizon opposes that request, asserting a peer review privilege under Oregon state law as well as the attorney-client privilege. Because I find that the attorney-client privilege does apply, plaintiffs' request must be denied.

A. *The Peer-Review Privilege Does Not Apply.*

Privileges in federal court are governed by the federal common law of privileges as determined by the federal courts in that circuit. Fed. R. Evid. 501. That is true even in mixed cases involving both state and federal claims. *Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privileges applies."). "The Ninth Circuit [Court of Appeals] does not recognize a federal peer review privilege and expressly has declined to create one." *Roberts*, 299 F.R.D. at 672 (citing *Agster*, 422 F.3d at 839)). Accordingly, "[d]istrict courts in the Ninth Circuit have consistently followed [that court's holding in] *Agster*." *Id.* at 673 (noting that "[t]he Ninth Circuit's holding in *Agster* is consistent with Supreme Court dicta" on the subject).

---

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The revision does not change the substance of the law that was applicable at the time this Court issued the decision in *Roberts* because "[r]estoring the proportionality calculation to Rule 26(b)(1) d[id] not change the existing responsibilities of the court and the parties to consider proportionality" in ruling on or making discovery requests. Fed. R. Civ. P. 26 advisory committee's note.

Page 4 – OPINION AND ORDER

The parties are in federal court, and plaintiffs' case involves both federal claims (Fourteenth Amendment asserted via 42 U.S.C. § 1983) and state claims (common law negligence, gross negligence, and wrongful death). I am bound by the law of the Ninth Circuit. Accordingly, no peer review privilege applies, regardless of any Oregon state statute to the contrary. Corizon's citations to out-of-circuit authority are unavailing.

B.   *The Attorney-Client Privilege Does Apply.*

Within the Ninth Circuit,

> (1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at [the client's] insistence permanently protected (7) from disclosure by [the client] or by the legal advisor, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). "The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). The privilege extends "to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice." *Id.* at 1502 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390–94 (1981)). That lawyers may be involved in "business decision-making . . . is irrelevant. What matters is whether the lawyer was employed with or without reference to his knowledge and discretion in the law to give the advice." *Id.* at 1502 (internal quotation marks and citations omitted).

While application of the attorney-client privilege to corporations' internal investigations is clear after the Supreme Court's holding *Upjohn*, it is less clear whether the privilege still applies when the corporation's purpose for the investigation was not solely—or even mostly—to

Page 5 – OPINION AND ORDER

seek legal advice. While the Ninth Circuit Court of Appeals has not spoken directly on the issue, many courts within the Ninth Circuit have applied the "primary purpose" test to communications providing both business and legal advice. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 628 (D. Nev. 2013) (cataloguing cases and noting that "the Ninth Circuit has not expressly ruled" on a single methodology in this context). The primary purpose test simply requires the party asserting the privilege to "demonstrate that *the* 'primary purpose' of the communication was to obtain or provide *legal* advice." *Id.* (first emphasis provided). However, the test falls short in circumstances where a communication serves many overlapping purposes, and none of them can reasonably be considered "primary" over any other.

On this issue, Corizon's citation to the out-of-circuit case *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014), is instructive. In *Kellogg*, the D.C. Circuit Court of Appeals overturned a district court ruling that the attorney-client privilege did not apply because "KBR had not shown that the communication would not have been made 'but for' the fact that legal advice was sought. KBR's internal investigation, the [district] court concluded, was undertaken pursuant to regulatory law and corporate policy rather than for the purpose of obtaining legal advice." *Id.* at 756 (internal quotation marks and citations omitted). The appellate court explained that the district court "began its analysis by reciting the 'primary purpose' test, which many courts . . . have used to resolve privilege disputes" when an investigation has both a legal and a business purpose. *Id.* at 759. "But in a key move, the District Court then said that the primary purpose of a communication is to obtain or provide legal advice only if the communication would not have been made 'but for' the fact that legal advice was sought." *Id.* (internal quotation marks omitted). The circuit court then reasoned that the "but for" articulation of the "primary purpose" test

is not appropriate for attorney-client privilege analysis. Under the District Court's approach, the attorney-client privilege apparently would not apply unless the sole purpose of the communication was to obtain or provide legal advice. That is not the law. We are aware of no Supreme Court or court of appeals decision that has adopted a test of this kind in this context. The District Court's novel approach to the attorney-client privilege would eliminate the attorney-client privilege for numerous communications that are made for both legal and business purposes and . . . would eradicate the attorney-client privilege for internal investigations conducted by the businesses that are required by law to maintain compliance programs, which is now the case in a significant swath of American industry. . . . [T]he primary purpose test, sensibly and properly applied, cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other. After all, trying to find *the* one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task.

*Id.* (emphasis in original).

I am persuaded by the *Kellogg* court's reasoning, and I adopt it here. Because the Ninth Circuit has not adopted a characterization of the "primary purpose" test that aids in categorizing the kinds of mixed-motive investigations specifically at issue here, I will apply the gloss provided by the D.C. Circuit Court of Appeals in *Kellogg*.

Accordingly, the attorney-client privilege protects the results of the Sentinel Event investigation undertaken by Corizon in the aftermath of Ms. Pitkin's untimely and unfortunate death. Corizon has satisfied each element of the attorney-client privilege standard, showing that it sought factfinding and advice at the direction of Corizon's in-house legal team. Moreover, it showed that at least one primary purpose of the investigation was to "assess the situation from a legal perspective, provide legal guidance, and prepare for possible litigation and/or administrative proceedings." King Decl. ¶ 4 (doc. 46). That Corizon was fulfilling its obligations under its own corporate policies or its contract with Washington County—or both— is of no moment. As the *Kellogg* court explained, "[i]t is often not useful or even feasible to try to determine whether the purpose was A *or* B when the purpose was A *and* B." *In re Kellogg*

*Brown & Root, Inc.*, 756 F.3d at 759 (emphasis added). Common sense suggests that the death of an inmate would trigger numerous obligations for the organization charged with her care, not the least of which would be an assessment of liability. Accordingly, the attorney-client privilege applies to the Sentinel Event investigation, and Corizon is not required to produce it.

II.     *Corizon Is Not Required to Produce the J–A–10 Investigation Documents.*

Next, plaintiffs request an order compelling production of investigative documents resulting from the mandatory J–A–10 Procedure in the Event of an Inmate Death investigation required by the National Commission on Correctional Health Care (NCCHC). Creation of that document was mandatory pursuant to Corizon's contract with Washington County. While the J–A–10 investigation is required by Corizon's contract with Washington County, it is indistinguishable from the Sentinel Event investigation required by Corizon's internal policies and procedures. In fact, the two documents are one and the same. Accordingly, Corizon objects to producing the two reports on similar grounds. Corizon asserts the same peer review privilege shown to be inapplicable to the Sentinel Event investigation; it is likewise inapplicable here. Corizon also asserts the attorney-client privilege. Because the documents were created pursuant to the same internal process, and because that internal process satisfies the Ninth Circuit standard for application of the attorney-client privilege, I hold that the privilege applies to both the Sentinel Event investigation and the J–A–10 investigation.

Because the J–A–10 investigation is shielded by privilege, it is unnecessary to determine whether it is protected by the work product doctrine or by Federal Rule of Evidence 407, which governs the admissibility of subsequent remedial measures. I reach no decision on those issues.

III. *Corizon Must Produce the Requested Litigation Documents from the Last Ten Years.*

Plaintiffs requested that Corizon produce evidence of "lawsuits and judgments against Corizon and related entities alleging negligence and Section 1983 violations or an award of punitive damages for the ten years prior to Ms. Pitkin's death."[3] Pls.' Mot. to Compel 11. According to plaintiffs, "Corizon objected on the basis of relevance, overbreadth, proportionality, and undue burden." *Id.* However, in its Response to Plaintiffs' Motion to Compel, Corizon only raises arguments concerning relevance and overbreadth. I find the documents to be sufficiently relevant to plaintiffs' lawsuit to warrant discovery; in the absence of any evidence of an undue burden on Corizon to produce those documents, I will compel their production.

As explained above, Rule 26 permits broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Relevant information for the purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (internal quotation marks omitted). "District courts have broad discretion in determining relevancy for discovery purposes." *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The party opposing discovery on relevance grounds must show why the requested information is not relevant. *Blankenship*, 519 F.2d at 429.

---

[3] The exact parameters of plaintiffs' request are not clear from the briefing on this motion. According to Corizon, it is unsure whether plaintiffs have limited their request to only those cases involving withdrawal from opiate or other drug use or whether they seek documents on all inmate deaths. Defs.' Resp. to Pls.' Mot. to Compel 7 & n.13. Because plaintiffs most recently restated their request in their Motion to Compel, and they elected for the narrower parameters, I limit the scope of this order to the narrower formulation. *See* Pls.' Mot. to Compel 11 ("Defendant should be required to produce actual documents (complaints, settlements, and judgments), for the full ten years (from 2004–2014), for cases involving similar claims as raised here—deaths involving withdrawal from opiate or other drug use.").

Page 9 – OPINION AND ORDER

Plaintiffs seek relief according to a *Monell* theory of liability under 42 U.S.C. § 1983. Under *Monell*, municipalities and local governments can be held liable for deprivations of constitutional rights visited pursuant to an official government policy or a longstanding governmental custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). However, establishing such a custom requires a showing that the behavior is so "persistent and widespread" that it can be considered a "permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). Indeed, a custom "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* Thus, in order to achieve the relief they desire, plaintiffs must succeed in showing that Corizon had a "longstanding", "persistent", "widespread", "permanent", and "well settled" [sic] custom of depriving inmates of their constitutional rights, and that the custom is of sufficient "duration, frequency and consistency" to give rise to *Monell* liability. *Id.*; *see also Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017).

With that in mind, I find that plaintiffs' requested documents are relevant. In evaluating plaintiffs' motion to compel, I considered several potential limitations on plaintiffs' request: temporal, geographical, content-based, and otherwise. Yet in view of plaintiffs' decision to limit their request to a ten-year time period, I am unable to find a further limitation that is principled and rational. Corizon is a massive corporation that "administers healthcare in half of the states in this country, including jails and prisons of numerous sizes, with varying conditions and security levels." Defs.' Resp. to Pls.' Mot. to Compel 8. While Corizon took pains to explain that its "clinical staff is separate and distinct at each location", it has not addressed the fact that policies, customs, or other aspects of the corporate "culture" may manifest in local offices. *Id.* By

analogy, while it is true that Wal-Mart maintains a separate and distinct retail staff at each location, decisions made at the corporate headquarters in Bentonville, Arkansas can and likely do impact employee behavior at a local store in Salem, Oregon. Moreover, large corporations with locations around the country have been known to employ district, area, or regional managers to oversee operations in multiple cities, counties, or even states—and those managers are capable of establishing policies or customs that could be relative to plaintiffs' claims. So an incident that occurs in Kuna, Idaho or Florence, Arizona might bear a strong connection to one occurring in Hillsboro, Oregon because it occurred under the same regional policy.

As the party opposing discovery, Corizon bore the burden of showing that something less than plaintiffs' full request might satisfy plaintiffs' needs and rights under Rule 26. More than that, Corizon has all of the information to provide such a nuanced response: it knows its own organization and management structure better than anyone, and it is better positioned to assert that certain regions might be hermetically sealed from others—such that evidence of an incident in Manatee County, Florida, for example, might actually have little relevance to operations in Washington County, Oregon. Corizon, however, has not posited any such geographical limitations. Accordingly, I find that the complaints, settlements, and judgments of all lawsuits filed against Corizon concerning inmate deaths resulting from withdrawal of opiates or other drugs within the last ten years are relevant to establishing a policy or custom of depriving inmates of their constitutional rights and must be produced.

A brief note about undue burden: when considering the relevance of sought discovery, Rule 26 cautions courts to consider as well "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P.

26(b)(1). Corizon could have presented evidence or argument showing that complying with plaintiffs' request would be unduly burdensome; had they done so, I would have had to balance Corizon's potential burden against the likely utility of the information sought in the request. But Corizon presented no such evidence. A company of Corizon's admitted size and scope presumably has the resources to generate a prompt answer to plaintiffs' request. I must assume, in the absence of evidence or argument to the contrary, that producing these documents will be minimally burdensome. Plaintiffs' motion with respect to these litigation documents is granted.

IV. *Corizon Must Produce the Deposition Transcripts and Exhibits from* Johnson v. Corizon Health, Inc., *No. 6:13-cv-01855-TC.*

Plaintiffs also seek depositions and exhibits from a recent District of Oregon case, *Johnson v. Corizon Health, Inc.* Plaintiffs aver that the material is relevant because it contains "information regarding Corizon's policies and practices regarding jail safety and medical care of inmates[.]" Pls.' Mot. to Compel 13. As explained above, establishing the existence of a longstanding and persistent policy or custom is critical to plaintiffs' success in this lawsuit. Corizon opposes the request on the grounds that it is irrelevant or overbroad because the inmate in *Johnson* died from an allegedly undiagnosed head trauma in a Lane County Jail and Ms. Pitkin died from symptoms of withdrawal in the Washington County Jail. Corizon contends that plaintiffs' request is like "requesting records from a case concerning failure to diagnose a spinal injury at Kaiser Sunnyside in Clackamas be produced in a case concerning inadequate treatment for detoxification at Kaiser Permanente Downtown Eugene." Defs.' Resp. to Pls.' Mot. to Compel 10.

I find Corizon's analogy instructive, but I reach a different conclusion. If the lawsuit in Corizon's example were charging Kaiser Permanente with providing deficient care on a scale equivalent to that alleged by plaintiffs here, I would think that court records from a failure to

26(b)(1). Corizon could have presented evidence or argument showing that complying with plaintiffs' request would be unduly burdensome; had they done so, I would have had to balance Corizon's potential burden against the likely utility of the information sought in the request. But Corizon presented no such evidence. A company of Corizon's admitted size and scope presumably has the resources to generate a prompt answer to plaintiffs' request. I must assume, in the absence of evidence or argument to the contrary, that producing these documents will be minimally burdensome. Plaintiffs' motion with respect to these litigation documents is granted.

IV. *Corizon Must Produce the Deposition Transcripts and Exhibits from* Johnson v. Corizon Health, Inc., *No. 6:13-cv-01855-TC.*

Plaintiffs also seek depositions and exhibits from a recent District of Oregon case, *Johnson v. Corizon Health, Inc.* Plaintiffs aver that the material is relevant because it contains "information regarding Corizon's policies and practices regarding jail safety and medical care of inmates[.]" Pls.' Mot. to Compel 13. As explained above, establishing the existence of a longstanding and persistent policy or custom is critical to plaintiffs' success in this lawsuit. Corizon opposes the request on the grounds that it is irrelevant or overbroad because the inmate in *Johnson* died from an allegedly undiagnosed head trauma in a Lane County Jail and Ms. Pitkin died from symptoms of withdrawal in the Washington County Jail. Corizon contends that plaintiffs' request is like "requesting records from a case concerning failure to diagnose a spinal injury at Kaiser Sunnyside in Clackamas be produced in a case concerning inadequate treatment for detoxification at Kaiser Permanente Downtown Eugene." Defs.' Resp. to Pls.' Mot. to Compel 10.

I find Corizon's analogy instructive, but I reach a different conclusion. If the lawsuit in Corizon's example were charging Kaiser Permanente with providing deficient care on a scale equivalent to that alleged by plaintiffs here, I would think that court records from a failure to

diagnose claim at a Kaiser facility just two hours away would be *highly* relevant. The two facilities might share common corporate policies on patient intake, patient screening, diagnosis protocols, employee training, employee reporting, or myriad other subjects affecting the quality of care of both decedents. Frankly, I find this legally indistinguishable from plaintiffs' request for other related litigation documents in section III, *supra*. Both are relevant to plaintiffs' theory of the case, and Corizon has not introduced any evidence that production would be unduly burdensome. Accordingly, plaintiffs' motion as to the *Johnson* transcripts is granted.

V.  *Corizon Must Produce Documents in its Possession Relating to the Oregon Board of Nursing Investigations of Corizon Personnel.*

Finally, plaintiffs seek disclosure of any documents in Corizon's possession related to investigations conducted by the Oregon State Board of Nursing (BON) into Cheryl Buchanan, Molly Johnson, and any other Corizon employees after Madaline Pitkin's death. Plaintiffs argue that the documents are plainly relevant and that any state laws concerning the confidentiality of such documents only restrict the BON and not the subjects of or participants in the investigation. Corizon objects on the grounds that Or. Rev. Stat. § 676.175 prevents disclosure of any materials related to a BON investigation and that, in any case, Or. Rev. Stat. § 678.126 guarantees immunity from civil suit to any person or organization that provides information to a BON investigation.

The arguments on this subject are nuanced, to be sure, and Corizon is correct that there is no published case law discussing the scope of Or. Rev. Stat. § 678.126. Accordingly, the parties raise a first-impression question of statutory interpretation. When a federal court is asked to interpret a state statute, it must "begin by looking to the decisions of the [state] courts. If those decisions are unavailing and the question is one of first impression, [it] must identify the result [it thinks] the [state's highest court] would reach if it were presented with the same question."

Page 13 – OPINION AND ORDER

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 614 (9th Cir. 2017) (citing *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017)). When attempting to "determine what meaning the state's highest court would give to the law[,]" a federal court "must follow the state's rules of statutory interpretation." *Brunozzi*, 851 F.3d at 998.

"Under Oregon law, the first step involves an examination of the text and context." *Id.* (internal quotation marks omitted and alterations normalized). "In the second step, the court will consult proffered legislative history[.]" *Id.* (internal quotation marks omitted and alterations normalized). Because the parties have not proffered any legislative history, I will cabin my analysis to the first step, exploring only the statute's text and context in order to determine the Oregon legislature's intent. *See* Or. Rev. Stat. § 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provided to the court.").

A. *Or. Rev. Stat. § 676.175 Does Not Prevent Disclosure by Non-State Actors.*

Corizon first argues that information obtained by the BON pursuant to an investigation is confidential under Or. Rev. Stat. § 676.175. Defendant's argument actually depends on two statutory provisions. Or. Rev. Stat. § 678.126(1) explains that "[a]ny information that the Oregon State Board of Nursing obtains" pursuant to laws concerning licensure, discipline, and revocation "is confidential as provided under [Or. Rev. Stat.] § 676.175." Put another way, those documents are confidential *only to the extent* that such confidentiality is defined by Or. Rev. Stat. § 676.175. That provision states, in relevant part, that "[a] health professional regulatory board shall keep confidential and not disclose to the public any information obtained by the board as part of an investigation of a licensee or applicant[.]" Or. Rev. Stat. § 676.175(1).

Plaintiffs argue that the plain text of the statute does not prohibit *Corizon* from disclosing information related to the BON investigation because Corizon is not a "health professional regulatory board." I am persuaded by plaintiffs' reasoning. The text of the statute does not appear to contemplate individuals at all. In addition, the context of the provision supports this reading: the statute exists within a larger statutory section broadly addressing the duties of public bodies and the public employees that comprise them. *See, e.g.*, Or. Rev. Stat. §§ 676.165, 676.177, 676.180. None of those provisions discuss the duties of subjects of or participants in any regulatory board investigation. Therefore, § 676.175 does not bar Corizon from producing the documentation plaintiffs request.

B. *Or. Rev. Stat. § 678.126 Does Not Prevent Information Providers From Disclosing Information in a Civil Suit.*

Next, Corizon argues that it is protected from disclosure by subsection (3) of Or. Rev. Stat. § 678.126, which provides that "[a]ny person, facility, licensee, or association that reports or provides information to the board under [laws concerning licensure, discipline, and revocation] in good faith shall not be subject to an action for civil damages as a result thereof." Corizon argues that because disclosure of the BON's investigatory records could lead to the imposition of damages in this civil action, discovery of those records is expressly prohibited by the language of Or. Rev. Stat. § 678.126(3).

I cannot agree with Corizon's interpretation. I construe the statutory language as creating a much narrower immunity. The subsection states that an information provider shall not be subject to an action for civil damages "as a result" of providing that information. I read that as protecting the information provider from a very narrow type of lawsuit: an action challenging the *provision of information to the BON*. However, if a civil action is the result of varied and multiple acts and behaviors, information on which the information provider also provided to the
Page 15 – OPINION AND ORDER

BON, then the statute does not bar the suit. What kind of lawsuit might be based solely on an individual's testimony to a regulatory board? One example is a retaliatory action against an individual who has come forth with evidence of perceived wrongdoing by the organization who employed her. Another would be a claim for defamation or intentional interference with economic relations by the subject of an investigation who is not necessarily an employer, but is instead a former coworker or peer of the information provider. While it is not express in the statutory language, the most logical intent of this provision is to encourage and protect whistleblowers by ensuring they won't be sued by their employers, employees, or colleagues for providing testimony that may ultimately be beneficial to the public.

That reading is supported by the statute's context. As Corizon points out, Or. Rev. Stat. § 676.175(7) explains that regulatory board investigative materials are not admissible in a civil proceeding between private parties. Accordingly, testimony or information provided to the BON cannot serve as evidence of any allegedly unlawful behavior; if a whistleblower were subject to suit *solely* for communicating information to the BON, there would be no documentary evidence of that communication. The whistleblower might be *ipso facto* immune from suit. By making that immunity explicit for BON investigations, the Oregon legislature buttressed its protections for whistleblowers in nursing and other public health facilities and ensured their immunity.

Additionally, this interpretation finds support in the sheer nonsensicality of Corizon's interpretation. Corizon insists that requiring it "to produce these documents may expose the organization to civil damages, thereby potentially punishing the organization for its good faith participation in the BON investigation in direct contravention of" Or. Rev. Stat. § 678.126(3). Thus, under Corizon's reading, any action that might "expose the organization to civil damages" is prevented under the law. Corizon thereby maintains that it was the intent of the Oregon

Page 16 – OPINION AND ORDER

Legislature to provide massive-scale immunity from tort liability to any medical provider willing to provide any related information to a BON investigation on a subject incident. Taken to its logical conclusion, that would mean that a hospital could engage in gross negligence by hiring unqualified staff, leading to the wrongful deaths of a dozen patients, yet be completely immunized from the dozen or more survivor actions that would follow simply by providing information to the BON about those unqualified employees. That outcome is both irrational and unjust, and it violates at least one provision of the Oregon Constitution. *See* Or. Const. Art. I, § 10 ("[E]very man shall have remedy by due course of law for injury done him in his person, property, or reputation."). That cannot have been the Oregon Legislature's intent.

Finally, I address Corizon's argument that public policy favors its interpretation of the statute. Corizon reasons that allowing disclosure of materials provided for BON investigations would remove an incentive for individuals and facilities to comply with BON requests. While that argument is sound, it ignores the full suite of state statutes regulating the nursing profession. First, health care facilities (like Corizon) have a legal duty to report any suspected violations of nurse licensing laws or other rules adopted by the BON. Or. Rev. Stat. § 678.135. In addition, all BON investigations are conducted "[i]n the manner prescribed in ORS chapter 183 for a contested case[,]" meaning the BON has authority to "issue subpoenas on its own motion[.]" Or. Rev. Stat. §§ 678.111, 183.440. Thus, while Corizon is partially correct that ordering disclosure of information voluntarily provided to the BON may disincentivize future voluntary disclosures, it would not leave the BON—and thus the public—without recourse to access the information needed to ensure thorough and accurate investigations in furtherance of greater public health. Therefore, I find that Corizon's public policy argument, while logical, cannot override the plain text of the statute. Or. Rev. Stat. § 678.126(3) does not prevent the disclosure of materials

provided to the BON pursuant to an investigation even if such disclosure is sought in a pending civil action for damages.

## CONCLUSION

Plaintiff's Motion to Compel (doc. 40) is GRANTED IN PART and DENIED IN PART as explained in greater detail herein.

IT IS SO ORDERED.

Dated this 14th day of December 2017.

Ann Aiken
United States District Judge