**Timothy J. Jones, OSB No. 890654**
Email: tim@timjonespc.com
**Tim Jones PC**
888 SW 5th Avenue, Suite 1100
Portland OR 97204
Phone: (503) 374-1414
Facsimile: (971) 925-9034

**John M. Coletti, OSB No. 942740**
Email: john@paulsoncoletti.com
**Paulson Coletti Trial Attorneys PC**
1022 NW Marshall Street, Suite 450
Portland, OR 97209
Phone: (503) 226-6361
Facsimile: (503) 226-6276

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON - PORTLAND DIVISION

| | |
|---|---|
| **RUSSELL PITKIN and MARY PITKIN, Co-Personal Representatives of the Estate of MADALINE PITKIN**, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>**CORIZON HEALTH, INC.**, a Delaware Corporation; **WASHINGTON COUNTY**, a government body in the State of Oregon; **JOSEPH MCCARTHY, MD**, an individual; **COLIN STORZ**, an individual; **LESLIE O'NEIL**, an individual; **CJ BUCHANAN**, an individual; **LOUISA** | Case No. 3:16-cv-02235-AA<br><br>**FIRST AMENDED COMPLAINT**<br><br>**VIOLATION OF CIVIL RIGHTS (42 USC § 1983) and SUPPLEMENTAL STATE CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Page 1 – **First Amended Complaint**

**DURU**, an individual; **MOLLY JOHNSON**,
an individual; **COURTNEY NYMAN**,
an individual; **JOHN DOES 1-10**, as they
relate to Corizon Health, Inc. only;
and **JANE DOES 1-10**, as they relate to
Corizon Health, Inc. only,

           Defendants.

_____

## INTRODUCTION

1.    Madaline Pitkin was arrested the evening of April 16, 2014 by Tualatin Police Department for unlawful possession of heroin. A few hours later she was booked into the Washington County jail.   At that time, and all times relevant, Washington County contracted with Corizon Health, Inc. to provide medical services at the jail.   At intake (4/17/14, about 4:14 am), Pitkin notified medical staff that she last used heroin, one gram intravenously, about 7 pm the prior evening, and that she was feeling the effects of withdrawal.   Pitkin was placed in the general population unit, where she remained for seven days.   The following morning (4/18/14) LPN Louisa Duru performed a Clinical Opiate Withdrawal Scale (COWS) evaluation of Pitkin.   That evaluation was flawed in at least one respect (numeric results incorrectly tabulated).   LPN Duru then ordered Pitkin started on a Partial Opiate Withdrawal Protocol.   Duru later advising investigators that she had checked with the doctor for approval of her actions.   The only doctor working at the jail at this time, Joseph McCarthy, MD, had not, however, been consulted by LPN Duru concerning her COWS evaluation or initiation of the Partial Opiate Withdrawal Protocol.   LPN Duru advised Pitkin to let them know if she felt sick by putting in a medical request (Health Care Request) form.   Over the next

Page 2 – **First Amended Complaint**

seven days Pitkin's condition deteriorated.    During those seven days Pitkin submitted

at least four Health Care Request forms asking for medical care.    None resulted in an

exam, evaluation or other contact with medical staff.    Rather, each request for medical

attention received only a notation on the form by an LPN or RN.    During those seven

days deputies at the jail expressed concern about Pitkin's deteriorating condition.

During those seven days video surveillance confirms Pitkin's deteriorating physical

condition.    By 4/23/14 jail deputy staff had made multiple calls to Corizon personnel

notifying them of Madaline Pitkin's serious medical needs.    Ms. Pitkin was seen by

Tony Wertz LPN who, after several attempts, documented her blood pressure as

40/UA. Mr. Wertz contacted more qualified staff seeking assistance to obtain a blood

pressure. Ms. Pitkin was then seen by CJ Buchanan RN, the Corizon Medical Director

Joseph McCarthy MD, and the Director of Nursing Leslie O'Neil. All struggled to

obtain a blood pressure, none documented their findings.    Ms. Pitkin was transferred

to the Medical Observation Unit (MOU).    This was the only time Pitkin was seen by

a medical doctor in the jail.    The following morning (4/24/14) Pitkin was found dead

in her cell in the MOU.    Dr. McCarthy, the only physician on staff at the Washington

County jail, was fired the day before Pitkin's death (4/23/14). There was no physician

nor was there a medical director on staff at the Washington County jail the day

Madaline Pitkin died.    The firing of Dr. McCarthy resulted in Colin Storz PA being

rendered unable to practice medicine the day of Ms. Pitkin's death.

## JURISDICTION AND VENUE

2.    This action arises under the constitution and laws of the United States and jurisdiction is

Page  3  – **First Amended Complaint**

based on 28 USC § 1331 and 28 USC § 1343(a).  This Court has pendant jurisdiction of the state law negligence claims pursuant to 28 USC § 1367, and diversity jurisdiction pursuant to 28 USC § 1332(c)(2).

## PARTIES

3.    Plaintiffs Russell Pitkin and Mary Pitkin are the duly appointed personal representatives of the Estate of Madaline Pitkin, deceased (hereinafter referred to as Pitkin).  Russell and Mary Pitkin are the parents of Madaline Pitkin, deceased.   At the time of her death, Pitkin was a citizen and a resident of the State of Oregon.   At all times pertinent, Madaline Pitkin was a detainee in the Washington County Jail.

4.    Corizon Health, Inc. is a Delaware corporation authorized to do business in the State of Oregon (hereinafter referred to as Corizon).   At all relevant times, Corizon's business is providing medical services in jails and prisons nationally, and in Washington County jail specifically.   At all pertinent times herein, Corizon was acting under color of state law.

5.    Washington County is an Oregon county.   Washington County operates a jail in Hillsboro, Oregon, and is responsible for the provision of medical care for all detainees and persons in its custody.   At all times material, Washington County contracted with Corizon to provide all necessary medical care to detainees and persons held at the Washington County jail.

6.    Based upon information and belief, Defendant McCarthy was a licensed physician and was the Medical Director for Corizon at the Washington County jail in April of 2014, and at all times pertinent was responsible for the health policies, customs, procedures and practices utilized by Corizon employees working in the Washington County jail.   McCarthy's last

Page 4 – **First Amended Complaint**

day at the Washington County jail was 4/23/14, the day before Pitkin's death.   On 4/24/14, the day of Pitkin's death, there was neither a physician nor a medical director assigned to the Washington County jail.   At all material times, defendant McCarthy was acting under color of state law.   Based upon information and belief, defendant McCarthy is a citizen and resident of the State of Oregon.

7.    Based upon information and belief, defendant O'Neil, a registered nurse, was the Director of Nursing for Corizon in April of 2014, and at all times pertinent was responsible for the nursing policies, customs, practices and procedures utilized by Corizon employees working in the Washington County jail.   At all times herein pertinent, defendant O'Neil was acting under color of state law.   Based upon information and belief, defendant O'Neil is a citizen and resident of the State of Oregon.

8.    Based upon information and belief, defendant Storz, a licensed physician assistant, was the only physician assistant working for Corizon at the Washington County jail.   As such, he was under the supervision of defendant McCarthy, and was responsible for medical care policies, customs, practices and procedures utilized by Corizon employees working in the Washington County jail.   As a result of the firing of Dr. McCarthy, Storz was rendered unable to practice medicine the day of Madaline Pitkin's death.   At all times herein pertinent, defendant Storz was acting under color of state law.   Based upon information and belief, defendant Storz is a citizen and resident of the State of Oregon.

9.    Based upon information and belief, defendant Buchanan, a registered nurse, was a Corizon employee who, at all times pertinent, was a nurse working in the Washington County jail. At all times herein pertinent, defendant Buchanan was acting under color of state law.

Page 5 – **First Amended Complaint**

Based upon information and belief, defendant Buchanan is a citizen and resident of the State of Oregon.

10.   Based upon information and belief, defendant Duru, a licensed practical nurse, is a Corizon employee who at all times pertinent was a licensed public nurse working in the Washington County jail.   At all times herein pertinent, defendant Duru was acting under color of state law.   Based upon information and belief, defendant Duru is a citizen and resident of the State of Oregon.

11.   Based upon information and belief, defendant Johnson, a registered nurse, is a Corizon employee who, at all times pertinent, was a licensed registered nurse working in the Washington County jail.   At all times herein pertinent, defendant Johnson was acting under color of state law.   Based upon information and belief, defendant Johnson is a citizen and resident of the State of Oregon.

12.   Based upon information and belief, defendant Nyman, a licensed practical nurse, is a Corizon employee who, at all times pertinent, was a licensed public nurse working in the Washington County jail.   At all times herein pertinent, defendant Nyman was acting under color of state law.   Based upon information and belief, defendant Nyman is a citizen and resident of the State of Oregon.

13.   At all material times, defendants John Does 1-10 and Jane Does 1-10 are Corizon employees, officers, administrators, and supervisors responsible for the provision of medical services, the enactment and implementation of policies, practices, and customs relating to the delivery of health care at the Washington County jail.   At all times herein pertinent, defendants John Does 1-10 and Jane Does 1-10 were acting under color of state

Page  6 – **First Amended Complaint**

law.

## FACTUAL ALLEGATIONS

14.    Washington County's Hillsboro jail houses pretrial detainees and persons convicted of crimes.   Washington County is obligated by state and federal law to provide medical and mental health care for persons lodged in the Washington County jail.

15.    Since opening the jail in Hillsboro in 1998, Washington County repeatedly contracted with Corizon Health, formerly Prison Health Services, to provide healthcare to jail inmates and detainees.   In exchange for a fee, Corizon assumed all responsibility to establish a Medical Audit Committee, to assure that quality health care was accessible to all inmates; to implement all policies and procedures necessary for operation of the Washington County jail healthcare program, to tailor specific policies and procedures for the Washington County jail as required by the National Commission on Correctional Healthcare standards (NCCHC); to provide a medical detoxification program for drug and/or alcohol addicted inmates and detainees; to provide intermittent monitoring of all detoxification cells located in the jail to determine the health status of individuals, monitoring including, at a minimum, documentation of vital signs and a determination of levels of consciousness every two hours for severe cases; to provide Washington County with notice of any claim made against Corizon by any third party; to recruit, interview, hire, train and supervise all healthcare staff; to implement a Quality Assurance Program; and to maintain staffing levels set forth by the contract with Washington County and consistent with the standards set forth by the NCCHC.

16.    Prior to the death of Madaline Pitkin, the Washington County Administrator's Office

Page  7 – **First Amended Complaint**

requested an audit of the jail healthcare contract with Corizon due to significant increases in jail healthcare costs and substantial overruns of the jail healthcare budgets.

17. On May 7, 2013, the Washington County Auditor issued an Interim Report citing staffing deficiencies in jail health services. The Auditor recommended amending the contract to include additional reporting and penalties for noncompliance. The policymakers at Washington County took no action on the recommendations of the Auditor prior to the death of Madaline Pitkin.

18. In November of 2013, the Auditor released a preliminary draft of Anticipated Audit Findings and Recommendations. The Auditor concluded the Contract Administrator for Washington County did not monitor or enforce the County's Standard Contract Terms and Conditions. Among his findings: The County did not establish an effective system for monitoring the quality of healthcare provided to jail inmates, the County did not notify County Counsel and purchasing of breaches of the terms of the healthcare contract as required by County contract administration guidelines, the Contract Administrator for Washington County did not direct Corizon to provide records requested by the Auditor. The Auditor recommended the Contract Administrator for Washington County require Corizon provide staffing reports in the details specified in the staffing plan. The policymakers at Washington County took no meaningful action on the Auditor's Findings and Recommendations prior to the death of Madaline Pitkin.

19. In the months prior to Madaline Pitkin's death, Corizon's Health Services Administrator alerted senior management at Corizon they were understaffing the Washington County jail and that Medical Director Dr. Joseph McCarthy was falsifying medical records, while

Page 8 – **First Amended Complaint**

failing to see patients.   In the months prior to the death of Madaline Pitkin, Corizon's Health Services Administrator for the Washington County jail repeatedly requested defendant McCarthy be fired.

20.    In the months prior to the death of Madaline Pitkin, Corizon's Physician's Assistant at the Washington County jail notified policymakers at Washington County that Corizon was placing profit over patient safety. She also conveyed to the policymakers Washington County and senior management at Corizon that the Washington County jail was understaffed, its medical staff insufficiently trained, thereby placing the patient population at substantial risk of harm.

21.    In the years prior to the death of Madaline Pitkin, Corizon's leading authority on addiction medicine made multiple requests of senior management that Corizon make available the drug Suboxone and train its employees in its use. Prior to the death of Madaline Pitkin, with the exception of a pilot program in the state of New Mexico, Suboxone remained unavailable at facilities operated by Corizon.

22.    Late in the evening of April 16, 2014, Pitkin was arrested by the Tualatin Police Department for unlawful possession of heroin.

23.    Early the next morning, April 17, 2014, Pitkin was booked into the Washington County jail.   At the time of booking Pitkin notified jail medical staff that she last used heroin, one gram intravenously, about 7 pm the night before, and that she was feeling the effects of detoxing off heroin.   RN Nerissa Galvez noted at intake needle marks on Pitkin and ordered a Clinical Opiate Withdrawal Scale (hereinafter referred to as COWS) evaluation to be conducted for 48 hours after last opiate use.   Pitkin was assigned to a general

Page 9 – **First Amended Complaint**

population pod.

24.     The next morning, April 18, 2014, LPN Louise Duru performed a COWS evaluation on Pitkin.   That evaluation was faulty in at least one respect, in that the results were incorrectly tabulated.   Based upon her faulty evaluation, LPN Duru ordered a Partial Opiate Withdrawal Protocol.   The Practitioner's Orders for Opiate Medical Withdrawal consisted of the drugs Hydroxyzine (Vistaril), Acetaminophen (Tylenol) and Promethazine (Phenergan).   LPN Duru later told investigators she received approval for this order from the doctor; however, the records indicate the plan was not approved by a doctor, but rather by Physician Assistant Colin Storz.

25.     LPN Duru told investigators that she usually tells inmates to let the medical staff know if they feel sick by putting in a Health Care Request form, as that is the only way for inmates to communicate with medical staff.

26.     At 3:30 pm the next day, April 19, 2014, Pitkin submitted her first Health Care Request form. On it she wrote "Heroin withdrawal.   I told medical intake that I was detoxing & they said I was not yet sick enough to start meds.   Now I am in full blown withdrawal and really need medical care.   Please help!"   RN Molly Johnson reviewed this request for medical care and noted, "Pt. seen & started on Partial Protocol (already started 4/18/14)."   No medical staff examined Pitkin or took any action in response to her first Health Care Request form.

27.     The following morning, April 20, 2014, Pitkin needed a change of bedding due to overnight vomiting.   Surveillance video throughout the day reveals a visibly weakened Pitkin having difficulty standing up, holding her stomach and skipping lunch.   At 4:10 pm Pitkin

Page 10 – **First Amended Complaint**

submitted her second Health Care Request form.    On it she wrote, "detoxing from heroin <u>REALLY</u> Bad.    Can't keep any food down.    Heart beating so hard that I can't sleep." Johnson reviewed this second request for medical care and noted, "Pt. Seen & started on partial protocol (Pt. already started on partial protocol 4/18/14)."    Johnson wrote an order for the drug Loperamide, which was given to Pitkin the following morning.    No medical staff examined Pitkin or took any other action in response to her second Health Care Request form.

28.    Video surveillance throughout the next day, April 21, 2014, shows Pitkin unable to walk more than a few feet at a time, squatting down when having to wait in line, bending over at waist when she did stand, walking slowly in a "hunched-over" position and crouching rather than standing.    Concerned, a jail deputy called for medical staff to examine Pitkin. LPN Courtney Louise Nyman performed another COWS evaluation, noting it was a little high (dated 4/20/14), but otherwise found nothing alarming.    Nyman noted Pitkin was already on detox protocol and decided not to move her to the Medical Observation Unit (MOU).

29.    At 2:10 pm on April 21, 2014, Pitkin submitted her third Health Care Request form.    On it she wrote, "vomiting and diarrhea constantly.    Can't keep meds, food, liquids down. Can't sleep.    Everything hurts.    My stomach is sour and filled with bright green that I keep puking up.    Muscles cramp and twitch.    So weak.    Cannot stand long, can't walk far without almost fainting.    Feel near death ..."    Medical staff notes currently on opiate protocol.    No medical staff examined Pitkin or took any action in response to her third Health Care Request form.    The nighttime jail deputy noted Pitkin was vomiting during

Page 11 – **First Amended Complaint**

the night.

30.    The next day, April 22, 2014, Pitkin was too ill to take her lunch or dinner in the "pod."
Video surveillance shows a weakened Pitkin having difficulty walking, hunched over and
crouching down when standing in line.   Pitkin's lunch and dinner were taken to her cell,
but records do not indicate whether she ate.

31.    On April 23, 2014 Pitkin attempted to come to the pod for breakfast but returned to her cell
before eating bent over at the waist, needing to stop and sit.   At 9:05 am Pitkin submitted
her fourth and last Health Care Request form.   On it she wrote, "This is a 3rd or 4th call for
help.   I haven't been able to keep food, liquids, meds down in days ... I feel like I am very
close to death.   Can't hear, seeing lights, hearing voices.   Please help me …"   By this
time, the correction staff had made multiple calls to medical staff notifying the Corizon
medical staff of Ms. Pitkin's worsening condition.   LPN Tony Wertz examined Ms. Pitkin,
made several attempts to obtain her blood pressure, eventually recording 40/UA in the
medical chart.   Mr. Wertz contacted more qualified staff seeking assistance to obtain a
blood pressure. Ms. Pitkin was seen by CJ Buchanan RN, Corizon's Medical Director
Joseph McCarthy MD, and the Director of Nursing Leslie O'Neil. All three Corizon
employees struggled to obtain a blood pressure, none documented their findings.   Dr.
McCarthy ordered a Modified COWS protocol (or Partial Opiate Protocol), which records
state was, or should have been, initiated on April 18, 2014.   In the MOU a pitcher of
Gatorade was provided to Pitkin.

32.    Corizon had planned for months to fire Dr. Joseph McCarthy for failing to treat patients
and falsifying medical records. They did so on the afternoon of April 23, 2014. Corizon

Page 12 – **First Amended Complaint**

did not arrange for a physician to take Dr. McCarthy's place on 4/23/2014 or 4/24/ 2014. Dr. McCarthy did not communicate to those who fired him, or anyone, his concerns regarding Madaline Pitkin.   The firing of Dr. McCarthy resulted in Corizon's Physician Assistant, Colin Storz, being rendered unable to practice medicine.

33.  At 9:25 the following morning, April 24, 2014, jail Deputy Thompson observed Pitkin standing, sweating profusely, and notified RN Buchanan requesting she check on Pitkin. Buchanan refused, saying she was there to check a diabetic inmate.   Thompson insisted, and after examining the diabetic inmate, Pitkin was found lying on her cell floor with brown fluid leaking from mouth and nose, eyes open, mouth weakly moving with one arm moving/twitching. EMS responded, administering shock but were unable to revive Pitkin.

34.  An autopsy later that day revealed no controlled substances or common pharmaceuticals present in Pitkin's system.   Cause of death was listed as Chronic Intravenous Drug Use; manner of death was listed as Natural.

## FIRST CLAIM FOR RELIEF

### Civil Rights - 14th Amendment - 42 USC § 1983

### Wrongful Death

35.  Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 34 above.

36.  Defendants McCarthy, Storz, O'Neil, Buchanan, Duru, Johnson, and Nyman, John Does 1-10, and Jane Does 1-10, were deliberately indifferent to Ms. Pitkin's serious medical needs and to her rights under the Fourteenth Amendment of the US Constitution in the following particulars:

Page 13 – **First Amended Complaint**

a) In failing to call an ambulance for emergency transport to the local hospital, located minutes away, for diagnosis and treatment, at any time prior to the time of Ms. Pitkin's death on April 24, 2014;

b) In failing to call for emergency assistance at any time prior to Ms. Pitkin's death;

c) In failing to provide appropriate medical examination and treatment to Ms. Pitkin, in response to the four, separate health care request forms submitted by Ms. Pitkin and repeated notifications from deputies;

d) In failing to provide prompt medical attention to Ms. Pitkin's serious medical needs;

e) In failing to obtain a blood pressure reading beyond 40/UA, on April 23, 2014 or April 24, 2014;

f) In failing to recognize the significance of her blood pressure being too low to register a reading on April 23, 2014 and April 24, 2014;

g) In failing to follow the detoxification program monitoring requirements as set forth in the contract between Washington County and Corizon;

h) In failing to follow the standards as published by the National Commission on Correctional Healthcare;

i) In failing to administer intravenous therapy at any time prior to the time of Ms. Pitkin's death on April 24, 2014;

j) In ignoring the obvious and horrific symptoms that were plainly visible on the medical healthcare request forms submitted by Madaline Pitkin on April 19, 20, 21, and 23, 2014;

Page 14 – **First Amended Complaint**

k)    In failing to review the medical chart of Madaline Pitkin given the circumstances then and there existing;

l)    In failing to follow Corizon policies and procedures relating to the diagnosis and treatment of those suffering from heroin withdrawal;

m)   In seriously aggravating her medical condition by failing to contact a physician or EMS when her condition deteriorated, resulting in symptoms such as vomiting, diarrhea and weakness, as early as 4/20/2014;

n)    In seriously aggravating her medical condition by failing to determine that prescribed medications were being unsuccessfully administered, or in the alternative, in failing to administer prescribed medications by alternative methods such as intravenously, intramuscularly or rectally;

o)    In seriously aggravating her medical condition by failing to consistently document treatment, observations, and vital signs in the medical record;

p)    In seriously aggravating her medical condition by failing to provide adequate staffing levels needed for minimally-adequate care;

q)    In seriously aggravating her medical condition by allowing medical staff to operate without benefit of physician supervision;

r)    In seriously aggravating her medical condition by failing to immediately transport her to hospital on 4/23/14 or 4/24/14 when there was no licensed physician or medical director on staff at the jail.

37.    In addition, defendant McCarthy was deliberately indifferent to Ms. Pitkin's serious medical needs and her rights under the Fourteenth Amendment of the US Constitution in

Page 15 – **First Amended Complaint**

the following particular:

a)      In failing to disclose to the Corizon employee who fired him, his concerns

regarding Ms. Pitkin's serious medical needs.

38.     As a direct result of the actions and inactions of defendants set forth in paragraphs 36 and

37 above, Madaline Pitkin was not provided timely medical care.   If Pitkin had received

timely and appropriate medical care, she would have been afforded the precautions and

treatment that would have prevented her death.   Madaline Pitkin suffered an agonizing

death as a result of defendants' failures.   Her parents have been denied her love, society

and companionship. Madaline Pitkin's estate and her parents are entitled to compensatory

and pecuniary damages in a sum to be determined at the time of trial.

39.     Defendants' actions and inactions were deliberately indifferent to Madaline Pitkin and her

parents' civil rights, and callously disregarded Ms. Pitkin's physical safety, and punitive

damages should be awarded in a sum to be determined at the time of trial.

40.     Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the

prosecution of this action.

## SECOND CLAIM FOR RELIEF

### Civil Rights Claim - 14th Amendment - 42 USC § 1983

### *Monell* Claims - Wrongful Death - Corizon and Washington County

41.     Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through

40 above.

42.     Corizon and Washington County, by and through their supervisory staff and policymakers,

were aware of and chose to disregard a substantial risk that its policies, practices and

Page 16 – **First Amended Complaint**

customs with respect to the provision of medical care in the Washington County jail would cause suffering and death. The defective policies, practices and customs caused the suffering and death of Madaline Pitkin. The unconstitutional actions and/or omissions of defendants, as well as other officers employed by or acting on behalf of defendants, were pursuant to the following customs, policies, practices and/or procedures of Corizon and/or Washington County which were directed, encouraged, allowed and/or ratified by policymaking officers for Corizon and Washington County.  The moving forces that resulted in the deprivation of Madaline Pitkin's and her parents' Fourteenth Amendment rights were the following policies, customs or practices of Washington County and Corizon:

a)    A policy, custom or practice of failing to provide sufficient medical health staff coverage for inmates and detainees of the Washington County jail;

b)    A policy, custom or practice of failing to follow the staffing guidelines as set forth in the standards published by the National Commission on Correctional Healthcare;

c)    A policy, custom or practice of providing financial incentives to employees who prevented emergency room visits by inmates and detainees of the Washington County jail;

d)    A policy, custom or practice of not referring inmates and detainees suffering severe withdrawal symptoms from drugs, specifically opiates, to licensed acute care facilities and/or hospital settings;

e)    A policy, custom or practice of not using intravenous therapy to treat inmates and detainees while they withdraw from opiates, specifically heroin;

Page 17 – **First Amended Complaint**

f)    A policy, custom or practice of not using intravenous therapy to treat

inmates and detainees suffering from dehydration;

g)    A policy, custom or practice of failing to follow the monitoring guidelines

relating to the medical detoxification program as set forth in the contract between

the parties;

h)    A policy, custom or practice of failing to train its employees in the

recognition of severe, progressive, and life-threatening withdrawal from opiates,

specifically, heroin;

i)    A policy, custom or practice of failing to establish and carry out a continuous

quality improvement program, including a quality improvement committee;

j)    A policy, custom or practice of failing to meet widely accepted

community standards of care with regard to medical services for ill or injured

inmates and detainees of the Washington County jail;

k)    A policy, custom or practice of failing to hold regular staff meetings to

monitor, plan, resolve problems with healthcare delivery;

l)    A policy, custom or practice of failing to provide adequate supervision to assistant

medical personnel by an on-site physician;

m)    A policy, custom or practice of denying inmates and detainees at the

Washington County jail access to appropriate, competent, and necessary care for

serious medical needs;

n)    A policy, custom or practice of not providing Suboxone to patients suffering from

withdrawal;

Page 18 – **First Amended Complaint**

Tim Jones PC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

o)      A policy, custom or practice of denying Washington County detainees necessary medical care, if said detainees are thought to be soon released from the jail;

p)      A policy, custom or practice of discouraging transferring detainees to a licensed acute care facility and/or hospital for medical care.

43.   The policies, customs or practices of defendants Corizon and Washington County posed a substantial risk of causing substantial harm to Washington County inmates and detainees. Corizon and Washington County were aware, or should have been aware, of these risks.

44.   Washington County is also liable for the negligence and deliberate indifference of Corizon, as described above, for deficient policies, training and supervision, because of Washington County's non-delegable duty to ensure that adequate medical care is provided to pretrial detainees and inmates.

45.   The unconstitutional actions and/or omissions of defendants and other personnel, as described above, were approved, tolerated and/or ratified by policymaking officers for Washington County, its Sheriff's Department, Corizon, and its personnel. The details of the death of Madaline Pitkin have been revealed to authorized policymakers within Washington County, the Washington County Sheriff's Department, and Corizon, and such policymakers have direct knowledge of the fact that the death of Madaline Pitkin was not justified, but rather represented an unconstitutional display of unreasonable, deliberate indifference of serious medical needs, of cruel and unusual punishment. Notwithstanding this knowledge, the authorized policymakers within Washington County, its Sheriff's Department and Corizon have approved of defendant Corizon and its employees and agents' conduct in decisions and have made a deliberate choice to endorse such conduct

Page 19 – **First Amended Complaint**

and decisions, and the basis for them, that resulted in the death of Madaline Pitkin. By doing so, the authorized policymakers within Washington County and it Sheriff's Department, have shown affirmative agreement with the defendants' actions and of ratified the unconstitutional acts of defendant Corizon.

46.    As a direct result of the policies, customs or practices of Corizon and Washington County, Madaline Pitkin was not provided timely medical care.   If Ms. Pitkin had been adequately diagnosed and treated during the three COWS evaluations, when she submitted four separate Health Care Request forms, when jail deputies alerted medical staff to Pitkin's medical condition, when healthcare staff struggled to obtain her blood pressure, she would have been afforded precautions and treatment that would have prevented her death. Also, as a direct result of the policies, customs or practices of Corizon and Washington County, Ms. Pitkin did not receive prompt and necessary medical care and, as a result, her condition was exacerbated, and she endured and suffered severe physical and emotional distress up to her death.   Pitkin's parents have been denied her love, society and companionship. Pitkin's estate and her parents are entitled to compensatory and pecuniary damages in a sum to be determined at the time of trial.

47.    The actions and inactions of defendants Corizon and Washington County were recklessly indifferent to Madaline Pitkin and her parents' civil rights, and callously disregarded Pitkin's physical safety, and punitive damages should be awarded against defendants Corizon and Washington County in a sum to be determined at the time of trial.

48.    Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

Page 20 – **First Amended Complaint**

## THIRD CLAIM FOR RELIEF

**Civil Rights Claim - 14th Amendment - 42 USC § 1983**

***Monell* Claims - Wrongful Death – Corizon and Washington County**

49. Plaintiff reallege and incorporate herein as though set forth in full paragraphs 1 through 48 above.

50. The contract between defendant Washington County and defendant Corizon had, as its purpose, the delivery of adequate health care for inmates and detainees, and the reduction in health care costs incurred by Washington County for inmate health care.

51. The moving forces that resulted in the deprivation of Madaline Pitkin and her parents' Fourteenth Amendment rights were the following policies, customs or practices of Washington County and Corizon:

a) A policy, custom or practice of failing to follow and enforce the contract terms that required audits, specifically a Medical Audit Committee review of all jail Healthcare Services for quality of care through established and regularly performed healthcare audits, and recommend and implement all policies and procedures for jail healthcare;

b) A policy, custom or practice of failing to enforce and follow the contract terms requiring defendant Corizon to tailor and adopt policies and procedures for health care at the Washington County jail, and to provide those policies and procedures to Washington County officials.   These policies and procedures were to be consistent with the standards for health services and jails set forth by the National Commission on Correctional Health Care;

Page 21 – **First Amended Complaint**

c)    A policy, custom or practice of failing to enforce and follow the contract terms requiring defendant Corizon to maintain minimum staffing levels, at appropriate levels of licensing and qualifications.  Failure by Corizon to follow the terms of the contract, and Washington County's failure to enforce the contract terms, allowed Corizon to under-staff the medical care at the jail and allowed Corizon to substitute less qualified and less highly paid medical staff than required in the contract;

d)    A policy, custom or practice of failing to follow and enforce the contract terms requiring Corizon to notify the county of all claims made against it.  Corizon has had hundreds of claims made against it by individuals and governmental bodies. Had Corizon followed the terms of the contract, Washington County enforced the contract terms, it would have known that Corizon has demonstrated, over the years and across the nation, a pattern of providing deficient services.  This knowledge would have alerted Washington County to the likelihood of deficient care being provided by Corizon in its jail;

e)    A policy, custom or practice of failing to follow and enforce the contract requiring Corizon to obtain written approval for any subcontract.  By not following and enforcing the contract terms, Washington County thereby allowed Corizon to subcontract services which did not meet requirements of the contract;

f)    A policy, custom or practice of failing to adequately monitor Corizon's performance to ensure it met staffing commitments and provided quality healthcare;

Page 22 – **First Amended Complaint**

g)     A policy, custom or practice of failing to follow the monitoring guidelines relating to the medical detoxification program as set forth in the contract between the parties;

h)     A policy, custom, or practice of failing to adequately monitor Corizon's performance to ensure that healthcare services were in compliance with the standards as set forth by the National Commission on Correctional Healthcare as required by the contract between the parties.

52.    The policies, customs and practices of Washington County and Corizon posed a substantial risk of causing harm to Washington County inmates and detainees.   Washington County and Corizon were aware of these risks.

53.    As a direct result of the policies, customs or practices of defendants Washington County and Corizon, defendant Corizon was permitted to continue to provide medical care which was recklessly indifferent to the needs of Madaline Pitkin.   Madaline Pitkin was not provided with prompt and necessary medical care resulting in severe physical and mental suffering and which ultimately resulted in her death.   Madaline Pitkin's parents have been deprived of the love, society and companionship of their daughter.   Madaline Pitkin's estate and her parents are entitled to compensatory and pecuniary damages in a sum to be determined at the time of trial.

## FOURTH CLAIM FOR RELIEF

### Civil Rights Claim - 14th Amendment - 42 USC § 1983

### Supervisory Liability - Wrongful Death

54.    Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through

Page 23 – **First Amended Complaint**

53 above.

55.    Defendants Corizon, Washington County, McCarthy, Storz, and O'Neil, John Does 1-10, and Jane Does 1-10, in their supervisory capacities, were aware of the policies, customs or practices as alleged in paragraph 42 above, and were aware that said policies, customs or practices created a substantial risk of causing substantial harm to Washington County detainees and inmates by endangering their health, safety, medical and mental health needs. Despite that knowledge, said supervisors allowed, approved of and ratified said policies, customs or practices.

56.    Defendants Corizon, McCarthy, Storz and O'Neil, John Does 1-10, and Jane Does 1-10, in their supervisory capacities, failed to adequately train Corizon employees:

a)    In both the need and the requirement to provide monitoring at a minimum, of documenting vital signs and determinations of the level of consciousness every two hours for severe cases of drug withdrawal consistent with the healthcare contract;

b)    In both the understanding and the recognition of what constitutes a severe case of drug withdrawal;

c)    In both the need and the requirement to provide intermittent monitoring of those withdrawing from drugs;

d)    In the recognition of severe, progressive, and life-threatening withdrawal from opiates, specifically heroin;

e)    In understanding those suffering from severe withdrawal symptoms must never be managed outside of a hospital setting;

f)    In the importance of documenting medical findings, in particular vital signs:

Page 24 – **First Amended Complaint**

g)    In how to recognize medical emergencies as they relate to withdrawal from opiates, specifically, heroin;

h)    On the need to provide prompt medical evaluation of detoxing persons when there is evidence their condition may be deteriorating;

i)    On the need to transfer patients to a licensed acute care facility and/or hospital setting when unable to detect a blood pressure;

j)    On the importance of providing intravenous therapy to those suffering from severe dehydration.

57.    Defendants Corizon, McCarthy, Storz, O'Neil, John Does 1-10, and Jane Does 1-10, were aware that failure to train as set forth in paragraph 56 above, created a substantial risk of causing harm to Washington County inmates.

58.    As a direct result of the actions and inactions of defendants Corizon, Washington County, McCarthy, Storz, O'Neil, John Does 1-10, and Jane Does 1-10, Madaline Pitkin endured and suffered severe physical and emotional distress, her medical condition was exacerbated, resulting in her death.  Pitkin's parents have been denied her love, society and companionship.  Pitkin's estate and her parents are entitled to compensatory and pecuniary damages in a sum to be determined at the time of trial.

59.    Plaintiffs are entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## **FIFTH CLAIM FOR RELIEF**

### **Negligence - Wrongful Death**

60.    Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through

Page 25 – **First Amended Complaint**

59 above.

61.    The actions and inactions of defendants Corizon and Washington County, acting by and through their employees and agents, were negligent in one or more of the following particulars:

a)    In failing to call an ambulance for emergency transport to the local hospital, located minutes away, for diagnosis and treatment, at any time prior to the time of Ms. Pitkin's death on April 24, 2014;

b)    In failing to call for emergency assistance at any time prior to Ms. Pitkin's death;

c)    In failing to provide appropriate medical examination and treatment to Ms. Pitkin, in response to the four, separate health care request forms submitted by Ms. Pitkin;

d)    In failing to provide prompt medical attention to Ms. Pitkin's serious medical needs;

e)    In failing to understand how critical a blood pressure reading is to medical decision-making;

f)    In failing to obtain a blood pressure reading beyond 40/UA, on April 23, 2014 or April 24, 2014;

g)    In failing to recognize the significance of her blood pressure being too low to register a reading on April 23, 2014 and April 24, 2014;

h)    In failing to completely document Ms. Pitkin's vital signs;

i)    In failing to follow the detoxification program monitoring requirements as set forth in the contract between Washington County and Corizon;

j)    In failing to follow the standards as published by the National Commission on

Page 26 – **First Amended Complaint**

Tim Jones PC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

Correctional Healthcare;

k)    In failing to recognize and diagnose Madaline Pitkin was suffering from severe, progressive, life-threatening withdrawal from heroin;

l)    In failing to administer intravenous therapy at any time prior to the time of Ms. Pitkin's death on April 24, 2014;

m)    In failing to review the medical chart of Madaline Pitkin given the circumstances then and there existing;

n)    Joseph McCarthy's failure to disclose to those Corizon employees who fired him, his concerns regarding Ms. Pitkin's serious medical needs;

o)    In ignoring the obvious and horrific symptoms that were plainly visible on the medical healthcare request forms submitted by Madaline Pitkin on April 19, 20, 21, and 23, 2014;

p)    In failing to follow Corizon policies and procedures relating to the diagnosis and treatment of those suffering from heroin withdrawal;

q)    In allowing, approving and ratifying policies, customs, or practices as alleged in paragraphs 42 and 51 above;

r)    In failing to fire the jail Medical Director once they were apprised he was falsifying medical charts and failing to see patients;

s)    In firing the jail Medical Director, without replacing him, the day before Madaline Pitkin's death.

62.    As a direct result of the actions and inactions of defendants, and each of them, Madaline Pitkin endured and suffered severe physical and emotional distress, and her medical

Page 27 – **First Amended Complaint**

condition was exacerbated, resulting in her death.   Her parents have been denied her love, society and companionship.   Ms. Pitkin's estate and her parents are entitled to compensatory and pecuniary damages in a sum to be determined at the time of trial.

63.    Notice pursuant to the Oregon Tort Claims Act was given to defendant Washington County within the time prescribed by law.

## SIXTH CLAIM FOR RELIEF

### Gross Negligence/Reckless Misconduct - Wrongful Death

64.    Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 63 above.

65.    Defendant Corizon, by and through its employees and agents, acting within the course and scope of their employment, was grossly negligent and acted with reckless misconduct in one or more of the following particulars:

a)      In failing to call an ambulance for emergency transport to the local hospital, located minutes away, for diagnosis and treatment, at any time prior to the time of Ms. Pitkin's death on April 24, 2014;

b)      In failing to call for emergency assistance at any time prior to Ms. Pitkin's death;

c)      In failing to provide appropriate medical examination and treatment to Ms. Pitkin, in response to the four, separate health care request forms submitted by Ms. Pitkin;

d)      In failing to provide prompt medical attention to Ms. Pitkin's serious medical needs;

e)      In failing to understand how critical a blood pressure reading is to medical decision-making;

Page 28 – **First Amended Complaint**

Tim Jones PC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

f)      In failing to obtain a blood pressure reading beyond 40/UA, on April 23, 2014 or
        April 24, 2014;

g)      In failing to recognize the significance of her blood pressure being too low to
        register a reading on April 23, 2014 and April 24, 2014;

h)      In failing to document vital signs;

i)      In failing to follow the detoxification program monitoring requirements as set forth
        in the contract between Washington County and Corizon;

j)      In failing to follow the standards as published by the National Commission on
        Correctional Healthcare;

k)      In failing to recognize and diagnose Madaline Pitkin was suffering from severe,
        progressive, life-threatening withdrawal from heroin;

l)      In failing to administer intravenous therapy at any time prior to the time of Ms.
        Pitkin's death on April 24, 2014;

m)      In failing to review the medical chart of Madaline Pitkin given the circumstances
        then and there existing;

n)      Joseph McCarthy's failure to disclose to those Corizon employees who fired him,
        his concerns regarding Ms. Pitkin's serious medical needs;

o)      In ignoring the obvious and horrific symptoms that were plainly visible on the
        medical healthcare request forms submitted by Madaline Pitkin on April 19, 20, 21,
        and 23, 2014;

p)      In failing to follow Corizon policies and procedures relating to the diagnosis and
        treatment of those suffering from heroin withdrawal;

Page 29 – **First Amended Complaint**

q)    In allowing, approving and ratifying policies, customs, or practices as alleged in
      paragraphs 42 and 51 above;

r)    In failing to fire the jail Medical Director once they were apprised he was falsifying
      medical charts and failing to see patients;

s)    In firing the jail Medical Director, without replacing him, the day before Madaline
      Pitkin's death.

66.   As a direct result of the misconduct and/or actions and inactions of defendant Corizon,
      Madaline Pitkin endured and suffered severe physical and emotional distress, and her
      medical condition was exacerbated, resulting in her death.   Her parents have been denied
      her love, society and companionship.   Ms. Pitkin's estate and her parents are entitled to
      compensatory and pecuniary damages in a sum to be determined at the time of trial.

67.   The actions and inactions of defendant Corizon were grossly negligent, were recklessly
      indifferent to Madaline Pitkin's civil rights, and callously disregarded her physical safety.
      Punitive damages should be awarded in a sum to be determined at the time of trial.


      WHEREFORE, Plaintiffs pray for judgment as follows:

      **On First Claim for Relief**, for judgment against defendants McCarthy, Storz, O'Neil,

Buchanan, Duru, Johnson, Nyman, John Does 1-10 and Jane Does 1-10, and each of them, for:

A.    Compensatory and pecuniary damages in a sum to be determined at the time of trial,
      and

B.    Punitive damages in a sum to be determined at the time of trial, and

C.    Necessarily and reasonably incurred attorney fees and costs.

Page 30 – **First Amended Complaint**

Tim Jones PC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

**On Second Claim for Relief**, for judgment against defendants Corizon and Washington County, and each of them, for:

D.  Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

E.  Punitive damages in a sum to be determined at the time of trial, and

F.  Necessarily and reasonably incurred attorney fees and costs.

**On Third Claim for Relief**, for judgment against defendants Corizon and Washington County, and each of them, for:

G.  Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

H.  Punitive damages in a sum to be determined at the time of trial, and

I.  Necessarily and reasonably incurred attorney fees and costs.

**On Fourth Claim for Relief**, for judgment against defendants Corizon, Washington County, McCarthy, Storz, O'Neil, John Does 1-10, and Jane Does 1-10, and each of them, for:

J.  Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

K.  Punitive damages in a sum to be determined at the time of trial, and

L.  Necessarily and reasonably incurred attorney fees and costs.

**On Fifth Claim for Relief**, for judgment against defendants Corizon and Washington County, and each of them, for:

M. Compensatory and pecuniary damages in a sum to be determined at the time of trial, and

Page 31 – **First Amended Complaint**

Tim Jones PC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

N.  Necessarily and reasonably incurred attorney fees and costs.

**On Sixth Claim for Relief**, for judgment against defendant Corizon, for:

O.  Compensatory and pecuniary damages in a sum to be determined at the time of trial,

    and

P.  Punitive damages in a sum to be determined at the time of trial, and

Q.  Necessarily and reasonably incurred attorney fees and costs.

DATED this 20th day of July, 2018.

              TIM JONES PC

              By: */s/ Timothy J. Jones*
              Timothy J. Jones, Oregon State Bar No. 890654
              tim@timjonespc.com
              888 SW 5th Avenue, Suite 1100
              Portland OR 97204

              PAULSON COLETTI TRIAL ATTORNEYS PC

              *By:   /s/John M. Coletti*
              John M. Coletti, Oregon State Bar No. 942740
              john@paulsoncoletti.com
              1022 NW Marshall Street, Suite 450
              Portland, OR 97209

               Of Attorneys for Plaintiffs

Tim Jones PC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

Plaintiffs demand trial by jury.

DATED this 20th day of July, 2018.

TIM JONES PC


By:  ___s/ Timothy J. Jones_____
Timothy J. Jones, Oregon State Bar No. 890654
tim@timjonespc.com
888 SW 5th Avenue, Suite 1100
Portland OR 97204

Of Attorneys for Plaintiffs

Tim Jones PC
888 SW Fifth Avenue, Suite 1100
Portland, OR 97204
503-374-1414
Fax 971-925-9034

**<u>Certificate of Filing</u>**

I HEREBY CERTIFY that on the 20th day of July, 2018, I filed this original First Amended Complaint by Electronic Filing:

Trial Court Administrator
US District Court
740 US Courthouse
1000 SW Third Avenue
Portland OR 97204-2902

By:   __s/ *Timothy J. Jones*_____
        Timothy J. Jones, Oregon State Bar No. 890654
        Of Attorneys for Plaintiffs

**Certificate of Filing**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I served a true copy of the foregoing **FIRST AMENDED COMPLAINT On** the following attorneys on the date noted below via the following method:

Vicki M. Smith
Jamie T. Azevedo
Bodyfelt Mount LLP
319 SW Washington Street, Suite 1200
Portland, OR 97204
Email:   smith@bodyfeltmount.com
 azevedo@bodyfeltmount.com
 Attorneys for Defendants Washington County

Richard K. Hansen
Anne M. Talcott
Schwabe Williamson & Wyatt PC
1211 SW 5th Ave., Suite 1900
Portland, OR   97204
Email: rhansen@schwabe.com
        atalcott@schwabe.com
         Of Attorneys for Defendants Corizon Health, Inc., Joseph McCarthy, M.D., Colin Storz, Leslie O'Neil, CJ Buchanan, Louisa Duru, Molly Johnson and Courtney Nyman

Method:   CM/ECF Electronic Service.

Dated this 20th day of July, 2018.

<u>*s/ Timothy J. Jones*</u>
Tim Jones, OSB No. 890654
Email: tim@timjonespc.com
Phone: (503) 374-1414
Fax: (971) 925-9034
Of Attorneys for Plaintiffs
