**Timothy J. Jones**, OSB No. 890654
tim@timjonespc.com
TIM JONES PC
888 SW 5th Avenue, Suite 1100
Portland OR 97204
(503) 374-1414

**John Coletti**, OSB No. 942740
john@paulsoncoletti.com
Paulson Coletti
1022 NW Marshall #450
Portland OR 97209
(503) 226-6361

**W. Eugene Hallman**, OSB No. 741237
office@hallman.pro
Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857
                    Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON - PORTLAND DIVISION

| | |
|---|---|
| **RUSSELL PITKIN** and **MARY, PITKIN,** Co-Personal Representatives of the **ESTATE of MADALINE PITKIN, Deceased**, | Case No: 3:16-cv-02235-AA |
| Plaintiffs | **PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT BY WASHINGTON COUNTY** |
| v. | REQUEST FOR ORAL ARGUMENT |

Page 1 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

**CORIZON HEALTH, INC.**, a
Delaware Corporation; **CORIZON HEALTH,
INC.**, a Tennessee Corporation; **WASHINGTON
COUNTY**, a government body in the State of
Oregon; **JOSEPH MCCARTHY, MD**, an
individual; **COLIN STORZ**, an individual;
**LESLIE ONEIL**, an individual; **CJ
BUCHANAN**, an individual; **LOUISA
DURU**, an individual; **MOLLY JOHNSON**,
an individual, **COURTNEY NYMAN**,
an individual; **PAT GARRETT**, in his capacity
as Sheriff for Washington County; **JOHN DOES
1-10;** and **JANE DOES 1-10.**

     Defendants.
_____

Page 2 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Contract With Corizon.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    Interim Report on Staffing Deficiencies - May 2013. . . . . . . . . . . . . 2
    C.    Preliminary Draft of Anticipated Findings - November 2013. . . . . . . . . 4
    D.    Final Audit Report - November 2014. . . . . . . . . . . . . . . . . . . . . . . . 7
    E.    Continued Failure to Act by Washington County.. . . . . . . . . . . . . . . 9
    F.    A Corizon Employee Reports to the Sheriff.. . . . . . . . . . . . . . . . . . 10
    G.    Washington County Jail Operations Policy. . . . . . . . . . . . . . . . . . . 11
    H.    Contract Administrators Fail to Perform their Duties.. . . . . . . . . . . . . 12
    I.    Moving Force.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    I    SUMMARY JUDGMENT STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    II    *MONELL* CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    A.    Municipal Liability - the Elements. . . . . . . . . . . . . . . . . . . . . . . . . 18
        1.    Deprivation of a Constitutional Right. . . . . . . . . . . . . . . . . . 19
        2.    Policies and Customs.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        3.    Moving Force... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    B.    Washington County's Customs and Policies. . . . . . . . . . . . . . . . . . . 23
        1.    Liability For Hiring Corizon or for Mistakes by Corizon.. . . . . . 23
        2.    Policy or Custom of Washington County.. . . . . . . . . . . . . . . 24
    C.    Washington County's Deliberate Indifference... . . . . . . . . . . . . . . . 24
    D.    There Is Evidence That Washington County's Policy Was a "Moving
        Force.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    III    NEGLIGENCE CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

## Cases

*Anderson v. City of Atlanta,* 778 F2d 678 (11th Cir, 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Anderson v. Liberty Lobby, Inc.*, 477 US 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ashley v. Sutton,* 492 F Supp 2d 1230 (D Or, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Burke v. of Cty. of Alameda*, 586 F3d 725 (9th Cir, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Castro v. County of Los Angeles*, 833 F 3d 1060 (9th Cir, 2016). . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Canton v. Harris*, 489 US 378 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

*City of St. Louis v. Praprotnik,* 485 US 112 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Connick v. Thompson*, 563 US 51 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Estate of Vela v. Cty. of Monterey*, 2018 WL 4076317 (ND Cal, 2018). . . . . . . . . . . . . . . . . . 20

*Fricano v. Lane County*, 2018 WL 2770643 (D Or, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . 17-24

*Frost v. Agnos*, 152 F3d 1124 (9th Cir, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Garcia v. Salt Lake Cty.*, 768 F2d 303 (10th Cir, 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gibson v. County of Washoe, Nev.*, 290 F3d 1175 (9th Cir, 2002). . . . . . . . . . . . . . . . . . . . 19, 22

*Glisson v. Indiana Department of Corrections*, 849 F3d 372 (7th Cir, 2017). . . . . . . . . . . . . . . 19

*Gordon v. Cty. of Orange*, 888 F3d 1118 (9th Cir, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Johnson v. Corizon Health, Inc.*, 2015 WL 1549257 (D Or, 2015). . . . . . . . . . . . . . . . . . . . 19, 22

*Johnson v. Duffy*, 588 F2d 740 (9th Cir, 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Larez v. City of Los Angeles*, 946 F2d 630 (9th Cir, 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    office@Hallman.pro

*Lemire v. California Department of Corrections*, 726 F3d 1062 (9th Cir, 2013). . . . . . . . . . . . . 21

*Matysik v. County of Santa Clara,* 2018 WL 732724 (ND Cal, 2018). . . . . . . . . . . . . . . . . . 19

*McGukin v. Smith*, 974 F2d 1050 (9th Cir, 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mendiola-Martinez v. Arpaio*, 836 F3d 1239 (9th Cir, 2016). . . . . . . . . . . . . . . . . . . . . . . . 20

*Monell v. Dep't of Social Servs. of the City of New York*, 436 US 658 (1978). . . . . . . . . . 18, 26

*Navarro v. Block,* 72 F3d 712 (9th Cir, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Oyenik v. Corizon*, 696 Fed App 792 (9th Cir, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Paris v. Conmed Healthcare and Coos County*, 2017 WL 7310079 (D Or, 2017)
(Findings and Recommendations of Magistrate Judge Coffin) adopted by 2018
WL 664807 (D Or, 2018)(McShane, J). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23, 24, 26

*Rivera v. Phillip Morris, Inc.*, 395 F3d 1142 (9th Cir, 2005). . . . . . . . . . . . . . . . . . . . . . . . . 17

*Speer v. Glover*, 276 F3d 980 (8th Cir, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Tsao v. Desert Palace, Inc.*, 698 F3d 1128 (9th Cir, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*West v. Atkins*, 487 US 42 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Statutes

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21, 25, 26

## Other Authorities

*Dan Weiss, Privatization and Its Discontents*, 86 U Colo L Rev 725 (2015). . . . . . . . . . . . . . 23

Page iii - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

## INTRODUCTION

This Response to Motion for Summary Judgment by Washington County is supported by the Declaration of John Coletti and Supplemental Declaration of John Coletti with Exhibits 101-150, filed concurrently herewith.[1]

## SUMMARY OF ARGUMENT

Long before the death of Madaline Pitkin, administrators and policymakers in Washington County were well aware that medical care at its Jail Health Services was understaffed across all positions. They were further aware that their healthcare providers were poorly trained, thereby jeopardizing the health and safety of those at the jail. They were specifically aware Corizon was jeopardizing patient safety in pursuit of financial gain. Washington County policymakers knew full well there was an inadequate quality assurance plan in place at the jail further jeopardizing patient safety. Washington County officials, including the Director of Health and Human Services, the County Administrator, and the Sheriff were all warned by the Washington County Auditor and a Corizon employee, that failure to address these problems would risk injury, death and eventually lead to legal liability for the County. All of this was known by County administrators long before Ms. Pitkin's death. They did nothing.

These failures were a moving force behind the suffering and ultimate death of Madeline Pitkin.

---

[1] All footnoted exhibits in this response refer to exhibits to the Declaration of John Coletti and Supplemental Declaration of John Coletti.

**Page 1 - Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

## STATEMENT OF FACTS

**A.      The Contract With Corizon.**

The terms of payment for the healthcare contract between Washington County and Corizon were amended numerous times through the years. By July of 2013 Washington County had agreed to pay Corizon a base fee of $318,846 per month or $3,826,158 annually. Additionally, the 2013 contract set an aggregate limit of $849,739 for off-site and pharmacy services . This money was paid to Corizon in monthly installments of $70,811.  Any amounts spent above the aggregate limit were the County's responsibility.  Each year there was an assessment of expenditures and Corizon was to refund any of the aggregate amount that had gone unused.  However, Washington County Contract Administrators, when asked, recalled rarely, if ever, receiving a refund from Corizon.[2]

In 2011 the County Administrator's Office (CAO) suggested the Washington County Auditor conduct an audit due to the significant increases in jail healthcare costs and substantial overruns of jail healthcare budgets.[3]

**B.      Interim Report on Staffing Deficiencies - May 2013.**

In May of 2013, the Auditor released an Interim Report on Staffing Deficiencies in Jail Health Services.  His findings and recommendations were provided to County administration, including the

---

[2] Ex 139, Deposition of Lynn at 23-28, 66-140, 95-97.  Ex 133, Deposition of Vaughan at 2-28, 41, 57-60.  Ex 148, Deposition of Wall at 8, 9-10.  Ex 138, Deposition of Otis at 2-8.

[3] Ex 145, Deposition of Hutzler at 3-4, 37.

Page 2 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Director of Health and Human Services and the Assistant County Administrator.  Among his recommendations was a provision that any new contract promote compliance with minimum staffing requirements.[4]

The auditor found:

•     There were deficiencies in medical staffing reported by Corizon across all positions from 2008 through 2012.

•     Understaffing could jeopardize the health of the inmate population while increasing the County's exposure to legal liability.

•     In fiscal year 2012, deficiencies included 44% of the contract hours for the medical director, 18% for the physician assistant/nurse practitioner, 56% for the licensed clinical social worker, and 17% for registered nurses.

•     The value of the services Corizon failed to provide over the years was in excess of $350,000.[5]

As a result of these findings the Auditor recommended:

•     The County promptly amend its healthcare contract to provide for penalties for failure to comply with minimum staffing requirements.

•     The County more effectively monitor staffing going forward, suggesting the County require the contractor to provide monthly staffing reports of hours worked by staff

_____

[4] Ex 145, Deposition of Hutzler at 34-36.

[5] *Id* at 34.

**Page 3 - Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

by position, by day, by shift, noting any negative variances.

•       The County administration consult with County Counsel regarding whether the County should take any action to recover payments made to Corizon for services that were never provided but paid by the taxpayers of Washington County.[6]

The County Auditor believed it wise to provide notice at the earliest opportunity to the County Administrator so that action could be taken where appropriate prior to the issuance of the Final Audit (which occurred in November 2014).[7]

County administrators, policymakers and Sheriff Garrett failed to act on the recommendations of the Auditor prior to the death of Madaline Pitkin in April of 2014.[8]

## C.       Preliminary Draft of Anticipated Findings - November 2013.

In November of 2013, the auditor released a Preliminary Draft of Anticipated Findings, reminding the policymakers at the County that strong oversight by the County was essential to ensure Corizon complied with its contractual obligations to provide adequate care. He warned County administration its contract administrators had not adequately monitored compliance with terms and conditions of the jail's healthcare contract. He made it clear Corizon was refusing to cooperate in many respects, impairing his access to critical records. Examples he cited were: policies and procedure manuals, Continuous Quality Improvement reports, subcontracts, accreditation audit

---

[6] *Id* 34-35.

[7] Ex145, Deposition of Hutzler at 24-25, 34.

[8] Ex 145, Deposition of Hutzler at 19-31.  Ex 139, Deposition of Lynn at 50.

Page 4 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

reports and responses.  The Auditor's efforts were further complicated by the fact the County's own Contract Administrator did not direct Corizon to provide the requested records to the Auditor.[9]

The Auditor disclosed that Corizon was not performing the required audits of the healthcare delivery system at the jail.  The Washington County jail healthcare Contract Administrators were not adequately monitoring minimum staffing requirements.  He reminded the County administrators their only representative on the Medical Audit Committee for the jail was a financial analyst.  The County, despite having access to numerous employees with healthcare backgrounds, had no medically licensed representative on this fundamentally critical committee.  County administrators had withdrawn the County's medical experts from the Medical Audit Committee in 2005.[10]

The Auditor spelled out, in detail, breaches of the jail healthcare contract by Corizon, including a failure to inform the County of claims made against it, failure to permit the County to review subcontracts (like that of Medical Director Dr. Joseph McCarthy) prior to approval, failure of Corizon to install an adequate quality assurance program as required by the NCCHC and acknowledged by Corizon's own Chief Medical Officer for the Community Division.[11] The contract provided:

> that all services under the purview of the health services shall be reviewed and evaluated for quality of care through established and

---

[9] Ex 145, Deposition of Hutzler at 5-8, 14-15, 37-42.  Ex 139, Deposition of Lynn, Ex 20 at 39-45, 50.

[10] Ex 145, Deposition of Hutzler at 37-42.  Ex 138, Deposition of Otis at 10.

[11] Ex 145, Deposition of Hutzler at 37-42.  Ex 140, Deposition of  McQueen at 3-7.  Ex 125, Deposition of McCarthy at 4.  Ex 138, Deposition of Otis at 9.

Page 5 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

regularly performed audits. [12]

Despite repeated requests from the Auditor's office, neither the Contract Administrator nor Corizon provided any evidence these critical audits were being performed or that audit results were being reported to the Medical Audit Committee. The only evidence of audits pertained to random audits of medical charts by a local physician, who saw very little value in the audits themselves. These audits focused largely on the quality of medical record documentation, with little if any relationship to the quality of care being rendered to patients in the jail. [13]

The Auditor recommended the County require that the contractor provide a program for Continuous Quality Improvement (CQI) and that the program be approved by the County health officer. It was the Auditor's belief a CQI program should continuously evaluate the healthcare provided to inmates, both on-site and off-site, for quality appropriateness and continuity of care. The CQI program also should include evaluating compliance with policies and procedures. Results should be documented and reported regularly to the County health officer, the MAC, and the jail commander. In other words, the Auditor was recommending to County administration they insist Corizon follow the NCCHC standards concerning Continuous Quality Improvement. Reports and supporting documentation should be subject to inspection by duly authorized County representatives. He further recommended the County validate the results of the contractor's quality improvement processes by periodically reviewing cases randomly selected from those included in the contractor's

---

[12] Ex 145, Deposition of Hutzler at 37. Ex 139, Deposition of Lynn at 84.

[13] Ex 145, Deposition of Hutzler at 41.

Page 6 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

CQI reviews.[14]

The County Administrator, policymakers and Sheriff Garrett failed to act on the recommendations of the Auditor prior to the death Madaline Pitkin.[15]

### D.    Final Audit Report - November 2014.

Seven months after the death of Madaline Pitkin the Auditor published his Final Report.  Mr. Hutzler won national acclaim (Knighton Award) for the audit, recognized as Audit of the Year by the Association of Local Government Auditors.   The Final Audit authored by Mr. Hutzler and his staff reaffirmed his previous findings and recommendations, concluding the jail healthcare contract was not administered by the County in accordance with County guidelines and best practices.[16]

The County's Contract Administration Guidelines establish certain duties of the Contract Administrator.   The Contract Administrator was responsible for ensuring contractor performance and compliance with all terms and conditions of the contract. The Contract Administrator was required to initiate a contract amendment whenever the scope of work of the contract changed.  Mr. Hutzler found: "The Contract Administrator for jail healthcare did not perform the assigned duties." While he reviewed the processes implemented by the Contract Administrator to monitor quality of care, he concluded they did not provide the County with reasonable assurances that quality care was

---

[14] Ex 145, Deposition of Hutzler at 10-12, 41.

[15] Ex 139, Deposition of Lynn at 50.  Ex 145, Deposition of Hutzler at 9-13.

[16] Ex 139, Deposition of Lynn at 32-65.  Ex 145, Deposition of Hutzler at 2.

Page 7 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

being provided within the jail.[17] He specifically concluded:

- Corizon was understaffing the jail;

- Corizon did not have an acceptable, Continuous Quality Improvement program in place;

- Corizon failed to perform required audits assessing the quality of care being rendered at the jail;

- The random chart reviews which were being conducted were of little or no value to the County;

- Corizon's standard policies and procedures had not been tailored to the Washington County jail as required by national standards;

- Corizon was failing to report claims to the County; and

- Corizon was failing to seek the County's approval of subcontracts.[18]

The Auditor underscored Corizon's failure to implement an effective system to ensure that the jail was appropriately staffed. He detailed a troubling aspect of his investigation. Corizon repeatedly refused the Auditor's request for access to certain records pertinent to the contract. Washington County Contract Administrator took no action to require Corizon to comply. The actions by Corizon and the Contract Administrator delayed the work of the Auditor.[19]

---

[17]  Ex 139, Deposition of Lynn at 38-39.

[18]  *Id* at 41-44.

[19]  Ex 139, Deposition of Lynn at 41, 43, 45, 50, 51.   Ex145, Deposition of Hutzler at 14-15.

Page 8 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

### E.    Continued Failure to Act by Washington County.

When the Final Audit was published in November 2014, it became clear the County, its administrators, policymakers and the Sheriff had acted on virtually none of the recommendations set forth by the Auditor in his two interim reports.    The County had acted on four of his recommendations: the County reassigned administration of the contract outside of the Health and Human Services Division, the County ended the provision requiring pregnant inmates seeking an elective abortion obtain the approval of the jail command staff, the County established policies and procedures expressly prohibiting the storage of protected health information on personal computers and the county strengthened the audit clause of the county's standard contract terms and conditions. The Auditor published the two interim reports in the hope the County administration would act upon his concerns and recommendations to avoid jeopardizing the health and safety of those at the jail, and exposing the County to legal liability.    Instead, the County Administrator and the policymakers of Washington County, with minor exceptions noted above, failed to implement, or even investigate the recommendations of the Auditor.[20]

The Auditor was asked if he had developed an understanding of why there were multiple failures by the contract administrators in their supervision of the jail healthcare contract. He responded:

> The County had a long-term relationship with this contractor. They had had the same healthcare provider from the time the jail opened in – was that 97 or so? I think there was a measure of comfort and trust

---

[20] Ex 139 Deposition of Lynn at 50, 57-65.  Ex 145, Deposition of Hutzler at 9-13, 16, 17-18, 31, 34.

Page 9 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

built up. And, you know, they kind of let the contractor run the show.[21]

### F.    A Corizon Employee Reports to the Sheriff.

Cris Rettler was a Physician Assistant employed by Corizon for approximately 18 months, leaving in the latter part of 2013.  She left over concerns about the level of care being offered to patients at the Washington County jail and the fear she would lose her medical license if she continued to practice medicine as prescribed by Corizon's senior administrators.[22]

During her tenure at the Washington County jail, Ms. Rettler developed the opinion that Corizon was placing profit over patient safety.  Corizon's policies and customs of cutting costs were in direct conflict with the goal of caring for the patients of the jail.  Corizon nurses were undertrained; the jail understaffed.[23]

She was under constant pressure from supervisors, particularly Corizon's Regional Manager, Dr. Ivor Garlick, to minimize emergency room visits and referrals to outside physicians for specialty consultations.  She was required to attend weekly meetings with Dr. Garlick, who made it clear that virtually everything could and should be handled within the confines of the jail.  She could not remember a single occasion when Dr. Garlick agreed with any of her ER referrals.  She repeatedly watched Corizon delay care to patients pending their release from jail, jeopardizing their safety while attempting to maximize profits.  This was openly touted as a cost savings measure.  Corizon's

---

[21] Ex 145, Deposition of Hutzler at 32-33.

[22] Ex 141, Deposition of Rettler at 2-4.

[23] Ex 141, Deposition of Rettler at 5-6, 10-13.

Page 10 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

constant efforts to reduce costs interfered with her ability and the ability of the jail healthcare staff to provide appropriate levels of care.[24]

She attended meetings at Corizon's corporate headquarters.  These meetings were almost exclusively focused on cost savings.  Among the topics highlighted was limiting emergency room visits.  She recalled little regarding patient care and safety from the meetings at corporate headquarters, with virtually everything being devoted to cost savings and profit maximization.  As a healthcare provider she was ashamed of being at the meetings and shocked by what she heard.[25]

In 2013, Ms. Rettler took the extraordinary step of meeting on two occasions with Washington County Sheriff Pat Garrett and had multiple discussions with a representative of the Washington County Auditor's staff, Latham Stack, wherein she summarized all of her concerns regarding patient safety.  She specifically told Sheriff Garrett about the critical nursing shortage at the jail.  She detected no changes in jail staffing after meeting with the Sheriff.  She told Sheriff Garrett the level of care was very concerning from a medical ethics standpoint and it was only a matter of time until there was a bad outcome.[26]

G.    Washington County Jail Operations Policy.

The county auditor was not the only one tasked with determining that the health care contract was complied with. Jail commanders were responsible for coordinating access to medical care for

---

[24] Ex 141, Deposition of Rettler at 6, 7, 9-13, 21.

[25] Ex 141, Deposition of Rettler at 9-18.

[26] Ex 141, Deposition of Rettler at 4-6, 12-13, 19-20, 25-26.

Page 11 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

inmates.[27]  There was a Jail Operations Policy which provided:

> The jail commander will ensure the contract health
> care provider provides health screenings and
> assessments at specific intervals and responds to
> requests for health care from inmates.  The provider
> will also provide diagnostic and treatment services
> when medically indicated.  [28]

The Policy provided detailed requirements for the Medical Observation Unit, for the handling of health care requests, Emergency treatment and treatment plans.[29]

There was no evidence of the sheriff's office ever seeking to enforce these provisions.

### H.    Contract Administrators Fail to Perform their Duties.

Linden Chin and Connie Prentice (now known as Connie Wall) were financial analysts within the Department of Health and Human Services at Washington County and were the designated Contract Administrators for the healthcare contract at the Washington County jail.  Mr. Chin began his work as jail healthcare Contract Administrator in 2012; Ms. Wall in 2006; their work ending in February of 2014.[30]

Mr. Chin was Administrative Manager for the Washington County Department of Health and Human Services.  The contract administrators had the responsibility of ensuring contract performance and compliance with all terms and conditions of the contract.  Oddly enough, Mr. Chin took the

---

[27] Ex 139, Deposition of Lynn at 131a.

[28] Ex 139, Deposition of Lynn at 140a.

[29] Ex139, Deposition of Lynn at 140a-140d.

[30] Ex 137, Deposition of Chin at 3-4, 5-6, 9.   Ex 148, Deposition of Wall at 2, 6.

Page 12 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

position that he and Ms. Wall "were not involved with medical operations. Our involvement was financial oversight." Mr. Chin further testified, "We left the medical oversight responsibilities to the medical people," presumably Corizon. When asked if understaffing of the jail by Corizon could jeopardize the health of the inmate population at Washington County, Mr. Chin responded he viewed such matters as beyond the scope of his responsibilities as Contract Administrator. Mr. Chin's understanding of his role was to supervise Connie Wall's management of the healthcare contract.[31]

Ms. Wall denied she was a Contract Administrator despite serving in that capacity from 2006 through early 2014. She outlined her responsibilities as checking the hours, monitoring costs, picking the audits, attending MAC meetings and monitoring the financials.[32]

Neither Mr. Chin nor Ms. Wall had any medical background. Neither took the time to consult with medical personnel readily available at Washington County. Mr. Chin was unfamiliar with the healthcare contract itself, never reviewed the NCCHC standards, was unfamiliar with CQI (Continuous Quality Improvement), had no idea what kind of medical detoxification program was in place at the jail, or the specific monitoring required pursuant to the healthcare contract. He was unaware if anyone associated with Washington County was monitoring compliance concerning the medical detoxification program at Washington County jail. In his role as Contract Administrator, Mr. Chin never went to the jail, nor did he ever meet with Washington County management at the jail. As Contract Administrator, Mr. Chin had no idea if there was a quality assurance program in place

---

[31] Ex 137, Deposition of Chin at 2-3, 5-6, 11-13. Ex 139, Deposition of Lynn at 13, 38.

[32] Ex 148, Deposition of Wall at 3-5, 13.

Page 13 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

at the jail.[33]

The only audits he or Ms. Wall were ever made aware of were those performed by Dr. Walter Hardin.  These involved randomly selected patient charts wherein Dr. Hardin, from time to time, made suggestions about charting.  Neither Mr. Chin nor Ms. Wall recall anything of substance resulting from Dr. Hardin's random chart reviews.  His expectation was that Corizon would follow the contract, concluding he was primarily responsible for financial oversight.  Neither of the Contract Administrators could identify a Continuous Quality Improvement program within the jail, as set forth by the NCCHC, which was in operation at the Washington County jail.[34]

Even though Mr. Chin and Ms. Wall were the designated administrators of the contract with Corizon, neither ever saw the Auditor's Interim Report on Staffing Deficiencies in Jail Health Services of May 7, 2013.  Nor did they see the Preliminary Draft of Anticipated Audit Findings and Recommendations of November 2013.  Neither was ever notified by their superiors at the County of the existence of the interim reports.  As Contract Administrators, they were never asked to act on anything contained within either  report by any supervisor, administrator or policymaker with the County.  The Contract Administrators did not meet with supervisors at the County on an ongoing basis.  Their supervisors never requested any updates on the status of the healthcare contract

---

[33] Ex 137, Deposition of Chin at 2, 4, 14, 17-21, 22-23, 24-28, 29-33, 34-35, 41-42.  Ex 148, Deposition of Wall at 39-40.

[34] Ex 137, Deposition of Chin at 7-8, 34-36, 38, 41-42.  Ex 148, Deposition of Wall 7, 14-16, 20-22.  Ex 139, Deposition of Lynn at 39.

Page 14 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

administration at the jail.  They never heard a thing about the concerns of Auditor John Hutzler.[35]

Two months prior to the death of Madaline Pitkin, contract administration for the jail healthcare contract was moved from the Department of Health and Human Services to the Finance Department, particularly Senior Management Analyst, Judy Lynn.   Ms. Lynn reiterated during her deposition the contract did not relieve the County of its constitutional responsibilities.   She underscored that the contract administrator was responsible for ensuring contract performance and compliance with all terms and conditions.  While Ms. Lynn had heard about the interim audit reports, she did not consult either the Interim Report on Staffing Deficiencies in Jail Health Services issued May 7, 2013 or the Preliminary Draft of Anticipated Audit Findings and Recommendations issued November 14, 2013.  She chose to wait for the Final Report to appear in November of 2014, seven months after the death of Madaline Pitkin.[36]

Ms. Lynn reported to Don Bohn, Assistant County Administrator.  In the beginning, Mr. Bohn specifically tasked Ms. Lynn with looking into whether Corizon had overbilled the County for staffing not provided.  Ms. Lynn reached a conclusion different than that of the Washington County Auditor, concluding for the most part, the hours being provided by Corizon were adequate.[37] Ms. Lynn was of the opinion:

> Corizon was providing good care for the inmates, and that I was not

---

[35] Ex 137, Deposition of Chin at 10, 14, 15-16, 37-40.  Ex 148, Deposition of Wall at 17-18, 19.

[36] Ex 139, Deposition of Lynn at 3-4, 9-10, 13, 14-15, 50.

[37] Ex 139, Deposition of Lynn at 6, 16-17.

Page 15 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

specifically looking at quality of care, since I don't have a medical background. I was looking at contract compliance.[38]

I.    **Moving Force.**

Washington County and Corizon were incentivized to keep costs as low as possible.[39] The reward program for emergency room avoidance puts health care providers in a direct conflict of interest placing economics on a plane with well-being of the patient.[40]

Washington County had no monitoring process in place to evaluate adherence with NCCHC standards. This failure resulted in significant staffing level issues and unacceptable standards of health care to inmates. There was a failure to adhere to standards with regard to provision of critical medical needs, such as use of IV fluids and referral for acute care at higher level medical facilities.[41]

Specifically, Corizon failed to meet its contractual obligations including:

a.    Failure of "documentation of vital signs and determination of levels of consciousness every 2 hours for severe cases of withdrawal;

b.    Failure to provide sufficient staff;

c.    Failure to have site-specific policies;

d.    Failure to provide appropriate monitoring of those suffering from withdrawal; and

---

[38] Ex 139, Deposition of Lynn at 18-19.

[39] Ex 147, Expert Statement of Steve Kinder, RN (Head of School of Management, School of Medicine, OHSU) at 3.

[40] Ex 109, Expert Statement of Samuel Freedman, MD (Emergency Medicine) at 8.

[41] Ex 110, Expert Statement of Dennis Ford, MD, PhD (Emergency Medicine) at 1.

Page 16 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

e.    Failure of adequate and appropriate training on the recognition and treatment of

patients suffering from severe or life-threatening withdrawal.[42]

Madeline Pitkin died as a result of inadequately-treated dehydration as a result of severe opioid

withdrawal.[43]   According to expert Stuart M. Graham, MD:

> Because Ms. Pitkin did not receive prompt and necessary medical care,
> and rather, her sustained requests for medical care were treated with
> neglect, her hyponatremic hypovolemia worsening causing increasing
> physical and emotional distress up until her death.  The unrelenting
> severe discomfort experienced over the days prior to her death is
> reflected in her desperate pleas for additional medical care.   The
> neglect inflicted upon Madeline Pitkin resulted in her tragic demise, a
> demise which could have been easily prevented with customary
> emergent treatment. [44]

## ARGUMENT

## I    SUMMARY JUDGMENT STANDARDS

With a few additions, defendant Washington County correctly sets out the summary judgment

standards.

A fact is "material" if it could affect the outcome of the case and an issue is "genuine" if a

reasonable jury could find in favor of the non-moving party. *Rivera v. Phillip Morris, Inc*., 395 F3d

1142, 1146 (9th Cir, 2005) (citation omitted); *Fricano v. Lane County*, 2018 WL 2770643 at *5  (D

Or, 2018).

---

[42] Ex106, Expert Statement of John May, MD (Certified Correctional Healthcare
Professional) at 4-5.

[43] Ex 102, Expert Statement of Martha Burt, MD (Pathologist) at 1.

[44] Ex 149, Expert Statement of Stuart Graham, MD (Pathologist) at 2-3.

Page 17 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857     Office@Hallman.pro

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 (1986).

## II     *MONELL* CLAIMS

Liability under *Monell* is tested by the same general principles for Washington County and for Corizon.

Plaintiffs' claims, as those of a pretrial detainee, are properly analyzed under the Due Process Clause of the Fourteenth Amendment.  *Frost v. Agnos*, 152 F3d 1124, 1128 (9th Cir, 1998).  42 U.S.C. § 1983 allows an individual to bring suit against a municipality and its officials for depriving her of a constitutional right.  *Monell v. Dep't of Social Servs. of the City of New York*, 436 US 658, 690-91 (1978).

### A.     Municipal  Liability - the Elements.

The requirements for municipal liability under *Monell* was most recently discussed in *Fricano*, 2018 WL 2770643, at *9 :

> A municipal entity is not responsible for the acts of its employees under a respondeat superior theory of liability. *City of Canton v. Harris*, 489 US 378, 386 (1989). Instead, "it is only when the execution of the government's policy or custom inflicts the injury that the municipality may be liable under § 1983." *Id*. To prevail on a claim of deliberate indifference against a municipal entity, a plaintiff must show that (1) she was deprived of a constitutional right, (2) the entity had a policy or custom evincing its deliberate indifference to the prisoner's constitutional right, and (3) the policy or custom was the moving force behind the constitutional violation. *Burke v. Cty. of Alameda*, 586 F3d 725, 734 (9th Cir, 2009).

**Page 18 - Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

See also *Johnson v. Corizon Health, Inc.*, 2015 WL 1549257, at *12  (D Or, 2015).

### 1.    Deprivation of a Constitutional Right.

The deprivation of a constitutional right may be based on the deliberate indifference of an individual to the serious medical needs of a detainee "if the municipality's policies and customs were a moving force behind this deprivation and reflect their own deliberate indifference." *Fricano* at *10.

However, the deliberate indifference of an individual is not a requirement for finding deprivation on the part of a municipality.  The court in *Fricano*, at *10 said:

> [A] jury may find that, even if Mr. Pleich [the individual]  is not personally liable, the combined acts or omissions of other officials operating under a municipal policy or custom, or an affirmative policy or custom which is constitutionally suspect on its face, created a "substantial risk of serious harm" to Mr. Fricano and was employed despite the risk of such harm being "obvious." [*Gibson v. County of Washoe, Nev.*, 290 F3d 1175 (9th Cir, 2002)] *Id* at 1188-90; see also *Speer v. Glover*, 276 F3d 980, 986 (8th Cir, 2002); *Garcia v. Salt Lake Cty.*, 768 F2d 303, 310 (10th Cir, 1985); *Anderson v. City of Atlanta,* 778 F2d 678, 686 (11th Cir, 1985).

See also *Glisson v. Indiana Department of Corrections*, 849 F3d 372, 378 (7th Cir, 2017); *Matysik v. County of Santa Clara,* 2018 WL 732724 *12 (ND Cal, 2018).

### 2.    Policies and Customs.

A local government may be liable for policies of inaction as well as action.  In *Johnson*, 2015 WL 1549257, at *9  the court describes the policies:

> A policy of action is one in which the governmental body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a governmental body's "failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F3d 1128, 1143 (9th Cir, 2012).

**Page 19 - Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Following the case of *Gordon v. Cty. of Orange*, 888 F3d 1118, 1185 (9th Cir, 2018) there is no distinction between policies of "action" and policies of "inaction." Both are analyzed under an objective standard and "both require deprivation of a constitutional right, a causal link between that deprivation and municipal policy and recklessness." *Fricano* at *9.

In *Estate of Vela v. Cty. of Monterey*, 2018 WL 4076317, at *3 (ND Cal, 2018) the court explained:

> The deliberate indifference standard for municipalities is an objective standard. *Castro [v. County of Los Angeles*, 833 F 3d 1060 (9th Cir, 2016)] at 1076. "[A]n objective standard applies to municipalities 'for the practical reason that government entities, unlike individuals, do not themselves have states of mind.' " *Mendiola-Martinez [v. Arpaio*, 836 F3d 1239 (9th Cir, 2016)] at 1248 (quoting *Castro*, 833 F3d at 1076). "This *Castro* objective standard is satisfied when 'a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens.' " *Id* at 1248-49 (quoting *Castro*, 833 F3d at 1076) (alteration in original).

Deliberate indifference is not shown where the municipality defers to the judgment of qualified medical professionals. Rather, it is shown by a failure to oversee the contract to provide medical care. As stated in *Paris v. Conmed Healthcare and Coos County*, 2017 WL 7310079 at *13 (D Or, 2017)(Findings and Recommendations of Magistrate Judge Coffin) adopted by 2018 WL 664807 (D Or, 2018)(McShane, J):

> As discussed previously, Coos County contracted with Conmed to provide healthcare to inmates at its jail facility. Ultimately, however, it is the County which operated the jail and contracting out the health care does not relieve the County of its constitutional duty to provide adequate medical treatment to those in custody. *West v. Atkins*, 487 US

Page 20 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

42, 56 (1988).

> The § 1983 claim against the County defendants (Coos County, Sheriff Zanni, and Sergeant Mede) is not premised on their deference to the judgment of qualified medical professionals in their diagnosis and treatment of Donnie Brown. See *Lemire v. California Department of Corrections*, 726 F3d 1062, 1081-1082 (9th Cir, 2013) (no "deliberate indifference" when correctional officers deferred to judgment of medical staff). *It is rather based upon their own policies and failures to oversee Conmed and enforce the contractual provisions which required higher levels of medical expertise than it actually delivered.* [Emphasis added, footnote omitted.]

A policy or custom includes the decisions of a government's lawmakers and its policymaking officials. *Connick v. Thompson*, 563 US 51, 61 (2011); *Fricano* at *10. It may also be established "by showing that the municipal entity had a permanent and well-settled practice, or 'custom,' which gave rise to the constitutional violation. *City of St. Louis v. Praprotnik,* 485 US 112, 127 (1988)"; *Fricano* at *10.

A policy or custom may be shown by post-event evidence. A jury could find that the failure of the government contracting agency (here Washington County) to penalize or enforce the terms of the Corizon contract constitutes a ratification by the County of Corizon's deficient practices. *Fricano,* at *12. No one was disciplined by Washington County fllowing the death of Madeline Pitkin.[45]

Ratification is a question for the jury. *Ashley v. Sutton,* 492 F Supp 2d 1230, 1238 (D Or, 2007).

Concerning the medical detoxification program, defendant County argues that "plaintiffs have no evidence showing such allegations are true beyond Ms. Pitkin's care." Motion at 11. That

---

[45] Ex 139, Deposition of Lynn at 31.

**Page 21 - Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

statement is factually incorrect. It also ignores the above authority that custom can be inferred from behavior toward a single individual. *Oyenik v. Corizon*, 696 Fed App 792 at 794 (9th Cir, 2017). The court in *Fricano* at *10 stated:

> [T]here is no case law that a custom cannot be inferred from behavior toward a single individual." *Oyenik v. Corizon Health, Inc.,* 696 Fed Appx, 792, 794 (9th Cir, 2017) (citation omitted); see also *Navarro v. Block,* 72 F3d 712, 714-15 (9th Cir, 1995) ("Once such a showing is made, a municipality may be liable for its custom irrespective of whether official policy-makers had actual knowledge of the practice at issue.")

The policy or custom must amount to a deliberate indifference to the serious medical needs of the prisoner or detainee. *Fricano* at *12.

> A jury can consider the policies and contracts of Corizon to show awareness of the risks. Here, Corizon's customs of failing to screen, treat, and transfer acutely ill detainees were all contrary to its own written policies and contract with Lane County. A jury could find it obvious that failing to perform these services would likely result in dangerously deficient medical care, and, indeed, *Corizon's own policies evidence that it understood these risks.* See *Johnson v. Corizon Health, Inc.*, No. 6:13–cv–1855–TC, 2015 WL 1549257, at *10 (D Or, Apr. 6, 2015) (relying on policies and contract to find the same). [Emphasis added.]

With regard to the County, its participation in regular meetings and the standards it insisted on in the contract show an awareness of the risks. *Fricano* at *12.

### 3.    Moving Force.

A policy or custom must be a moving force behind the violation of a constitutional right. To be a moving force the policy must be "closely related to the ultimate injury." *Gibson v. County of Washoe, Nev.*, 290 F3d 1175, 1196 (9th Cir, 2002) quoting *City of Canton v. Harris*, 489 US 378, 391

Page 22 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

(1989).

Defendant limits its "moving force" discussion to Ms. Pitkin's death. Motion at 14, 15. While plaintiffs will show that defendant County's actions and inactions were a cause of Ms. Pitkin's death they were also a cause of her increasing physical and emotional distress and severe discomfort over the days prior to her death. The court in *Fricano* at *5 said:

> A serious medical need is one which, without treatment, "could result in further significant injury or the unnecessary and wanton infliction of pain." *McGukin v. Smith*, 974 F2d 1050, 1059 (9th Cir, 1991).

A municipality's actions or inactions may be a moving force if they amount to a ratification of the defective policies and customs of the contacting party. *Fricano* at *13; *Larez v. City of Los Angeles*, 946 F2d 630, 646 (9th Cir, 1991).

## B.    Washington County's Customs and Policies.

### 1.    Liability For Hiring Corizon or for Mistakes by Corizon.

Contrary to defendant's argument, Plaintiffs do not claim liability rests with the County for hiring Corizon.[46]  Nor do they claim vicarious liability for mistakes made by Corizon employees. Liability rests with the County's own action or inaction.

However, the contracting out of medical care "does not relieve the County of its constitutional duty to provide adequate medical treatment to those in custody." *Paris*, 2017 WL 7310079 at *13.

---

[46] It has been suggested that, with companies such as Corizon and Prison Health Services, Inc. which have lengthy public records of providing deliberately indifferent care to prisoners, signing a contract is a conscious disregard of serious risk of harm to inmates. *Dan Weiss, Privatization and Its Discontents*, 86 U Colo L Rev 725 at 766-767(2015).

Page 23 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

2.      **Policy or Custom of Washington County.**

The claims against Washington County all relate to its policies and failures to oversee and enforce the contractual requirements with Corizon.  See *Paris* at *13.  These failures occurred even after warnings by the auditor that such inaction would jeopardize the health of inmates.  These failures continued even after a Corizon employee reported to Washington County her concerns regarding patient safety and warned that "it was only a matter of time before a bad outcome."[47]

Defendant reprises its argument that there is no evidence that  these policies are "true beyond Ms. Pitkin's care." Motion at 11.

First, as noted above, this argument has been rejected.  *Oyenik v. Corizon Health*, 696 Fed Appx at 794;  *Fricano* at *10.

Second, the failures of Washington County relate to the contract with Corizon.  As such they effect every inmate in the jail.

C.      **Washington County's Deliberate Indifference.**

Answering defendant's elements, Motion at 13-14, there is sufficient evidence for a jury to find:

1.      Washington County failed to act and thereby ratified Corizon's conduct, after explicit warnings by its own auditor and a former Corizon employee of contract deficiencies.

2.      The conditions put Ms. Pitkin at risk of harm and Washington County was so informed.

---

[47] Ex 141, Deposition of Rettler at 4-6, 12-13, 19-20, 25-26.

Page 24 - **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857    Office@Hallman.pro

3.      The risk of harm was obvious. Washington County was told of the risk.  It was told

that it was only a matter of time before a "bad outcome."

4.      Ignoring the warnings of its auditor and the Corizon employee could be found to be

beyond negligence.  The County remained responsible for its constitutional duty to

provide adequate medical treatment and it does not shed that duty by contracting it

away.

5.      Washington County's failures permitted Corizon to ignore basic standards of

treatment.  It was reasonably foreseeable to the County  that patients would suffer

harm.

**D.      There Is Evidence That Washington County's Policy Was a "Moving Force."**

Defendant acknowledges that a causal connection may be established without direct personal

participation.

In  *Johnson v. Duffy*, 588 F2d 740, 743-44 (9th Cir, 1978) the court noted that personal

participation is not required for section 1983 liability:

> Moreover, personal participation is not the only predicate for section
> 1983 liability. Anyone who "causes" any citizen to be subjected to a
> constitutional deprivation is also liable. The requisite causal connection
> can be established not only by some kind of direct personal
> participation in the deprivation, but also by setting in motion a series
> of acts by others which the actor knows or reasonably should know
> would cause others to inflict the constitutional  injury.

Defendant's willful refusal to enforce the terms of the contract set in motion the acts of

Corizon and its employees.  Defendant was warned and knew that those acts, unfettered by the

**Page 25 -** **Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

constraints of the contract, would cause injury to others.

**III    NEGLIGENCE CLAIMS**

Plaintiffs have met their burden of showing that there is sufficient evidence to permit a jury to find in its favor with regard to the deliberate indifference claims.  Such claims subsume the negligence standard with a higher standard of deliberate indifference or gross negligence.  As stated in *Paris v. Conmed* at 15 "As I have already determined that the deliberate indifference standard is supported by the evidence in the record, it follows that the negligence claim is likewise supported * * *."

Defendant County argues that plaintiffs seek to impose vicarious liability for the actions of Corizon employees.  This is incorrect.  Plaintiffs allege the County is negligent in its own right by its multitude of failures to supervise the contract and its duty to exercise control over the provision of medical care at the Washington County Jail.[48]

In discussing negligence claims against Coos County the court in *Paris v. Conmed* made this distinction at *15: :

> As discussed extensively in the § 1983 analysis above, this staffing deficiency violated the express contractual requirements between the County and Conmed which Sheriff Zanni and Sergeant Mede had a duty to enforce. Their failure to enforce those provisions * * * can be found by a jury to have violated a duty they owed to the inmates and thus constitute negligence, which is a lower bar than the deliberate indifference standard applicable to the § 1983 claim.

---

[48] *Turner v. Multnomah County*, 2013 WL 595093 (D Or, 2013) offers no support for defendant County.  In that case the court noted that the plaintiff had not properly pleaded a policy or practice for a section 1983 claim under *Monell*.  The court gave the plaintiff leave to amend.

**Page 26 - Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

**CONCLUSION**

The Motion for Summary Judgment of Washington County should be denied.

DATED this 9th day of November, 2018.

TIM JONES PC

PAULSON COLETTI

    and

HALLMAN LAW OFFICE

By:  s/ W. Eugene Hallman
        W. Eugene Hallman, OSB No. 741237
        Of Attorneys for Plaintiffs

W. Eugene Hallman
Hallman Law Office
PO Box 308
Pendleton OR 97801
(541) 276-3857
(541) 276-7620 fax
office@hallman.pro

**Page 27 - Plaintiffs' Response to Motion for Summary Judgment (Washington County)**

**Certificate of Filing & Service**

I HEREBY CERTIFY that on the 9th day of November, 2018, I filed this original **Plaintiffs' Response to Motion for Summary Judgment by Washington County** by Electronic Filing:

Trial Court Administrator
US District Court - 740 US Courthouse
1000 SW Third Avenue
Portland OR 97204-2902

I FURTHER CERTIFY that on the same date a true and correct copy of this document was served upon the following by Electronic Service (for eFilers) or by US Mail (for those not registered as eFilers):

Richard K. Hansen
Anne M. Talcott
Schwabe Williamson & Wyatt PC
1211 SW 5th Ave., Suite 1900
Portland, OR 97204

John M. Fitzpatrick
Katherine J. Mercer-Lawson
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver CO 80202

Kenneth P. McDuffie
Nall & Miller, LLP
235 Peachtree Street, NE
North Tower, Suite 1500
Atlanta GA 30303
      Of Attorneys for Defendants Corizon Health, Inc., Joseph McCarthy, M.D., Colin
      Storz, Leslie O'Neil, CJ Buchanan, Louisa Duru, Molly Johnson, and Courtney Nyman

Vicki M. Smith
Jamie T. Azevedo
Bodyfelt Mount, LLP
319 SW Washington Street, Suite 1200
Portland OR 97204
      Of Attorneys for Defendants Washington County and Pat Garrett

By:  _s/ Mary Hallman_____
        Mary Hallman
        Assistant to Mr. Hallman